1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

8

9

10

| | |
|---|---|
| WILLIAM HEATHCOTE individually and on behalf of all others similarly situated, | Case No. 2:20-cv-01310-RSM |
| Plaintiff, | **PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER** |
| v. | **ORAL ARGUMENT REQUESTED** |
| SPINX GAMES LIMITED, GRANDE GAMES LIMITED, and BEIJING BOLE TECHNOLOGY CO., LTD., | **NOTED: April 20, 2021** |
| Defendants. | |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

I.  INTRODCUTION ...................................................................................................1

II.  BACKGROUND .................................................................................................4

III.  ARGUMENT .......................................................................................................6

    A.  Plaintiff Is Likely to Succeed on the Merits of His Argument that Defendants' Communication with Putative Class Members Was Misleading and Improper. ........................................................................7

    B.  Plaintiff and Putative Class Members Will Suffer Irreparable Harm in the Absence of a TRO. .................................................................13

    C.  The Balance of Equities and Public Interest Favor Plaintiff. ...................14

IV.  CONCLUSION ...................................................................................................16

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Am. Trucking Associations, Inc. v. City of Los Angeles*,
   559 F.3d 1046 (9th Cir. 2009) ........................................................................ 12

*Amazon.com, Inc. v. Moyer*,
   417 F. Supp. 3d 1388 (W.D. Wash. 2019) ....................................................... 14

*Balasanyan v. Nordstrom, Inc.*,
   2012 WL 760566 (S.D. Cal. Mar. 8, 2012) ........................................................ 7

*Billingsley v. Citi Trends, Inc.*,
   560 Fed. Appx. 914 (11th Cir. 2014) .............................................................. 13

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ........................................................................ 13

*Cty. of Santa Clara v. Astra USA, Inc.*,
   2010 WL 2724512 (N.D. Cal. July 8, 2010) ...................................................... 8

*Erhardt v. Prudential Group, Inc.*,
   629 F.2d 843 (2d Cir. 1980) ............................................................................ 15

*Glass v. FMM Enters., Inc.*,
   755 F. App'x 700 (9th Cir. 2019) ...................................................................... 6

*Grewe v. Cobalt Mortg., Inc.*,
   2016 WL 4211530 (W.D. Wash. Aug. 10, 2016) ......................................... 6, 14

*Grewe v. Cobalt Mortgage, Inc.*,
   2016 WL 4547131 (W.D. Wash. Sept. 1, 2016) ......................................... 12, 13

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981) ............................................................................................ 7

*Hoffmann-La Roche Inc. v. Sperling*,
   493 U.S. 165 (1989) ....................................................................................... 7, 9

*In re Currency Conversion Fee Antitrust Litig.*,
   361 F. Supp. 2d 237 (S.D.N.Y. 2005) .......................................................... 8, 9

*Jimenez v. Menzies Aviation Inc*,
   2015 WL 4914727 (N.D. Cal. Aug. 17, 2015) .............................................. 6, 7

*Johnson v. Couturier*,
   572 F.3d 1067 (9th Cir. 2009) ........................................................................ 14

*Kater v. Churchill Downs Inc.*,
   423 F. Supp. 3d 1055 (W.D. Wash. 2019) ............................................... passim

PLAINTIFF'S MOTION FOR TRO
CASE NO. 2:20-cv-01310-RSM

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

*Kater v. Churchill Downs Inc.*,
  886 F.3d 784 (9th Cir. 2018) ................................................................... 4, 6

*Kirby v. Kindred Healthcare Operating, LLC*,
  2020 WL 4639493 (C.D. Cal. May 1, 2020) ............................................... 11

*Kirkpatrick v. Ironwood Communications, Inc.*,
  2006 WL 8454762 (W.D. Wash. Nov. 1, 2006) ........................................... 14

*Kleiner v. First Nat'l Bank of Atlanta*,
  751 F.2d 1193 (11th Cir.1985) ......................................................... 8, 11, 12

*Kutzman v. Derrel's Mini Storage, Inc.*,
  354 F. Supp. 3d 1149 (E.D. Cal. 2018) .............................................. 8, 9, 11

*Lair v. Bullock*,
  697 F.3d 1200 (9th Cir. 2012) ...................................................................... 6

*Li v. A Perfect Day Franchise, Inc.*,
  270 F.R.D. 509 (N.D. Cal. 2010) ............................................................... 15

*McKee v. Audible, Inc.*,
  2018 WL 2422582 (C.D. Cal. Apr. 6, 2018) ................................................. 9

*Nugussie v. HMS Host N. Am.*,
  2017 WL 1250420 (W.D. Wash. Apr. 5, 2017) .............................................. 9

*O'Connor v. Uber Techs., Inc.*,
  2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) ............................................. 7, 9

