1

2                                                    The Honorable Ricardo S. Martinez

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
9

10   WILLIAM HEATHCOTE, individually and
     on behalf of all others similarly situated,
11                                                   NO. 2:20-cv-01310-RSM
                     Plaintiff,
12                                                   **DEFENDANTS' OPPOSITION TO**
           v.                                        **PLAINTIFF'S MOTION FOR**
13                                                   **TEMPORARY RESTRAINING ORDER**
     SPINX GAMES LIMITED, GRANDE
14   GAMES LIMITED, and BEIJING BOLE
     TECHNOLOGY CO., LTD.,
15
                     Defendants.
16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' OPPOSITION TO PLAINTIFF'S          Byrnes ♦ Keller ♦ Cromwell llp
MOTION FOR TEMPORARY RESTRAINING                         38th Floor
ORDER (NO. 2:20-CV-01310-RSM)                        1000 Second Avenue
                                                  Seattle, Washington 98104
                                                       (206) 622-2000

1676478

## I.      INTRODUCTION

Plaintiff Heathcote has no basis for the extraordinary relief he seeks. Not only does Plaintiff fail to meet the high standards for the sweeping emergency relief sought, but his motion fails at the outset because this Court lacks jurisdiction over Defendants.

*First*, Defendants are affiliated gaming companies headquartered in Beijing with no offices or employees in the United States. Although Plaintiff purports to have initiated service via the Hague Convention, Defendants have never been served with the complaint or the instant motion. Plaintiff asserts baselessly that Defendants have "evaded service" (Dkt. 15 ("Mot." at 15), but in fact, Plaintiff has simply failed to serve. The Hague Convention provides the mandatory means for service of process and the exercise of personal jurisdiction over Defendants, and Plaintiff has not complied with it. There is no justification for flouting Defendants' right under an international treaty designed to protect both U.S. and foreign citizens from being casually haled into a foreign court. Plaintiff's motion must be denied on this basis alone. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("A judgment entered without personal jurisdiction over the parties is void").

*Second*, Plaintiff cannot show he is likely to prevail on the merits of his claim that Defendants' notice informing putative class members of the revised terms of service is improper under Rule 23(d). This District has twice approved nearly identical notices by social gaming companies to alert putative class members of new terms of service and agreements to arbitrate. Those holdings are consistent with the clear weight of authority in this Circuit, where courts have repeatedly vindicated the First Amendment rights of businesses to communicate with their customers. These precedents hold that a defendant may obtain arbitration agreements from putative class members so long as "it does so in a manner that discloses information about this suit and affords an opt-out." *McKee v. Audible Inc.*, No. CV 17-1941-GW(Ex), 2018 WL 2422582, at *8-9 (C.D. Cal. Apr. 6, 2018). Defendants have done precisely that. For the same reason, there is nothing misleading or coercive about Defendants' communications, and certainly

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING
ORDER (NO. 2:20-CV-01310-RSM) - 1

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

nothing that would justify this Court restricting Defendants' communications with *all* its customers (whether members of the proposed class or not) for the pendency of this litigation, as Plaintiff demands.

**Finally**, Plaintiff fails to identify any emergency or irreparable harm justifying the issuance of a TRO or showing it would be equitable or in the public interest. Plaintiff has known about the revised terms of service since at least March 30, 2021, when he falsely advised the Court that Defendants had a new subsidiary in California — an inference Plaintiff could have only drawn from the revised terms themselves, which identify a California postal address for opt-outs to the arbitration agreement (not a California subsidiary nor even a California office). Plaintiff concedes that the new terms of service have been publicly available since at least February 8, 2021 (Mot. at 5), but he did not bring his motion until months later. Plaintiff does not explain his delay or identify any emergency that justifies extraordinary injunctive relief before a full briefing on the merits, much less proper notice to Defendants. Moreover, Plaintiff seeks a disfavored *mandatory* injunction requiring Defendants to reinstate prior terms of service. "Mandatory preliminary relief is subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." *Working Washington v. Central Puget Sound Regional Transit Authority*, 533 Fed. Appx. 716, 718 (9th Cir. 2013). Plaintiff cannot meet that high burden here.

For these reasons and as explained further below, Plaintiff's request for emergency relief is unwarranted, improper, and should be denied.

## II.      BACKGROUND

### A.      Factual Background

Defendants SpinX Games Limited, Grande Games Limited, and Beijing Bole Technology Co., Ltd. (together, "Defendants" or "SpinX") are affiliated mobile gaming app companies headquartered in Beijing, China. *See* Declaration of Panasarn Aim Jirut ("Jirut Decl.") ¶ 3. Neither Defendants, nor any of their affiliates, have offices or employees in the United States. *Id.*

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING
ORDER (NO. 2:20-CV-01310-RSM) - 2

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Defendants' games include social slot games that may be played through apps downloadable on mobile devices. *Id*. ¶ 4. Plaintiff identifies the following games in the operative complaint: Cash Frenzy, Vegas Friends, Jackpot Mania, Lotsa Slots, Dafu and Vegas Slots (collectively, the "SpinX games"). *See* Dkt. 14, First Amended Complaint ("FAC") ¶ 20.

Defendants' games are free to download, free to play, and never result in monetary prizes. Jirut Decl. ¶¶ 4-6. A substantial majority of Defendants' users do not ever pay money to play the SpinX games. Jirut Decl. ¶ 4. Players first receive free chips when they download the app and can obtain additional free chips in a variety of ways, meaning they need not purchase any virtual chips to play. *Id*. ¶ 4. For example, in Cash Frenzy Casino, the app allegedly used by Plaintiff, players can obtain additional free virtual chips every day simply by opening the app. *Id*. ¶ 5. Players may also receive additional free chips by participating in free promotional offers. *Id*. ¶ 5.

The SpinX games never award monetary winnings or real-world prizes. *Id*. ¶ 6. Players cannot "cash out" their virtual chips, as the virtual chips have no value. *Id*. ¶ 6. Although they can be played for free, the SpinX games, like many app-based games, allow players to buy more chips. *Id*. ¶ 6. But Defendants make clear to players, in their terms of service and through disclaimers in their advertisements, that virtual chips can be obtained for free, cannot be used outside the game, and cannot be converted to money or anything else of value. *Id*. ¶ 6.

Since at least 2018, years before Plaintiff filed this suit, Defendants' terms of service have included an arbitration agreement and class action waiver, providing that any dispute between Defendants and players would be resolved through individual, binding arbitration. *Id*., Ex. A (the "Prior Terms.") Under the Prior Terms, Defendants and players expressly waived their right to litigate claims in court, including through participation in class actions. *Id.*, Ex. A. Players had the ability to opt-out of the arbitration agreement and class action waiver by providing written notice, with no adverse impact on their relationship with Defendants or ability to continue playing the SpinX games. *Id.*

SpinX periodically updates its terms of service and privacy policy as part of its normal

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING
ORDER (NO. 2:20-CV-01310-RSM) - 3

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

business practices. *Id*. ¶8. After many months of planning, on or about February 8, 2021, SpinX began rolling out a revised terms of service and privacy policy for the SpinX games on their respective websites. *Id.* ¶8, Ex. B (the "New Terms"). Upon opening a SpinX game on their mobile device, players are presented with a pop-up notice titled, "We updated our Terms of Service and Privacy Policy." *Id*. ¶ 9. This notice contains several hyperlinks to the New Terms and specifically informs players that — as with the Prior Terms — the New Terms:

> include a "Dispute Resolution and Arbitration" provision requiring individual arbitration of any dispute and waiving your right to join any class action lawsuit or representative proceeding You may opt out of this provision by mailing us written notice within 30 days after you first accept these <u>Terms of Service</u>, as explained <u>here</u>. If you have questions about the legal effect of the <u>Terms of Service</u>, you should contact an attorney.