*Piekarski v. Amedisys Illinois, LLC*,
  4 F. Supp. 3d 952 (N.D. Ill. 2013) ............................................................... 7

*Quinault Indian Nation v. Kempthorne*,
  2009 WL 734682 (W.D. Wash. Mar. 18, 2009) ........................................... 13

*Slavkov v. Fast Water Heater Partners I, LP*,
  2015 WL 6674575 (N.D. Cal. Nov. 2, 2015) .......................................... 11, 12

*State of Washington v. Trump*,
  847 F.3d 1151 (9th Cir. 2017) ...................................................................... 6

*USAA Fed. Sav. Bank v. Bouchard*,
  2017 WL 7053638 (W.D. Wash. Aug. 7, 2017) ........................................... 14

*Wilson v. Huuuge, Inc.*,
  2020 WL 8771059 (W.D. Wash. Apr. 20, 2020) .......................................... 11

**RULES**

Fed. R. Civ. P. 23 ............................................................................................. 3

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................. 9

PLAINTIFF'S MOTION FOR TRO
CASE NO. 2:20-cv-01310-RSM

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

-iii-

Fed. R. Civ. P. 23(d) ........................................................................................................... 1, 6, 7

Fed. R. Civ. P. 65(b) .............................................................................................................. 3

## I.      INTRODCUTION

Plaintiff William Heathcote ("Plaintiff") seeks a temporary restraining order to enforce a return to the status quo while the Court considers whether, pursuant to Federal Rule of Civil Procedure 23(d), the Court should limit Defendants' communications with putative class members and issue corrective notice.  This motion presents substantially identical issues to those decided in plaintiff's favor in *Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055, 1058-1059 (W.D. Wash. 2019).  Like in *Kater*, Defendants operate a "virtual casino" mobile application that Plaintiff alleges constitutes illegal gambling under Washington law.  Like in *Kater*, rather than defend the legality of their "virtual casinos," Defendants have attempted to orchestrate an unsanctioned opt-out campaign.  Defendants undertook this effort after Plaintiff's filing of the case, while evading service, and the Court has had the opportunity to consider the merits of the case whatsoever including the issue of class certification.  And just like the defendant in *Kater*, Defendants quietly amended their Terms of Use to include a class action waiver and arbitration provision, presumably in response to Plaintiff's proposed class action complaint.

1  Last week, Plaintiff's counsel learned that Defendants began displaying a pop-up window to

2  players purporting to require them to not participate in this lawsuit in order to keep playing the

3  games. *See* Ex. A, reproduced below).[1]





[1] All "Ex. __" citations are exhibits to the Declaration of Philip L. Fraietta ("Fraietta Decl."), filed herewith.

PLAINTIFF'S MOTION FOR TRO
CASE NO. 2:20-cv-01310-RSM

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

-2-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28





*See also* Fraietta Decl. ¶ 5.

      The pop-up window and new Terms of Use are both manifestly improper communications to putative class members. They are made for the improper purpose of discouraging participation in this pending class action lawsuit, and they contain misleading statements that, if they continue to be disseminated, will cause irreparable harm to Plaintiff and putative class members.

Pursuant to Federal Rule of Civil Procedure 65(b) and LCR 65(b), Plaintiff requests a temporary restraining order ("TRO") to require Defendants to remove these wrongful communications immediately.  In this motion, Plaintiff does not ask the Court to resolve whether the purported arbitration agreements solicited after Plaintiff's filing date of September 21, 2020, are enforceable, although Plaintiff maintains that they are not.  Indeed, if Defendants decide not to attempt to enforce the agreements, then the Court may never need to answer that question.  But to cure the wrongful acts, if the TRO is granted, Plaintiff will seek corrective notice and appointment of interim class counsel pursuant to Rule 23 before the TRO expires.

## II.      BACKGROUND

The facts underlying this class action lawsuit are nearly identical to those in *Kater*.  The facts of that case were summarized succinctly by the Ninth Circuit:

> Big Fish Casino is a game platform that functions as a virtual casino, within which users can play various electronic casino games, such as blackjack, poker, and slots. Users can download the Big Fish Casino app free of charge, and first-time users receive a set of free chips. They then can play the games for free using the chips that come with the app, and may purchase additional chips to extend gameplay. Users also earn more chips as a reward for winning the games. If a user runs out of chips, he or she must purchase more chips to continue playing. A user can purchase more virtual chips for prices ranging from $1.99 to nearly $250.