*Id*. The blue underlined "<u>Terms of Service</u>" contain hyperlinks to the full text of the New Terms, and the blue underlined text in "as explained <u>here</u>" links players directly to the provision describing how to opt-out. *Id*. In order to play the SpinX games, players must first acknowledge their assent to the New Terms by clicking a button that says, "I Agree, Let's Play!" *Id.* Players are informed that by so doing, "you agree to the Terms of Service and acknowledge you have read the Privacy Policy." *Id.*

### B.    Procedural History

Plaintiff filed suit in September 2020 seeking to represent a putative class of people in Washington who play Defendants' social mobile app games. *See* Dkt. 1. On April 9, 2021, Plaintiff amended its complaint to, *inter alia*, include additional defendants SpinX and Bole. *See* Dkt. 14.

To date, Plaintiff has not effectuated service of process for this lawsuit. In its filings, Plaintiff has repeatedly misrepresented to the Court that Defendants have a physical presence in the United States. *See*, e.g., Dkt. 10 at 2-3 (falsely stating that Grande Games "has a subsidiary head quartered in California"), Dkt. 16-5 at 1 (attaching invalid certificate of service to SpinX Games Limited at a San Francisco address). Neither SpinX nor any of the other Defendants or their subsidiaries has any offices or employees in the U.S. Jirut Decl. ¶ 4. SpinX is currently

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING
ORDER (NO. 2:20-CV-01310-RSM) - 4

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

leasing a post office box in San Francisco for the sole purpose of accepting opt-out notices from U.S. players, as set forth in the New Terms; should a U.S. player choose to opt out of the Dispute Resolution and Arbitration Provision, this post office box affords that player the convenience of sending notice through domestic U.S. mail, rather than requiring international mailing to Defendants' offices overseas. *Id.* ¶ 10.

Contrary to Plaintiff's suggestions, Defendants have not taken any measures to evade service. Because Defendants are headquartered in China, with no U.S. presence, service procedures are governed by the Hague Convention. Fed. R. Civ. P. 4(f); *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988) ("[C]ompliance with the [Hague Service] Convention is mandatory in all cases to which it applies[.]"); *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 980 (2020) ("The United States and China are both parties to the Hague Service Convention[].").  Neither international mail nor e-mail is a permitted form of service of process on defendants in China under the Hague Convention, as China has objected to service via "postal channels." Hague Conv., art. 10; *Facebook,* 480 F. Supp. 3d at 983-985; *Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465, 472 (D. Mass. 2020). Plaintiff has never contacted Defendants to ask whether they would waive service. *See* Jirut Decl. ¶ 13. Nor has Plaintiff sought leave of Court to serve Defendants through alternative means. On March 30, 2021, Plaintiff filed a status report, relaying that it was "still working through the Hague Convention to perfect service" and would be "filing a petition for alternative service." Dkt. 8 at 1-2. To date, the docket does not reflect any such filing.

## III.    LEGAL STANDARD

"A federal court is without personal jurisdiction . . . unless the defendant has been served in accordance with Fed. R. Civ. P. 4." *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) (citations omitted). A plaintiff bears the burden of proving that service was sufficient under Rule 4. *See Brockmeyer v. May*, 383 F. 3d 798, 801 (9th Cir. 2004).

A temporary restraining order is an "extraordinary remedy never awarded as of right."

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING
ORDER (NO. 2:20-CV-01310-RSM) - 5

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

*Garcia,* 786 F.3d at 740 (citation & internal quotation marks omitted). The Court may issue a temporary restraining order only when the movant shows (1) "a likelihood of success on the merits"; (2) "a likelihood of irreparable harm [to the moving party in the absence of] preliminary relief"; (3) "that [a] balance of equities tips in [the] favor [of the moving party]"; and (4) "that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20-21 (2008). The speculative risk of a possible injury is not enough; the threatened harm must be imminent and irreparable. *See Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

## IV.   ARGUMENT

### A.   The Court lacks jurisdiction to grant the extraordinary relief Plaintiff seeks.

Absent waiver, service of process "is an indispensable prerequisite to the Court's jurisdiction to proceed." *Beecher v. Wallace*, 381 F.2d 372, 373 (9th Cir. 1967). Lack of service in accordance with Rule 4 deprives a federal court is of personal jurisdiction. *Benny*, 799 F.2d at 492. "Neither actual notice, nor simply naming the person in the caption of the complaint, will subject defendants to [personal] jurisdiction if personal service was not made in substantial compliance with Rule 4." *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) (internal citations omitted).

Here, Plaintiff does not dispute that he must serve Defendants under the Hague Convention—nor could he, as "[c]ompliance with the Convention is mandatory in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft,* 486 U.S. at 705. Plaintiff represented to the Court that he initiated service under the Hague Convention "shortly after filing the complaint" on September 1, 2020, but concedes it is not complete. Dkt. 6. Plaintiff makes no other argument that service pursuant to the Rule 4 has been otherwise satisfied, as is his burden to show. *Brockmeyer*, 383 F. 3d at 801. Yet Plaintiff seeks to avoid the necessity of complying with Rule 4, the Hague Convention, and due process by merely e-mailing the complaint and the instant motion to various public e-mail addresses. Dkt. 19. This is insufficient under both Rule 4 and the

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER (NO. 2:20-CV-01310-RSM) - 6

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

1    Court's Minute Order regarding service. Dkt. 17.

2            The Hague Convention provides critical procedural rights that protect a nation's citizens

3    — including U.S. citizens — from being hailed into a foreign court without that nation's

4    knowledge and participation. Defendants enjoy the same procedural rights that protect Plaintiff

5    from being casually hailed into a Chinese court based on an email from a Chinese lawyer.

6            Notably, Plaintiff makes no representation at all about when he procured a Chinese

7    translation of the complaint, as the Hague Convention requires, or when he submitted complete

8    service packets to Chinese Central Authority. *See* Dkt. 6; *Pennsylvania Orthopedic Ass'n v.*

9    *Mercedes-Benz A.G.,* 160 F.R.D. 58, 60 (E.D.Pa. 1995) (noting that under Hague Convention,

10   judicial papers sent to a Central Authority for service have to be translated into the official

11   language of the foreign country). Although the Court ordered Plaintiff to "report back to the

12   Court on or before March 22, 2021 regarding service of the [C]omplaint," Dkt. 7, Plaintiff failed

13   to provide any update by that deadline or in the days after. On March 30, 2021, Plaintiff

14   submitted a "Report on Service of Process" stating only that "Plaintiff is still working through the

15   Hague Convention to perfect service" without further detail. Dkt. 8.

16           Plaintiff's tactics appear to be nothing more than an end-run around the mandatory service

17   requirements of Rule 4 and the Hague Convention, rather than in response to any particular

18   difficulties in serving Defendants. Nor does Defendants' counsel's special appearance here

19   change anything. *See, e.g., Silva v. Gonzalez,* No. 3:13-cv-1587, 2014 WL 12663140, at *6 n.4

20   (S.D. Cal May 23, 2014) ("It is well-settled . . . that a defendant does not waive the right to

21   contest personal jurisdiction by making a special appearance through counsel"). Because of

22   Plaintiff's failure to serve adequately, the Court lacks jurisdiction over Defendants. Plaintiff's

23   motion must be denied.