*Kater v. Churchill Downs Inc.*, 886 F.3d 784, 785-86 (9th Cir. 2018).  Similarly, here, "In Cash Frenzy Casino, Defendant offers a multitude of electronic versions of slot machine games."  First Amended Complaint, ECF No. 14 ("FAC") ¶ 2.  "Defendant provides a bundle of free 'coins' to first-time visitors of its virtual casino that can be used to wager on its slot machine games."  *Id*. ¶ 3. "After consumers inevitably lose their initial allotment of coins, Defendant attempts to sell them additional coins starting at $1.99 for 750,000 coins."  *Id*.  "Freshly topped off with additional coins, consumers wager to win more coins."  *Id*. ¶ 4.  "The coins won by consumers playing Defendant's games of chance are identical to the coins that Defendant sells."  *Id.*  "Thus, by wagering 750,000 coins that were purchased for $1.99, consumers have the chance to win millions of additional coins that they would otherwise have to purchase."  *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

At some point after the filing of this complaint, but on or prior to February 8, 2021, Defendants modified the "Cash Frenzy Terms of Service." *See* Fraietta Decl., Ex. B.  Before then, the "Terms of Use" did not contain either an arbitration agreement or Class Action Waiver – indeed, they did not contain any terms with regard to dispute resolution whatsoever.  The updated Terms of Use, however, are clearly a direct result of this lawsuit.  The new terms provide that:

> These Terms contain a Dispute Resolution and Arbitration Provision, including a Class Action Waiver, that affects your rights under these Terms and with respect to any dispute you may have with the COMPANY.

Fraietta Decl. ¶ 8, Ex. B at 1 (also available at https://spinxgames.pactsafe.io/cash-frenzy#cash frenzy-terms).  Despite the change occurring after the filing of this action, the terms are written in dense, legal language and do not provide any mention of this case, its current status, or the type of relief being sought.  There is an opt-out provision, which purports to require players to opt out of the arbitration agreement within 30 days.  To the best of Plaintiff's counsel's knowledge, more than 30 days after changing the agreement, on or about April 5, 2020, Defendants began displaying a new pop-up window to its players.  *See* Ex. A.  The popup expressly references this litigation and tells players that clicking the "I Agree" button means that they will not be permitted to participate in this lawsuit.  Players cannot continue to play the game unless they click the "I Agree" button, even though they have already purchased chips.  Further, as Defendants should know, many of its players are addicted to its casino apps such as Cash Frenzy, and those addicted players cannot keep playing unless they click the "I Agree" button.  Those players are also cut off socially from the people with whom they play.  Defendants have created enormous psychological and social pressure to click the button so that addicted players can keep playing.  *See* Fraietta Decl. ¶ 9, Ex. C (Letter of Natasha Dow Schüll, Ph.D. to Washington State Gambling Commission regarding the analogous "Big Fish Casino" games).[2]  Defendants did not tell Plaintiff's counsel or the Court about the changes to the Terms of Use or the addition of the pop-up window.  Nor has the Court authorized any form of class notice.

---

[2] Available at https://www.wsgc.wa.gov/sites/default/files/public/news/big-fish/Dr.%20Schull%20Comments.pdf.

PLAINTIFF'S MOTION FOR TRO
CASE NO. 2:20-cv-01310-RSM

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

-5-

In *Kater*, defendant Big Fish Games attempted a nearly identical maneuver to change its terms of use and force opt-out of the class action through a pop-up notification on its app. *See Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055, 1058-1059 (W.D. Wash. 2019), *appeal dismissed sub nom. Thimmegowda v. Big Fish Games, Inc.*, 2020 WL 1441391 (9th Cir. Feb. 26, 2020), and *appeal dismissed*, 2020 WL 1441416 (9th Cir. Feb. 26, 2020) ("*Kater*").[3]  In *Kater*:

> More than 30 days after changing the Terms (about October 14, 2019), Big Fish's games began displaying a new pop-up window. The pop-up expressly references this litigation and tells players that clicking the "I Agree" button means that they will not be permitted to participate in these lawsuits. Players cannot continue to play the game unless they click the "I Agree" button, even if they have already purchased chips.

*Id*. at 1060.  Just like in *Kater*, "Defendants did not tell Plaintiffs, Plaintiffs' counsel, or the Court about the changes to the Terms of Use or the addition of the pop-up window. Nor has the Court authorized any form of class notice." *Id*.  Indeed, Defendants have thus far avoided service of the lawsuit altogether.

In response to Big Fish's illegal interference with the judicial process, Judge Leighton swiftly granted the plaintiff's motion for temporary restraining order "in the form of a Preliminarily Injunction limiting Defendants' dissemination of the pop-up notification regarding the [Defendant's] Terms of Use[.]" *Id*. at 1058.  This court should do the same.