24       **B.      Plaintiff cannot show a likelihood of prevailing on the merits.**

25           Plaintiff frames the "relevant merits question" as whether, under Rule 23(d), "the Court

26   should limit Defendants' communications with putative class members and issue appropriate

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

corrective notice (among other potentially appropriate remedies)." Mot., at 7. As a general matter, class action defendants are "allowed to communicate with putative class members prior to certification of the class." *Nugussie v. HMS Host N. Am.*, No. C16-0268RSL, 2017 WL 1250420, at *1 (W.D. Wash. Apr. 5, 2017) (citing 3 Newberg on Class Actions § 9:7 (5th ed. Dec. 2019 update)). Pre-certification communications with potential class members by both parties are considered constitutionally protected speech. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-102 (1981). While district courts have authority "to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and [the] parties," any order restraining communications with putative class members must be based on "a clear record and specific findings that reflect . . . the need for a limitation and the potential interference with the rights of the parties." *Id.* at 100-101. To prevail, Plaintiff must demonstrate that Defendants engaged in coercive, misleading, or other abusive communications with the putative class. *See id.* at 101-03. He cannot do so here.

### 1.    SpinX's notice of the New Terms complies with this Court's prior orders.

Courts in this District have set forth clear guidance about the permissibility of communications with putative class members through mobile app pop-up notifications. In the related cases of  *Kater v. Churchill Downs Inc.*, No. 15-cv-00612 (W.D. Wash.), and *Thimmegowda v. Churchill Downs Inc.*, No. 19-cv-00199 (W.D. Wash.) (together, "*Kater*"), two putative class actions filed against social gaming app companies, the Court established the following guidelines regarding pop-up notifications to putative class members:

> Any pop-up or other initial communication directed to putative class members must do the following. First, ***it must reference the ability to (and provide instruction on how to) OPT-OUT of arbitration and out of the agreement to WAIVE a player's status as putative class member*** in either litigation. Second, ***it must briefly explain the rights at issue*** in these lawsuits such that an average user would understand what they are giving up by agreeing to the Terms. Finally, ***it must advise players to contact an attorney for advice on any of the legal terms and provide contact information for the Plaintiff's attorneys*** with respect to the class action

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING
ORDER (NO. 2:20-CV-01310-RSM) - 8

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

lawsuits. (Examples: "If you have questions about the legal effect of these provisions, you should contact an attorney." "Plaintiffs in the putative class actions are represented by [Plaintiffs' attorneys' contact information].").

*Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055, 1065 (W.D. Wash. 2019) (emphasis added).

Defendants' notice informing players about the New Terms complies with each of these requirements to the letter. The notice clearly and neutrally informs players of changes to its terms of service, with six separate links to the full text of the New Terms. In all material respects, Defendants incorporated the precise notice language that has already twice been approved by the *Kater* Court as adequately protecting the rights of putative class members under Rule 23(d), as reflected in the chart below.

| | SpinX's Notice | Huuuge's Notice (approved) | Big Fish's Notice (approved) |
|---|---|---|---|
| Citation Reference | Plaintiff's Mot. for TRO, at 7-8 | Appendix B to Defendants' Opposition to Plaintiff's Mot. for TRO | Appendix A to Defendants' Opposition to Plaintiff's Mot. for TRO |
| Pop-Up Text | **We have updated our Terms of Service and Privacy Policy.**<br><br>By tapping the button below, you agree to our updated <u>Terms of Service</u>. These terms include a "Dispute Resolution and Arbitration Provision" requiring individual arbitration of any dispute and waiving your right to join any class action lawsuit or other representative proceeding. You may opt out of this provision by mailing us written notice within 30 days | **We have updated our Terms of Use and Privacy Policy**<br><br>Huuuge Games' <u>Terms of Use</u> include a "Governing Law and Binding Arbitration" provision requiring individual arbitration of any dispute and waiving the right to participate in any class action lawsuit or other representative proceeding. By clicking the button below or continuing to access the | **Big Fish Casino**<br><br>Big Fish Games' <u>Terms of Use</u> include a "Dispute Resolution By Binding Arbitration" provision requiring individual arbitration of any dispute and waiving the right to participate in any class action lawsuit or other representative proceeding. By clicking the button below or continuing to access the game, you agree to these Terms of Use. However, you may opt out of the Dispute Resolution |

after you first accept these Terms of Service, as explained here. If you have questions about the legal effect of the Terms of Service, you should contact an attorney.

Players in WASHINGTON STATE ONLY, please continue reading: There is a pending lawsuit in federal court in Washington State relating to Grande Games, Ltd. This lawsuit asserts claims under Washington Law, including the Recovery of Money Lost at Gambling Act and the Consumer Protection Act. The lawsuit seeks to recover money allegedly lost while playing Grande Games' games. Grande Games denies the claims and believes they have no merit. The court has not yet decided who is right or whether the lawsuit can proceed as a class action. The plaintiff in the lawsuit is represented by attorneys at the law firm of Bursor & Fisher, P.A., who may be contacted at (646) 837-7150. If you accept the Terms of Service and do not opt out of the Dispute Resolution and Arbitration Provision, you cannot participate in this lawsuit, even if a class is certified.

By tapping the button below you agree to the Terms of Service and acknowledge you have read the Privacy Policy.

**I Agree, Let's Play!**

game, you agree to these Terms of Use. However, you may opt out of the Governing Law and Binding Arbitration provision by mailing written notice to Huuuge within 30 days of accepting the Terms of Use. This opt-out procedure is detailed in the Terms of Use, available here. If you have questions about the legal effect of the Terms of Use, you should contact an attorney.

FOR PLAYERS IN WASHINGTON STATE ONLY: There is a pending lawsuit in federal court in Washington State relating to Huuuge Casino. This lawsuit asserts claims under Washington Law, including the Recovery of Money Lost at Gambling Act and the Consumer Protection Act. The lawsuit seeks to recover money allegedly lost while playing Huuuge Casino. Huuuge denies the claims and believes they have no merit. The court has not yet decided who is right or whether the lawsuits can proceed as class actions. The individually named plaintiff in this lawsuit is represented by attorneys at the law firm Edelson PC, who may be contacted at 800-347-5750. If you accept the Terms of Use and do not opt out of the Governing Law and Binding Arbitration provision, you cannot participate in this lawsuit, even if a class is certified.