## III.     SERVICE OF SUMMONS AND THIS MOTION.

Although it is fairly obvious that Defendant is aware of the lawsuit, it has not been served with the summons and complaint yet.  ECF No. 8.  After this case was filed, as part of the Defendants have customers to opt out of this lawsuit, it set up an address in San Francisco. Plaintiff is attempting service of process at that address.  But for purposes of this motion, a copy of the motion and proposed order were hand delivered to that address on Tuesday April 20, 2020, in compliance with Local Rule 65(b)(1).  *See* Fraietta Decl. ¶ 11, Ex. E.  Defendant's address is 2021 Fillmore Street #93, San Francisco, CA 94115.

---

[3] *Kater* is attached hereto as Exhibit D.

PLAINTIFF'S MOTION FOR TRO
CASE NO. 2:20-cv-01310-RSM

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.   ARGUMENT

The Ninth Circuit holds that courts analyzing TRO requests are guided by four questions: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *State of Washington v. Trump*, 847 F.3d 1151, 1164 (9th Cir. 2017) (citing *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012)).

These factors are met here, and a TRO should thus be issued.

### A.   Plaintiff Is Likely to Succeed on the Merits of His Argument that Defendants' Communication with Putative Class Members Was Misleading and Improper.

To be entitled to a TRO, Plaintiff must demonstrate a likelihood of success on the merits. Here, the relevant merits question is whether, pursuant to Federal Rule of Civil Procedure 23(d), the Court should limit Defendants' communications with putative class members and issue appropriate corrective notice (among other potentially appropriate remedies). *See Grewe v. Cobalt Mortg., Inc.*, 2016 WL 4211530, at *3 (W.D. Wash. Aug. 10, 2016) ("*Grewe I*") (granting TRO based on finding "a high likelihood of success on the merits with respect to the issue of whether communication … [to putative class members] will interfere with the rights of the parties."); *cf. Glass v. FMM Enters., Inc.*, 755 F. App'x 700, 701 (9th Cir. 2019) (noting that an order under Rule 23(d) is not itself an injunction).  Plaintiff is very likely to succeed on that issue.[4]

"Federal Rule of Civil Procedure 23(d) provides courts with considerable discretion in regulating defendant communications with putative class members to prevent abuse." *Jimenez v. Menzies Aviation Inc*, 2015 WL 4914727, at *5 (N.D. Cal. Aug. 17, 2015).  "[C]lass actions serve important goals but also present opportunities for abuse," and therefore "'… a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate

---

[4] While Plaintiff's likelihood of success on the merits of the claims in this lawsuit is not at issue here, Plaintiff nevertheless notes that nearly identical virtual casinos "constitute illegal gambling under Washington law" and because such virtual casinos "constitute[] an illegal gambling game, [a plaintiff] can recover 'the value of the thing so lost' from [the owner of the game]." *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 786, 788 (9th Cir. 2018)

PLAINTIFF'S MOTION FOR TRO
CASE NO. 2:20-cv-01310-RSM

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

orders governing the conduct of counsel and the parties.'" *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)).  In keeping with that rule, courts routinely find that a defendant's attempt to impose an arbitration agreement on putative class members after a case has been filed constitutes improper and abusive communication.  *See, e.g.*, *Jimenez*, 2015 WL 4914727, at *5 ("[T]he ADR Policy is unenforceable here because Menzies seeks to apply the policy to employees that were putative class members, and had pending class claims, before the ADR Policy was issued."); *Balasanyan v. Nordstrom, Inc.*, 2012 WL 760566, at *4 (S.D. Cal. Mar. 8, 2012) ("In sum, because Nordstrom's communication constituted an improper attempt to alter the pre-existing arbitration agreement with putative class members during litigation, this court invalidates the … agreement as to putative class members"); *O'Connor v. Uber Techs., Inc.*, 2013 WL 6407583, at *6 (N.D. Cal. Dec. 6, 2013) ("Here, the risk of interfering with the pending class action and the need for a limitation on communication with the class that adversely affects their rights is palpable. The communication which is the subject of this motion is likely to mislead potential class members about their right to join the current class action.").  When determining whether pre-certification relief under Rule 23(d) is necessary, a matter of "particular concern to courts is whether a party has made misrepresentations to putative class members or has attempted to discourage class members from participating in the class." *Piekarski v. Amedisys Illinois*, LLC, 4 F. Supp. 3d 952, 955 (N.D. Ill. 2013) (internal quotation marks omitted). Here, both are true.