By clicking on the button below or continuing to access the game, you agree to the

provision by mailing written notice to Big Fish Games Legal Department within 30 days of accepting the Terms of Use. This opt-out procedure is detailed in the Terms of Use, available here. If you have questions about the legal effect of the Terms of Use, you should contact an attorney.

There are two pending lawsuits in federal court in Tacoma, Washington relating to Big Fish Casino. These lawsuits assert claims under Washington Law, including the Recovery of Money Lost at Gambling Act and the Consumer Protection Act. The lawsuits seek to recover money allegedly lost while playing Big Fish Casino. Big Fish Games denies the claims and believes they have no merit. The court has not yet decided who is right or whether the lawsuits can proceed as class actions. The individual named plaintiffs in these lawsuits are represented by attorneys at the law firm Edelson PC, who may be contacted at 800-347-5750. If you accept the Terms of Use and do not opt out of the Dispute Resolution provision, you cannot participate in these lawsuits, even if a class is certified.

**I Agree to the Terms of Use**

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING
ORDER (NO. 2:20-CV-01310-RSM) - 10

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

| | | <u>Terms of Use</u> and <u>Privacy Policy</u>.<br><br>**I Agree to the Terms of Use** | |
|---|---|---|---|

The differences between Defendants' notice and previously approved notices are insignificant and non-substantive: (i) SpinX's arbitration provision has a different title ("Dispute Resolution and Arbitration Provision"); (ii) SpinX's notice contains an even clearer address to Washington players, beginning the paragraph about this lawsuit with the headline, "Players in WASHINGTON STATE ONLY, please continue reading . . . "; (iii) SpinX's terms specify contact information for the counsel of the "plaintiff" in this case, rather than of the "individually named plaintiff"; (iv) SpinX's notice includes language advising "By tapping the button below you agree to the Terms of Service and acknowledge you have read the Privacy Policy" next to the "I Agree" button; and (v) the button players must click to assent to SpinX's Terms reads  "I Agree, Let's Play!" instead of simply "I Agree," clarifying that a user cannot play the game without accepting the Terms.

**2.      Plaintiff's authority is inapposite.**

Plaintiff never addresses that notice language nearly identical to SpinX's has been twice approved as proper under Rule 23. Instead, he fixates on an order in *Kater* that **predates** the Court's approval of the language at issue and complains that *Huuuge* was "decided incorrectly." Mot. at 12. Neither argument has merit.

In *Kater*, the Honorable Judge Ronald B. Leighton initially granted a temporary restraining order to limit dissemination of a pop-up notification the defendant, Big Fish Games, had implemented. *See* Mot. at 11 (citing *Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055, 1062 (W.D. Wash. 2019)). Yet Judge Leighton made clear that he was not inclined to "impose a sweeping bar on all communications by Big Fish to its customers, even if they are putative class members," and he advised the parties to propose new language for the pop-up. *Kater,* 423 F. Supp. 3d at 1063. Judge Leighton subsequently **approved** Big Fish's pop-up notification advising

putative class members about Big Fish's revised terms using language nearly identical to Defendants' notice here. *See* App'x A (Dec. 19, 2019 *Kater* order approving pop-up). Plaintiff's motion entirely omits any mention of Judge Leighton's approval of that language, incorrectly suggesting that he ruled no communication at all was permissible.

Four months later, upon a TRO brought in the matter of *Wilson v. Huuuge*, No. 18-cv-05276 (W.D. Wash.), Judge Leighton evaluated whether a pop-up message that the defendant had inserted in its casino game app was proper under Rule 23(d). Citing the prior *Kater* decision, Judge Leighton observed that the defendant's pop-up "utilize[d] language very similar to a pop-up that the Court approved in a similar case because it provided instructions on opting-out of the app's terms of use, explained the rights at stake in the ongoing lawsuit, and provided contact information for the plaintiff's attorney." *Wilson v. Huuuge, Inc.*, No. 18-cv-05276-RBL, 2020 WL 8771059, at *1 (W.D. Wash. Apr. 20, 2020); *see also* App'x B (Apr. 20, 2020 *Huuuge* order approving pop-up). The Court found that the defendant's notice complied with the requirements the Court had previously articulated and denied the TRO. *Id.* at *2.

Plaintiff concedes that *Huuuge* was a "near-identical case" but argues incorrectly that it "goes against the weight of authority within this Circuit." Mot., 12. Plaintiff is mistaken. The Court's approval of the notices to putative class members in *Kater* and *Huuuge* is consistent with other holdings within the Ninth Circuit, where courts have established that a defendant may obtain arbitration agreements from putative class members in litigation so long as "it does so in a manner that discloses information about this suit and affords an opt-out." *McKee*, 2018 WL 2422582 at *8-9; *see also O'Connor v. Uber Tech., Inc.*, No. 13-cv-03826, 2015 WL 9460292, at *3 (N.D. Cal. Dec. 23, 2015), *rev'd on other grounds*, 904 F.3d 1087 (9th Cir. 2018) (rejecting plaintiffs' argument that "a company may be barred from implementing *any* arbitration agreement, even if the arbitration agreement contains robust notice and opt out provisions") (collecting cases).

In fact, Plaintiff relies almost entirely on cases where courts found communications with

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING
ORDER (NO. 2:20-CV-01310-RSM) - 12

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

putative class members were improper *because* the defendant failed to provide adequate notice and opt out provisions. *See* J*imenez v. Menzies Aviation Inc.*, No. 15-cv-02392-WHO, 2015 WL 4914727, at *6 (N.D. Cal Aug. 17, 2015) (finding mid-litigation communication regarding new arbitration requirement impermissible because the communication "provided no opportunity to opt-out"); *Balasanyan v. Nordstrom, Inc.*, No. 11-cv-2609-JM-WMC, 2012 WL 760566, at *3 (S.D. Cal. March 8, 2012) (employee arbitration agreement "introduced during the pendency of litigation" impermissible because "no opt-out was available"); *O'Connor v. Uber*, No. C-13-3826-EMC, 2013 WL 6407583, at *6 (N.D. Cal. Dec. 6. 2013) (opt-out provision requiring "hand delivery or overnight mail" of written notice unduly onerous, but noting that "less burdensome" means, including "first class mail" acceptable). Here, SpinX's notice of the New Terms expressly provides that players may opt out of the New Terms via U.S. mail 30 days after receiving notice. *See* Jirut Decl., ¶ 9.

Moreover, the New Terms never require SpinX's players to waive their claims for relief, regardless of whether they opt-out of arbitration. Players who do not opt out may pursue a claim for relief via arbitration, and players who opt out retain the right to sue in court. Jirut Decl., Ex. B, § 18. Accordingly, Plaintiff's authority addressing settlement offers that release claims for relief by putative class members are inapt. *See Kirby v. Kindred Healthcare Operating, LLC*, No. 19-cv-00833-JLS-DFM, 2020 WL 4639493, at *3 (C.D. Cal. May 1, 2020) (finding settlement offer letters that failed to append the complaint impermissible and noting that in the specific context of settlement agreements, "the goal is informed consent to the settlement"); *County of Santa Clara v. Astra USA, Inc.*, No. C 05-03740 WHA, 2010 WL 2724512, at *4-5 (N.D. Cal. July 8, 2010) ("accord and satisfaction" refund payments that extinguished all potential claims impermissible); *Kutzman v. Derrel's Mini Storage, Inc.*, 354 F. Supp. 3d 1149, 1151-1152, 1156 (E.D. Cal. 2018) (settlement offers to employee putative class members impermissible). The unique concerns surrounding communications of settlement offers are not at issue in this case.