The clear intention of both the pop-up window and the amended Terms of Use are to discourage putative class members from participating in this case. The pop-up window tells putative class members that "If you accept the Terms of Service and do not opt out of the Dispute Resolution and Arbitration Provision, you cannot participate in this lawsuit, even if a class is certified."  (Exhibit A).  The Terms of Use tell putative class members: "IMPORTANT NOTE: These Terms contain a Dispute Resolution and Arbitration Provision, including a Class Action Waiver, that affects your rights under these Terms and with respect to any dispute you may have with the COMPANY." Ex. B at 1.  Defendants obviously do not want putative class members to

PLAINTIFF'S MOTION FOR TRO
CASE NO. 2:20-cv-01310-RSM

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

-8-

be able to participate in these lawsuits, and the goal in sending the communications is to make sure they do not. *See Cty. of Santa Clara v. Astra USA, Inc.*, 2010 WL 2724512, at *3 (N.D. Cal. July 8, 2010)) (citing *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1201-03 (11th Cir.1985) ("Examples of communications that may warrant restraint include efforts by a defendant to encourage potential class members not to participate in the class action, thereby reducing potential liability").  In the near-identical *Kater* case, the court granted a TRO in part because "Although the notifications do at least mention the lawsuits, they fail to meaningfully inform users about their potential rights."  *Kater*, 423 F. Supp. 3d at 1063.

The problem is exacerbated by the presence of coercive conduct.  "Whether a communication is misleading or coercive—and therefore warrants judicial intervention—often depends not on one particular assertion, but rather the overall message or impression left by the communication."  *Kutzman v. Derrel's Mini Storage, Inc.*, 354 F. Supp. 3d 1149, 1158 (E.D. Cal. 2018).  Here, the message has been presented to putative class members while they are trying to play Defendants' casino games, which Defendants should know are psychologically addictive.  *See* Ex. C, at 2-3 (discussing the dangers of the analogous *Big Fish* casino.  Putative class members are locked out of the games (which they have paid thousands of dollars to play), and they are unable to use any of the casino chips that they purchased until they click on the "I agree" button. *See In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005) ("If the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive.") (quoting *Kleiner*, 751 F.2d at 1202). Defendants make their suggested course of action clear: the pop-up does not provide any options other than clicking a "I Agree, Let's Play" button.  This exact reasoning was employed by Judge Leighton in granting the plaintiffs' TRO in *Kater*.  *See Kater*, 423 F. Supp. 3d at 1062 ("Courts have also found communications improper when they coerce putative class members by exploiting a dependent relationship or giving no realistic opportunity to opt out of the defendant's new terms.").[5]

---

[5] Citing *McKee v. Audible, Inc.*, 2018 WL 2422582, at *6 (C.D. Cal. Apr. 6, 2018) (holding that new arbitration notification coercively forced members to forfeit preexisting credits and provided no opt out procedure); *O'Connor v. Uber Techs.*, Inc., 2013 WL 6407583, at *6 (N.D. Cal. Dec. 6,

In addition to being made for an improper purpose, the statements in the pop-up window and Terms of Use are, at best, highly misleading.  This Court has not yet determined that a post-lawsuit arbitration clause would be enforceable (indeed, Plaintiff submits such an agreement likely would not be enforceable).  Defendants do not provide any details about Plaintiff's claims in the pop-up.  And Defendants do not inform putative class members that they may be foregoing their claims under Washington law in any forum, because the new Terms of Use include a California choice of law provision, which Defendants do not even provide a mechanism of opting-out of.  These salient facts are absent from any of Defendants' communications.  *See Kutzman*, 354 F. Supp. 3d at 1156-57 (finding communications from defendant to class members to be misleading when they omitted "a critical fact" about the status of the case); *cf. Nugussie v. HMS Host N. Am.*, 2017 WL 1250420, at *2 (W.D. Wash. Apr. 5, 2017) (finding settlement offer to putative class member to be acceptable when the defendant "notified [the putative class member] of the passage of the SeaTac wage ordinance, this lawsuit (including the claims asserted, the relief sought, and that plaintiff would be part of the class if certified), how to contact plaintiffs' counsel, and the method by which the offered payment was calculated (based on a formula negotiated with the union)").

Beyond statements failing to identify the legal implications of clicking on the "I Agree" button, the class notice also contains misleading statements about the case more generally.  When a class is certified, the Court sends out class notice in "plain, easily understood language," Fed. R. Civ. P. 23(c)(2)(B), that is "scrupulous to respect judicial neutrality," *Hoffmann-La Roche*, 493 U.S. at 174.  But Defendants' revised Terms of Use are written in lawyer-speak, rather than in language designed for laypersons. Instead of explaining, as real class notice would, that the lawsuit seeks to recover all of the money that putative class members lost on Grande's apps, Defendants' communications merely make vague reference to Washington statutes and the causes of action.

---

2013) (new terms improper where defendant's opt-out provision was "buried in the agreement"); *In re Currency Conversion Fee Antitrust Litigation*, 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005) (new arbitration provision was improper where the putative class of cardholders "depend[ed] on defendants for their credit needs").