In short, courts in this District have already found that communications to putative class

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING
ORDER (NO. 2:20-CV-01310-RSM) - 13

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

members which are nearly identical to the communications at issue here are proper under Rule 23(d), and those prior decisions are consistent with the weight of authority in this Circuit. Accordingly, Plaintiff cannot show that he is likely to prevail on the merits of his challenge.

### 3.   SpinX's notice and terms of service are not coercive, misleading, or otherwise improper.

The Court's prior orders aside, Plaintiff cannot show that he is likely to prevail on his claim that SpinX's notice to players is coercive, misleading, or otherwise improper. SpinX is entitled to update its agreements with users in the ordinary course of business. *See Cty. of Santa Clara v. Astra USA, Inc.*, 2010 WL 2724512, at *3 (N.D. Cal. July 8, 2010) ("A business entity has the right to communicate with its customers over the normal course of business . . . ."). In doing so, SpinX has proactively and responsibly ensured that its users are apprised of these updates, and their corresponding rights and obligations. Plaintiff's arguments to the contrary all fail.

First, Plaintiff's mischaracterizations of Defendants' notice are belied by the plain language of the communication itself. For example, Plaintiff claims that SpinX's notice and New Terms are "highly misleading" insofar as they "do not provide any details about Plaintiff's claims in the pop-up." Mot. at 10. But the screenshots of SpinX's notice that Plaintiff includes in his motion show precisely the opposite. The notice informs players:

> There is a pending lawsuit in federal court in Washington State relating to Grande Games, Ltd. This lawsuit asserts claims under Washington Law, including the Recovery of Money Lost at Gambling Act and the Consumer Protection Act. The lawsuit seeks to recover money allegedly lost while playing Grande Games' games.

Mot. at 2-3. The notice also identifies Plaintiff's counsel and provides a phone number at which they  may be contacted. As explained, *supra*, SpinX's notice closely hews to what the Court has already approved in a prior case as a "neutral message" that "clearly (if drily) explains what is at stake in these lawsuits" and "satisfies Rule 23(g)." App'x A at 3 (Dec. 19, 2019 *Kater* order approving pop-up). Plaintiff also falsely claims that SpinX's notice "provides no instruction" on how users may opt out of the arbitration provision. Not so. SpinX's notice expressly states:

Byrnes ✦ Keller ✦ Cromwell llp
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

> You may opt out of this provision by mailing us written notice within 30 days after you first accept these <u>Terms of Service</u>, as explained <u>here</u>.

Mot. at 2. Contrary to Plaintiff's assertion, a user need not "navigate through 12 pages of legalese" to learn how to opt out. Mot. at 11. By clicking the word "<u>here</u>," which is conspicuously hyperlinked in the notice, a user is taken to directly to the "Exclusions from Arbitration/Right to Opt Out" section in the New Terms through a bookmarked link. Jirut Decl. ¶ 9. That provision sets forth the procedure for opting out of arbitration, which any user may do within 30 days of accepting the New Terms. *Id.*

Plaintiff further argues that Defendants' changes to its contract are "more egregious" than the changes made in *Kater* because the New Terms include an arbitration and class action waiver, whereas the Prior Terms did not. Mot. at 10; *see also id.* at 5 (asserting that the Prior Terms did not previously "contain any terms with regard to dispute resolution whatsoever"). Wrong again. Since at least 2018, Defendants' Prior Terms contained a Dispute Resolution and Arbitration provision, by which players were subject to a binding arbitration agreement and class action waiver. Jirut Decl., Ex. A. Accordingly, Plaintiff's claim that the notice and the New Terms are misleading or coercive is entirely baseless.

Plaintiff's other arguments fare no better. Plaintiff complains that the notice does not inform players of the New Terms' choice-of-law provision. Mot. at 15. This Court has already rejected the argument that a notice must explain how each contractual provision (including choice of law) might possibly affect the claims in pending litigation, so long as the notice conveys the "easily-understood bottom line" that "clicking 'I agree' will preclude them from participating in the lawsuit." *Wilson,* 2020 WL 8771059 at *1. Moreover, Plaintiff cites no authority for the proposition that Defendants were required to obtain or ensure "the Court's authorization or knowledge" before it updated its contract with customers. The Supreme Court has made clear that, so long as communications are proper, a defendant may communicate with putative class members without any pre-approval by the Court. *See Gulf Oil Co.*, 452 U.S. at 101. Further, Plaintiff's suggestion that Defendants may not require players to accept the terms of service as a

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING
ORDER (NO. 2:20-CV-01310-RSM) - 15

Byrnes ◆ Keller ◆ Cromwell llp
38th Floor
1000 Second Avenue
Seattle, Washington 98104
(206) 622-2000

condition of play is incorrect as a matter of law. Requiring customers to accept terms of service before using web-based services is a common and necessary aspect of conducting business on the Internet. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (discussing types of contracts formed on the Internet, noting that "[w]hile new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract"); *Express Lien, Inc. v. Handle, Inc.*, No. CV 19-10156, 2020 WL 1030847, at *3 (E.D. La. Mar. 3, 2020) ("It is generally known that today, use of virtually any website requires the acceptance of such a website's terms."); S*wift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) (holding that a binding contract is formed where a plaintiff is provided notice and an opportunity to review terms of service via a hyperlink in a pop-up notice and then clicks a nearby "I accept" button).

Finally, Plaintiff contends that Defendants' notice is coercive because the SpinX games are "psychologically addictive." Mot. at 9. That attorney argument finds no support in law or fact and cannot satisfy Plaintiff's burden here. Moreover, Defendants take seriously their responsibilities to encourage responsible gameplay and direct players to resources that can help identify and combat gambling addictions. *See* Jirut Decl. ¶ 12.

In sum, Plaintiff cannot show he is likely to prevail on the merits of his claim that Defendants' notice to putative class members violates Rule 23(d). His motion should be denied.

## C.   Plaintiff has made no showing of an emergency or irreparable harm justifying a mandatory injunction.

"It is well established that preliminary injunctions or TROs are drastic remedies, and only granted in the most extraordinary of circumstances." *Fuller v. King Cty. Superior Ct.*, No. C07-628RSM, 2008 WL 495844, at *2 (W.D. Wash. Feb. 21, 2008) (Martinez, J.). To obtain a temporary restraining order, a "plaintiff *must show* that she is likely to suffer irreparable harm in the absence of preliminary relief." *AdTrader, Inc. v. Google LLC*, No. 17-cv-07082-BLF, 2018 WL 1876950, at *3 (N.D. Cal. Apr. 19, 2018) (citation & internal quotation marks omitted) (emphasis in original); *see also Gulf Oil*, 452 U.S. at 101 (order restricting communications with

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER (NO. 2:20-CV-01310-RSM) - 16

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

putative class members must be "based on a clear record and specific findings"). The speculative risk of a possible injury is not enough; the threatened harm must be imminent. *Caribbean Marine,* 844 F.2d at 674; *Block v. Washington State Bar Ass'n,* No. C15-2018 RSM, 2016 WL 7734930, at *1 (W.D. Wash. Apr. 1, 2016).