Even worse, the communications reference the Court without explaining that the pop-up and Terms of Use have been prepared and disseminated without the Court's authorization or knowledge. A layperson, particularly one who had previously received class notice postcards or emails, could easily misunderstand the use of the term "federal court in Washington State" as an endorsement. For those reasons, Judge Leighton held:

> Here, [Defendant's] new pop-up, in conjunction with the revised Terms of Use, is coercive and misleading. The pop-up message presents putative class members with a stark choice: relinquish your class action rights and continue playing or maintain your rights and forfeit access to [Defendant's] games. This ultimatum is made more coercive by the addictive nature of [Defendant's] games and the fact that many players have already purchased chips that can only be accessed by agreeing to the terms. With such pressures at play, the pop-up, and revised Terms, are clearly intended to steer putative class members away from participating in these cases.

*Kater*, 423 F. Supp. 3d at 1062. And the revision of the Terms and Conditions here is even more egregious, as in *Kater* the original terms of conditions "always contained a class action wavier" as well as a "prior arbitration provision." *Id*. at 1063.

These effects are not negated by the existence of an opt-out procedure. While Defendants' pop-up goes farther than the Big Fish pop-up in that it mentions the ability of users to opt-out, it provides no instruction on how to do so. In order to figure out how to opt out, a putative plaintiff must navigate through 12 pages of legalese in the Arbitration agreement. *See* Ex. C at 8. And the Terms and Condition give no indication on how to opt out of the Class Action Waiver or Dispute Resolution clauses – the section explaining the opt-out procedure is titled "Exclusions from Arbitration/Right to Opt Out" and the language only addresses opting out of the arbitration it does not mention opting out of the class action waiver:

> "choose to pursue a Dispute in court and not by arbitration if (i) the Dispute qualifies, it may be initiated in small claims court; or (ii) YOU PROVIDE THE COMPANY WRITTEN NOTICE OF YOUR DESIRE TO OPT-OUT OF THESE ARBITRATION PROCEDURES WITHIN 30 DAYS FROM THE DATE THAT YOU FIRST CONSENT TO THIS AGREEMENT (the "Arbitration Opt-Out Notice")."

Ex. B. In addition, the Terms and Conditions will cause confusion because its language does not match the language of the pop-up. The pop-up references "Dispute Resolution and Arbitration

Provision." The Terms and Conditions references "Exclusions from Arbitration/Right to Opt Out." *See* Ex. B; Ex. A.  It is doubtful a lay punitive plaintiff will know that the pop-up clause references that latter terms and conditions even if he or she was able to wade through the 12 pages of legalese to find the clause.  With such deficiencies present, the opt-out provision does not mitigate the coercive and misleading effects of the pop-up and updated Terms and Conditions.

Plaintiff is mindful of the court's decision in *Wilson v. Huuuge, Inc.*, 2020 WL 8771059 (W.D. Wash. Apr. 20, 2020), which involved a similar practice by another defendant in a near-identical case.  However, Plaintiff respectfully submits that the *Wilson* decision was decided incorrectly, and goes against the weight of authority within this Circuit. In particular, courts routinely hold that "failure to append the complaint, provide plaintiffs' counsel's contact information, explain plaintiffs' claims, or clearly describe the status of the case are commonly regarded (in various combinations) as omissions warranting corrective action."  *Kirby v. Kindred Healthcare Operating, LLC*, 2020 WL 4639493, at *3 (C.D. Cal. May 1, 2020) (emphasis added); *see also Kutzman v. Derrel's Mini Storage, Inc.*, 354 F. Supp. 3d 1149, 1155 (E.D. Cal. 2018) (collecting cases); *Slavkov v. Fast Water Heater Partners I, LP*, 2015 WL 6674575, at *2-3 (N.D. Cal. Nov. 2, 2015) (collecting cases); *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985) ("Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal.").

Here, "[i]t would have taken minimal effort or funds for [Defendants] to append the complaint … Defendants' failure to do so is strong evidence that they sought to ensure the putative class members would not have the complaint when making any decision...."  *Kirby*, 2020 WL 4639493, at *4.  Here, Defendants also state that the Court has not yet decided "whether the lawsuit can proceed as a class action."  That too is misleading.  *See id.* ("As for the status of the case, Defendants represent in the first paragraph of the letter that '[t]he Lawsuit has not been 'certified' as a class action.  A non-lawyer is highly unlikely to understand what that means.").  Such a threadbare description is plainly improper, and that this was overlooked by the court in *Wilson*. *See*

*Kirby*, 2020 WL 4639493, at *4 ("A slanted characterization, this description is incomplete and all but encourages putative class members not to join the class. … These inadequacies and omissions combine to render Defendants' communications with putative class members misleading."); *accord Slavkov*, 2015 WL 6674575, at *2, *4

Defendants' communications to class members are improper. They are misleading, unfair, and, at bottom, represent a naked attempt to coerce currently unrepresented putative class members into not participating in these lawsuits without fully understanding what they are giving up. *See* Wash. R. Prof'l Conduct 4.3. Plaintiffs are likely to succeed in their request for corrective action.