Here, Plaintiff was aware of Defendants' update to its terms of service for weeks before seeking relief, belying any assertion that harm or injury is "imminent." Nor can Plaintiff's conclusory and speculative assertions about injury justify granting such an extraordinary remedy.

### 1.   Plaintiff cannot identify any specific facts showing a threat of immediate or irreparable injury.

The threat of irreparable harm must imminent be to warrant a temporary restraining order. *Caribbean Marine Services,* 844 F.2d at 674. An unexplained delay in seeking a temporary restraining order implies a lack of urgency and irreparable harm. *See, e.g., Rumfish Y Vino Corp. v. Fortune Hotels, Inc.*, 403 F. Supp. 3d 1227, 1232 (M.D. Fla. 2019) (holding that "the injury . . . is not so imminent that notice and a hearing should not be required" where plaintiffs were aware of the complained-of activities a month before seeking a TRO); *Trachsel v. Buchholz*, No. C-08-02248 RMW, 2008 WL 2383080, at *4 (N.D. Cal. June 8, 2008) (five week delay in seeking TRO indicated a lack of irreparable harm).

On March 30, 2021, Plaintiff filed a status report with this Court in which he noted that Grande Games, Ltd. "now has a subsidiary head quartered in California" and that he would be filing a petition for alternate service on "the subsidiary." Dkt. 8. Defendants have no affiliate or subsidiary in California, and the only public address in California associated with Defendants is a post office box listed in the New Terms for the sole function of receiving opt-out notices from players. Jirut Decl., ¶ 10. Thus, Plaintiff could have only learned of Defendants' California mailbox by reviewing the New Terms at some point prior to March 30. Accordingly, Plaintiff concedes that he was aware of Defendants' revisions to its contract with players nearly a month before moving for a TRO, if not earlier. Indeed, Defendants have not hidden the fact that they were updating their terms: as Plaintiff concedes, the New Terms have been publicly available on

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER (NO. 2:20-CV-01310-RSM) - 17

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Defendants' website since at least February. Mot. at 5. Plaintiff's delay confirms that he faces no imminent risk of irreparable harm that justifies issuance of a TRO and is fatal to his request for emergency relief.

### 2.   Plaintiff asserts only speculative "harm."

Plaintiff fails to identify specific facts showing immediate and irreparable injury, and at most identifies a speculative one: that putative class members *might* "be inclined to disregard further communications" related to this case after reviewing Defendants' notice. Mot. at 14. In other words, Plaintiff theorizes that once a player views Defendants' notice, they may choose to ignore any future communications related to this case – whether it be a pop-up notification, an email, or anything else. But a speculative injury does not constitute "irreparable harm" sufficient to warrant a temporary restraining order. *See Colorado River Indian Tribes v. Town of Parker*, 776 F.2d 846, 849 (9th Cir. 1985); *see also Gulf Oil*, 452 U.S. at 101; *AdTrader*, 2018 WL 1876950, at *3; *Gottstein v. Nat'l Ass'n for the Self Employed*, 186 F.R.D. 654, 655-57 (D. Kans. 1999) (denying in relevant part defendants' motion for protective order to preclude plaintiff's counsel from communicating with potential class members, because defendants' motion was based only on "speculation" and "conjecture" that such communications would harm their reputation and profits); *Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 244 (E.D. Tex. 1997) ("[T]here must be some evidence that justifies an interference with Defendant's speech.").

Nor can Plaintiff show, as he must, that the speculative harm he identifies would be irreparable. *See Winter*, 555 U.S. at 20-21. Plaintiff hypothesizes that if the Court later concludes that the arbitration agreement is not enforceable, certifies a class, and finds class members are entitled to relief, some putative class members may mistakenly believe they may not participate in the class action because of Defendants' notice. Even assuming this conjecture is likely – which it is not – any perceived problem can be easily remedied with class notice.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING
ORDER (NO. 2:20-CV-01310-RSM) - 18

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Because the harm identified here would either be remedied by a notice from the Court, Plaintiff has failed to demonstrate that there is a risk of irreparable harm warranting a temporary restraining order.

**D.      The equities weigh overwhelmingly in Defendants' favor.**

The "balance of equities" inquiry requires the Court to "balance the competing claims of injury and . . . consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation & internal quotation marks omitted). At the outset, Plaintiff identifies no equities weighing in his favor because he alleges no harm to himself, and only implausible, speculative harm to putative class members. *See* Section C, *supra*.

Granting Plaintiff the relief he requests would not provide any additional benefit to him or putative class members. The New Terms already includes a clear procedure to opt out of the arbitration and class waiver provisions, and any theoretical misconceptions about class action participation eligibility could be corrected, in the unlikely event it was necessary, on final notice. *See* Section C, *supra*. Further, Defendants' notice advises putative class members about this litigation and provides contact information to reach Plaintiff's counsel if they have questions about participation. Indeed, Plaintiff's counsel has confirmed that they have been in communication with putative class members who saw Defendants' notice. Dkt. 16 at ¶5.

On the other side of the scale, Plaintiff asks this Court to order Defendants to "take down the new pop-up and restore the Terms of use that existed before Defendants' recent revisions." Mot. at 14-15. Granting this extraordinary relief would directly impair Defendants' ability to conduct their business operations and their right to speak and contract freely with customers. *See* Jirut Decl. ¶ 11. If Plaintiff is to be believed, Defendants are forbidden from making any change to its contract with customers or the manner in which it is presented for the duration of this lawsuit. But Plaintiff identifies no authority supporting such a result.

Finally, Plaintiff's assertion that Defendants can simply remove the notice and reinstitute it later without no consequence is simply not true. Mot. at 14-15. Defendants' revision of their

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING
ORDER (NO. 2:20-CV-01310-RSM) - 19

Byrnes ♦ Keller ♦ Cromwell llp
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

terms of service and notice to customers was part of a careful process that took into account the relevant laws and regulations, as well as the business consideration of interrupting users' gameplay with a legal notice. Jirut Decl., ¶ 11. Regular interruption of gameplay with in-app notifications and changes to the terms of service will cause frustration and confusion among Defendants' customers and interfere with Defendants' business.

In sum, Plaintiff does not allege a cognizable injury or identify the detrimental impact of the denial of his requested relief. The balance of equities does not tilt in his favor. *See Winter*, 555 U.S. at 24.

### E.    Plaintiff fails to show an injunction is in the public interest.

Plaintiff further fails to show that granting the requested relief would further the public interest. *See Winter*, 555 U.S. at 32.