### B.   Plaintiff and Putative Class Members Will Suffer Irreparable Harm in the Absence of a TRO.

Because corrective action can only accomplish so much, each day Defendants' misleading communications continue to be disseminated causes irreparable harm to Plaintiff and putative class members. *See Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057 (9th Cir. 2009) (a showing of "the likelihood of irreparable harm" is required). "Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could well be irreparable." *Kleiner*, 751 F.2d at 1203.

As explained above, Defendants' communications with putative class members are misleading and inaccurate. And once misinformation has been communicated to putative class members, that bell cannot be unrung. *Grewe v. Cobalt Mortgage, Inc.*, 2016 WL 4547131, at *3 (W.D. Wash. Sept. 1, 2016) ("*Grewe II*") (holding that misleading communication to putative class members constituted irreparable harm because "neither the Court nor the parties can 'go back in time and prevent those misrepresentations from occurring'"); *see generally* Man-Pui Sally Chan, et al, *Debunking: A Meta-Analysis of the Psychological Efficacy of Messages Countering Misinformation*, 28 Psychol. Sci. 1531, 1531 (2017), https://cite.law/U5QS-2NF4 (meta-analysis focusing on "false beliefs … [that] occur when the audience initially believes misinformation and that misinformation persists or continues to exert psychological influence after it has been

1  rebutted"). "Because no official class notice has been sent, [Defendant's] coercive pop-up [and

2  Terms of Use] will be the first that many putative class members hear about these lawsuits. There

3  is a serious risk that putative class members, having been pressured to click away their right to

4  participate in these cases, will be inclined to disregard further communications about them." *Kater*

5  at 1064. "Convincing class members to take the steps necessary to secure recovery in a class

6  action settlement or judgment is often difficult." *Id.*, *see also Briseno v. ConAgra Foods, Inc.*, 844

7  F.3d 1121, 1130 (9th Cir. 2017) (noting "consistently low participation rates in consumer class

8  actions"). If putative class members have already formed the belief that they're not entitled to

9  participate, it will make that task even more difficult. Accordingly, even if the Court orders

10  corrective notice, that will not completely undo the fact that putative class members have already

11  received dangerously wrong information. That is irreparable harm. *See, e.g.*, *Grewe II*, 2016 WL

12  4547131, at *3; *Billingsley v. Citi Trends, Inc.*, 560 Fed. Appx. 914, 924 (11th Cir. 2014) (finding,

13  in FLSA context, that irreparable harm can occur in a misleading communication that results in

14  "planting the slightest seed of doubt or worry through the one-sided, unrebutted presentation of

15  'facts.'"). And Defendants' 'opt-out procedure does not counteract the irreparable harm because,

16  as explained above, it does not adequately inform users about the case nor adequately explain how

17  to opt-out of the "Dispute Resolution and Arbitration Provision" described in the pop-up.

18  In sum, the continued dissemination of Defendants' misleading communications causes

19  irreparable harm to Plaintiff and to putative class members. The Court should order a return to the

20  status quo mirroring when this case was filed, before Defendants changed their Terms of Use and

21  subsequently posted the "opt-out" pop-up window.

22  **C.  The Balance of Equities and Public Interest Favor Plaintiff.**

23  The final two factors, the balance of equities and the public interest, each favor Plaintiff.

24  In weighing equities, "the Court considers each party's claimed injury, as well as the effect

25  that granting or denying Plaintiff's motion would have on the parties." *Quinault Indian Nation v.*

26  *Kempthorne*, 2009 WL 734682, at *3 (W.D. Wash. Mar. 18, 2009). Issuance of this TRO would

27  have very little practical effect on Defendants. They would have to take down the new pop-up and

28

PLAINTIFF'S MOTION FOR TRO
CASE No. 2:20-cv-01310-RSM

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE
NEW YORK, NY 10019

1   restore the Terms of Use that existed before Defendants' recent revisions.  If, upon further

2   consideration, the Court finds that Defendants' communications were allowed, then they can

3   simply put the pop-up and the revised Terms of Use back online in a few weeks.[6]

4       For Plaintiff and putative class members, on the other hand, these communications have

5   "imposed significant hardship on the fair administration of this case." *Grewe I*, 2016 WL 4211530,

6   at *3.  As explained above, it is difficult, and sometimes impossible, to correct laypersons'

7   mistaken initial impressions, or even to get their attention after they have been told that they can't

8   participate in this case.  "If [Defendants] are right and this arbitration agreement is enforceable,

9   then it is unfair to require putative class members to decide whether they're going to submit to such

10  an agreement without meaningful information about their rights and options." *Kater*, 423 F. Supp.