*First*, Plaintiff argues that Defendants' notice and New Terms interfere with the fair administration of justice, but the authorities he cites for this proposition are inapposite. For example, in *Erhardt v. Prudential Group*, 629 F.2d 843 (2d Cir. 1980), the defendant's CEO sent letters to certified class members "urging them to disassociate themselves from the lawsuit" *after* court-ordered class notice had been mailed to class members and *during* the period in which class members could choose to opt out of the class. *Id.* at 845. In *Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509 (N.D. Cal. 2010), employer defendants "threatened that participation in the case would . . . prevent the worker from being hired anywhere else" and used that threat to coerce putative class members' agreement to waive their right to participate in the class action. *Id.* at 512-13. In *Grewe v. Cobalt Mortg., Inc.*, an objector to an FLSA settlement sent a letter to the putative collective action members *after* the Court had approved the FLSA settlement and notice procedure. No. C16-0577-JCC, 2016 WL 4211530, at \*1-3 (W.D. Wash. Aug. 10, 2016). The letter grossly mischaracterized the Court's settlement order, and included a "particularly concerning" solicitation to the putative settlement class to contact the *objector's* law firm. *Id.* at \*3. Here, unlike the defendants in *Erhardt, Li,* and *Grewe*, Defendants' routine update to its terms

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING
ORDER (NO. 2:20-CV-01310-RSM) - 20

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

of service and communication with its customers are not part of "an unsanctioned opt-out campaign" contrary to the public interest. Mot. at 16.

**Second**, as Plaintiff concedes, there has been no class certification in this case. Mot. at 15. Defendants' communications are therefore not only ethically permissible, but are constitutionally protected speech as long as the communications are within the parameters designed to protect the rights created by Fed. R. Civ. P. 23. *Gulf Oil Co.*, 452 U.S. at 101-102; *Kater*, 423 F. Supp. 3d at 1063 ("Before a class is certified, counsel for both parties maintain a free-speech right to communicate with putative class members, *ex parte*, about the lawsuit.") (internal quotation marks and alterations removed); *Kutzman,* 354 F. Supp. 3d at 1153 (same); *Retiree Support Grp. of Contra Costa Cty. v. Contra Costa Cty.*, No. 12-CV-00944-JST, 2016 WL 4080294, at *6 (N.D. Cal. July 29, 2016) ("The parties . . . are free to encourage class members to opt out of or vote against a class action settlement, provided they do so in a fair manner that avoids material misrepresentations or omissions."). As explained above, Defendants' notification to putative class members is proper under Rule 23. *See* Section B above. Granting the requested relief would impermissibly restrain Defendants' constitutional right to speak and contract freely with its customers.

**Finally**, the requested relief is also impermissibly overbroad. Plaintiff ignores the clear directive from the U.S. Supreme Court in *Gulf Oil Co.* that any order "limiting communications between parties and potential class members" must be "carefully drawn [to] limit[] speech as little as possible, consistent with the rights of the parties under the circumstances." 452 U.S. at 101-102*; see also, Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 99 Civ 4567(AGS), 2001 WL 1035132, at *6 (S.D.N.Y. Sept. 7, 2001) ("[P]rohibiting GM from entering into further agreements would infringe upon GM's freedom of speech and upon GM's ability to conduct its business."). Instead, Plaintiff seeks to force Defendants and their customers around the world – both putative class members and many others – to adopt a prior version of the terms of service for however long this litigation might last. Because Plaintiff's requested relief fails to account for

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING
ORDER (NO. 2:20-CV-01310-RSM) - 21

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

Defendants' constitutional right to speak to their customers, and is not tailored to any specific harm, his motion must be denied. *See Winter*, 508 F.3d at 886; *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

For all these reasons, the public interest weighs against granting the requested temporary restraining order.

## V.     CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion.

DATED this 23rd day of April, 2021.

BYRNES KELLER CROMWELL LLP

By /s/ Bradley S. Keller
    Bradley S. Keller, WSBA #10665
By /s/ John A. Tondini
    John A. Tondini, WSBA #19092
    1000 Second Avenue, 38th Floor
    Seattle, WA 98104
    Telephone:  (206) 622-2000
    bkeller@byrneskeller.com
    jtondini@byrneskeller.com

    Ajay S. Krishnan*
    Michelle Ybarra*
    Patrick E. Murray*
    Connie P. Sung*
    Keker, Van Nest & Peters LLP
    633 Battery Street
    San Francisco, CA 94111-1809
    ***Attorneys for Defendants***

    *Pro hac vice* applications pending.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING
ORDER (NO. 2:20-CV-01310-RSM) - 22

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on the 23rd day of April, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel on record in the matter.

/s/ John A. Tondini
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, WA  98104
Telephone:  (206) 622-2000
Facsimile:  (206) 622-2522
jtondini@byrneskeller.com

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING
ORDER (NO. 2:20-CV-01310-RSM) - 23

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

# APPENDIX A

1        HONORABLE RONALD B. LEIGHTON

2

3

4

5

6                    UNITED STATES DISTRICT COURT
7              WESTERN DISTRICT OF WASHINGTON
                          AT TACOMA
8

9   CHERYL KATER and SUZIE KELLY, individually        CASE NO. C15-0612-RBL
    and on behalf of all others similarly situated,

10                                                     ORDER ON PARTIES'
                    Plaintiffs,                        PROPOSED POP-UP
          v.                                           LANGUAGE AND
11                                                     DEFENDANTS' MOTION
                                                       FOR EXTENSION OF
12   CHURCHILL DOWNS INCORPORATED, a                   TIME TO FILE NOTICE
     Kentucky corporation, and BIG FISH GAMES,         OF APPEAL
     INC., a Washington corporation,
13

14                  Defendants.

15   MANASA THIMMEGOWDA, individually and on
     behalf of all others similarly situated,

16

17                  Plaintiff,

18          v.                                         CASE NO. C19-0199-RBL

19   BIG FISH GAMES, INC., a Washington                ORDER ON PARTIES'
     corporation; ARISTOCRAT TECHNOLOGIES              PROPOSED POP-UP
20   INC., a Nevada corporation; ARISTOCRAT            LANGUAGE AND
     LEISURE LIMITED, an Australian corporation; and   DEFENDANTS' MOTION
21   CHURCHILL DOWNS INCORPORATED, a                   FOR EXTENSION OF
                                                       TIME TO FILE NOTICE
     Kentucky corporation,                             OF APPEAL
22

23                  Defendants.

24

ORDER - 1

1    On November 19, 2019, the Court granted Plaintiff's Motion seeking to enjoin

2    Defendants' pop-up message to users, which required them to forfeit their right to participate in

3    these lawsuits in order to continue playing Defendants' app-based gambling games. *Kater* Dkt.

4    # 137; *Thimmegowda* Dkt. # 88. But rather than simply prohibiting pop-ups, the Court identified

5    several requirements that must be met for Defendants' future communications with class

6    members to comply with Rule 23(d):

7       Any pop-up or other initial communication directed to putative class members
        must do the following. First, it must reference the ability to (and provide
8       instruction on how to) OPT-OUT of arbitration and out of the agreement to
        WAIVE a player's status as putative class member in either litigation. Second, it
9       must briefly explain the rights at issue in these lawsuits such that an average user
        would understand what they are giving up by agreeing to the Terms. Finally, it
10      must advise players to contact an attorney for advice on any of the legal terms and
        provide contact information for the Plaintiff's attorneys with respect to the class
11      action lawsuits. (Examples: "If you have questions about the legal effect of these
        provisions, you should contact an attorney." "Plaintiffs in the putative class
12      actions are represented by [Plaintiffs' attorneys' contact information].").