11  3d at 1064.

12      To be clear, if this were a certified class, then it would be unethical for Defendants' counsel

13  to propose arbitration agreements to class members without the authorization of class counsel.  *See*

14  *Kirkpatrick v. Ironwood Communications, Inc.*, 2006 WL 8454762, at *4 (W.D. Wash. Nov. 1,

15  2006) ("Because the court has certified this action, class members are now represented parties. …

16  [T]he court emphasizes that it will impose severe sanctions and corrective measures if Plaintiffs

17  produce evidence of … attempts to influence class members as they decide whether to opt out of

18  this action. … The court expects that [defendant's] counsel's professional judgment will lead them

19  to advise [the defendant] that the prudent course is not to communicate with class members about

20  this lawsuit.").  But, to date, no class has been certified and no class counsel appointed.  Rather,

21  Defendants have evaded service of the lawsuit.  This delay has prevented Plaintiff both from filing

22  a class certification motion and from taking the discovery necessary to draft that motion.  It is

23

24  _____

    [6] In fact, the burden on Defendants is so light here that the Court can safely waive the security
25  requirement of Rule 65(c). *See Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) ("[T]he
    district court may dispense with the filing of a bond when it concludes there is no realistic
26  likelihood of harm to the defendant from enjoining his or her conduct."); *USAA Fed. Sav. Bank v.
    Bouchard*, 2017 WL 7053638, at *1 (W.D. Wash. Aug. 7, 2017) (waiving security requirement);
27  *Amazon.com, Inc. v. Moyer*, 417 F. Supp. 3d 1388, 1405 (W.D. Wash. 2019) ("find[ing] that bond
    is unnecessary" when "there is no realistic likelihood of harm to the defendant from enjoining his
    or her conduct.") (citation omitted).

28  PLAINTIFF'S MOTION FOR TRO                              BURSOR & FISHER, P.A.
    CASE NO. 2:20-cv-01310-RSM                                  888 SEVENTH AVENUE
                                                              NEW YORK, NY 10019

manifestly inequitable to permit Defendants to take advantage of this delay to try and get putative class members not to participate in this action before class counsel has an opportunity to advise them what they are giving up.  To that end, Plaintiff's counsel will, before the expiration of the TRO, seek an order appointing them interim class counsel for the purpose of negotiating any change to the existing legal relations between putative class members and Defendants.

The public interest, too, supports granting the TRO.  "Unapproved notices to class members which are factually or legally incomplete, lack objectivity and neutrality, or contain untruths will surely result in confusion and adversely affect the administration of justice." *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 846 (2d Cir. 1980).  The public certainly has an interest in the fair administration of justice.  Further, Defendants have effectively embarked on an unsanctioned opt-out campaign before the Court has even had a chance to consider class certification, let alone approve a fair and neutral class notice; such conduct "unquestionably frustrates the purposes of Rule 23." *Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 518 (N.D. Cal. 2010).  The public interest favors allowing courts to control the judicial process and ensure compliance with the Federal Rule of Civil Procedure.

## V.     CONCLUSION

The court should issue a temporary restraining order requiring Defendants to 1) immediately stop displaying the pop-up and 2) restore the Terms of Use to the version in place at the time this case was filed.

Dated: April 20, 2021                           Respectfully submitted,

                                                **CARSON NOEL PLLC**
                                                By:_____*/s/ Wright A. Noel*___
                                                        Wright A. Noel

                                                Wright A. Noel (State Bar No. 25264)
                                                20 Sixth Avenue NE
                                                Issaquah, WA 98027
                                                Telephone: (425) 837-4717
                                                Facsimile: (425) 837-5396
                                                Email: wright@carsonnoel.com

1

2                            **BURSOR & FISHER, P.A.**

3                            By:_____*/s/ Philip L. Fraietta*_____
                                      Philip L. Fraietta

4

5                            Philip L. Fraietta (*pro hac vice*)
                           Alec M. Leslie (*pro hac vice* app. pending)

6                            888 Seventh Avenue
                           New York, NY 10019

7                            Telephone: (646) 837-7150
                           Facsimile: (212) 989-9163

8                            E-Mail:  pfraietta@bursor.com
                                        aleslie@bursor.com

9

10                            *Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR TRO                                 BURSOR & FISHER, P.A.
CASE NO. 2:20-cv-01310-RSM                               888 SEVENTH AVENUE
                                                 NEW YORK, NY 10019

-17-