13   *Kater* Dkt. # 137; *Thimmegowda* Dkt. # 88. The Court

14   encouraged the parties to draft language together.

15       However, rather than coming up with mutually-

16   agreeable language, Defendants' filed a Statement on

17   November 29 with the parties' two starkly-different

18   proposals attached. *Kater* Dkt. # 138; *Thimmegowda*

19   Dkt. # 89. Plaintiffs' proposal is a 3-page long, FAQ-

20   style description of the lawsuits and the rights players

21   may lose if they consent to the Terms of Use. *Kater*

22   Dkt. # 138-2; *Thimmegowda* Dkt. # 89-2. The final

23   portion of the pop-up is depicted to the right.

24

1    The Defendants' proposal is a much

2 briefer, more neutral message that requires

3 users to opt-out by mail in 30 days. *Kater*

4 Dkt. # 138-1; *Thimmegowda* Dkt. # 89-1. It is

5 depicted to the right.

6    Defendants' proposed pop-up

7 language meets the Court's requirements from

8 the November 19 Orders. It clearly (if drily)

9 explains what is at stake in these lawsuits and

10 how a player may contact an attorney if they

11 have further questions. And although the pop-

12 up does not allow players to opt-out of the

13 terms by simply clicking a button, it does

14 conspicuously explain the opt-out method and

15 gives a sizable time window. This satisfies

16 Rule 23(g) as it has been applied in the cases the Court relied upon in its prior Orders.

17    While Plaintiffs' proposal meets the Court's requirements as well, it also goes far beyond

18 them. Rule 23(d) may impose limitations on Defendants' communications with putative class

19 members, but it is still Defendants' own speech. The Courts' Orders did not give Plaintiffs

20 license to dictate their preferred wording verbatim. In light of this, the Court APPROVES

21 Defendants' proposed pop-up language. *See Kater* Dkt. # 138-1; *Thimmegowda* Dkt. # 89-1.

22    Defendants' have also filed an ex parte motion for extension of time to file a notice of

23 appeal regarding the Court's November 19 Orders. *Kater* Dkt. # 144; *Thimmegowda* Dkt. # 95.

24



BIG
FISH
CASINO

Big Fish Games' Terms of Use include a "Dispute Resolution By Binding Arbitration" provision requiring individual arbitration of any dispute and waiving the right to participate in any class action lawsuit or other representative proceeding. By clicking the button below or continuing to access the game, you agree to the Terms of Use. However, you may opt out of the Dispute Resolution provision by mailing written notice to the Big Fish Games Legal Department within 30 days of accepting the Terms of Use. This opt-out procedure is detailed in the Terms of Use, available here. If you have questions about the legal effect of the Terms of Use, you should contact an attorney.

There are two pending lawsuits in federal court in Tacoma, Washington relating to Big Fish Casino. These lawsuits assert claims under Washington law, including the Recovery of Money Lost at Gambling Act and the Consumer Protection Act. The lawsuits seek to recover money allegedly lost while playing Big Fish Casino. Big Fish Games denies the claims and believes they have no merit. The court has not yet decided who is right or whether the lawsuits can proceed as class actions. The individual named plaintiffs in these lawsuits are represented by attorneys at the law firm Edelson PC, who may be contacted at 800-347-5750. If you accept the Terms of Use and do not opt out of the Dispute Resolution provision, you cannot participate in these lawsuits, even if a class is certified.

I AGREE TO THE
TERMS OF USE

The deadline would normally be December 19, *see* Fed. R. App. P 4(a)(1)(A), but Defendants argue that good cause exists to extend the deadline because of the time it took for the parties to submit proposals and for the Court to rule on them. The Court GRANTS Defendants' Motions. *Kater* Dkt. # 144; *Thimmegowda* Dkt. # 95. If Defendants still wish to appeal the November 19 Orders, they shall have until January 17, 2020 to file notice.

　　IT IS SO ORDERED.


　　Dated this 19th day of December, 2019.


Ronald B. Leighton
United States District Judge

ORDER - 4

# APPENDIX B

HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SEAN WILSON, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br>    v.<br><br>HUUUGE, INC., a Delaware corporation,<br><br>               Defendant. | CASE NO. 18-cv-05276-RBL<br><br>ORDER ON PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER<br><br>DKT. # 69 |

THIS MATTER is before the Court on Plaintiff Sean Wilson's Motion for Temporary Restraining Order. Dkt. # 69. The Motion arises out of a new pop-up message that Defendant Huuuge, Inc. has inserted into its casino game app. This new pop-up informs users of the app's terms of use, which include an arbitration clause. It also utilizes language very similar to a pop-up that the Court approved in a similar case because it provided instructions on opting-out of the app's terms of use, explained the rights at stake in the ongoing lawsuit, and provided contact information for the plaintiff's attorney. *See Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055, 1065 (W.D. Wash. 2019) (describing requirements); *Kater v. Chuchill Downs*, No. 15-cv-612, Dkt. 145 (W.D. Wash. Dec. 19, 2019) (approving defendant's revised pop-up). Huuuge's pop-up looks like this:

Nonetheless, Wilson challenges Huuuge's pop-up primarily on the basis that, with the ongoing COVID-19 pandemic, users should not be forced to make "complex and crucial decision[s] as to their legal rights" and "venture into unsafe public spaces in order to 'opt-out.'" Motion, Dkt. # 69, at 2. Wilson also objects to the inclusion of new choice of law and statute of limitations provisions in the terms of use and protests that the pop-up directs users to the 1-800 number that was established for separate lawsuits challenging the Big Fish Casino app.

The Court is unpersuaded that these issues justify a TRO. While the current public health situation has affected life in innumerable ways, people can still obtain postage and envelopes online (either through printing or delivery) and leave mail in an outgoing postal box. Indeed, unlike grocery shopping and other necessities, sending mail is one of the few activities that can be accommodated fairly easily during quarantine. And it is certainly not the case that the pandemic has somehow fogged people's minds to the point that they cannot make rational

decisions; if users have time to play games on their phones, they likely have time to weigh their legal rights.

As for Wilson's other concerns, they do not add up to much. To the extent that the California choice of law and statute of limitations provisions limit users' rights, Huuuge correctly points out that the pop-up already informs users that clicking "I agree" will preclude them from participating in this lawsuit. Thus, while the pop-up does not explain how each provision from the terms could affect the claims in this case, it does state the much more easily-understood bottom line. Any other impact that the terms' provisions may have on hypothetical future claims has nothing to do with Wilson's lawsuit and is thus beside the point. As for the phone number, Huuuge should consult with Wilson's counsel and devise an appropriate alternate number, but this hardly warrants judicial intervention.

In short, Huuuge's new pop-up complies with the requirements that the Court articulated in *Kater v. Churchill Downs Inc.* and Wilson's new arguments do not persuade the Court that the pop-up is likely invalid. The Motion is DENIED.

IT IS SO ORDERED.

Dated this 20th day of April, 2020.

_____
Ronald B. Leighton
United States District Judge