UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM HEATHCOTE,<br><br>Plaintiff,<br><br>v.<br><br>SPINX GAMES LTD., *et al.*,<br><br>Defendants. | Case No. C20-1310-RSM<br><br>ORDER DENYING PLAINTIFF HEATHCOTE'S MOTION FOR TEMPORARY RESTRAINING ORDER |

## I.   INTRODUCTION

This matter comes before the Court on Plaintiff William Heathcote's Motion for a Temporary Restraining Order ("TRO") against Defendants SpinX Games, Ltd. ("SpinX Games"), Grande Games Ltd. ("Grande Games"), and Beijing Bole Technology Co., Ltd. ("Beijing Bole") (collectively, "Defendants"). Dkt. #15. Plaintiff has requested oral argument. The Court finds oral argument unnecessary for ruling on the motion. Having reviewed Plaintiff's motion and Defendants' response, the Court DENIES Plaintiff's motion.

## II.   BACKGROUND

Plaintiff is a Washington citizen who began playing "Cash Frenzy™ Casino – Free Slots Games" and "Vegas Slots – Casino Slots," which are virtual casino games owned and operated

ORDER DENYING PLAINTIFF HEATHCOTE'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 1

by Defendants. Dkt. #14 at ¶¶ 1-4. All three Defendants are Chinese companies with principal places of business outside the United States, in either Hong Kong or Beijing. *Id.* at ¶¶ 8-10. However, Plaintiff claims that SpinX Games maintains an office at 2021 Fillmore St., #93 in San Francisco, California given that U.S.-based customers may contact Defendants at that address. *Id.* at ¶ 8.

Players play Defendants' virtual casino games on their mobile phones. *Id.* at ¶¶ 2-4. Defendants provide a bundle of free "coins" to first-time visitors used in the slot machine games, but once players lose their initial bundle of coins, they may purchase additional coins starting at $1.99 for 750,000 coins. Plaintiff began playing these virtual casino games on or around spring 2020. *Id.* at ¶ 7. He lost his initial bundle of free coins and began purchasing additional coins. Between June 2020 and August 2020, Plaintiff lost approximately $300 through playing Defendants' virtual casino games. *Id*.

Plaintiff initiated this action on September 1, 2020 against Grande Games on behalf of himself and putative class members, alleging violations of Washington law for recovery of money lost at gambling, RCW § 4.24.070, the Washington Consumer Protection Act, RCW § 19.86.010, and unjust enrichment. Dkt. #1 at ¶¶ 36-69. After summons were issued, Plaintiff moved to strike the case schedule on the basis that he was commencing service upon Grande Games through the Hague Convention. Dkt. #6. Because Plaintiff anticipated that service through the Hague Convention would take "4 to 6 months," the Court granted Plaintiff's request to strike deadlines and granted him until March 22, 2021 to update the Court as to the status of service. Dkt. #7.

On March 30, 2021, Plaintiff submitted a status report advising that he was "still working through the Hague Convention" to effect service, but "just learned that Defendant now has a

ORDER DENYING PLAINTIFF HEATHCOTE'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 2

subsidiary head quartered in California." Dkt. #8 at 1-2.  Plaintiff advised that he would be filing a petition for alternative service on the subsidiary "in the near future" and would update the Court on status of service on or before April 30, 2021.  *Id.* at 2.  On April 9, 2021, Plaintiff filed an Amended Complaint adding SpinX Games and Beijing Bole as Defendants.  Dkt. #14 at ¶¶ 8, 10.  As of the date of this Order, Plaintiff has not filed a petition for alternative service.  Instead, on April 20, 2021, Plaintiff filed the instant TRO motion.  Dkt. #15.

Plaintiff's TRO motion seeks emergency relief related to a pop-up window that currently displays on players' devices when they open the gaming application.  This pop-up identifies Defendants' new Terms of Service and Privacy Policy, which was updated on February 8, 2021 and published on Defendants' website on February 23, 2021.  Dkt. #28 at ¶ 8.  The updated Terms of Service added an arbitration agreement and Class Action Waiver not contained in the previous Terms of Service.  Dkt. 16-2.  Since the updated Terms of Service were published, players opening any of Defendants' games encounter a pop-up notice entitled, "We updated our Terms of Service and Privacy Policy."  Dkt. #16-1.  The complete notice states:

> By tapping the button below, you agree to our updated Terms of Service. These terms include a "Dispute Resolution and Arbitration Provision" requiring individual arbitration of any dispute and waiving your right to join any class action lawsuit or other representative proceeding. You may opt out of this provision by mailing us written notice within 30 days after you first accept these Terms of Service, as explained here. If you have questions about the legal effect of the Terms of Service, you should contact an attorney.
>
> Players in WASHINGTON STATE ONLY, please continue reading: There is a pending lawsuit in federal court in Washington State relating to Grande Games, Ltd. This lawsuit asserts claims under Washington Law, including the Recovery of Money Lost at Gambling Act and the Consumer Protection Act. The lawsuit seeks to recover money allegedly lost while playing Grande Games' games. Grande Games denies the claims and believes they have no merit. The court has not yet decided who is right or whether the lawsuit can proceed as a class action. The plaintiff in the lawsuit is represented by attorneys at the law firm of Bursor & Fisher, P.A., who may be contacted at (646) 837-7150. If you accept the Terms of

ORDER DENYING PLAINTIFF HEATHCOTE'S MOTION FOR TEMPORARY RESTRAINING ORDER - 3

> Service and do not opt out of the Dispute Resolution and Arbitration Provision, you cannot participate in this lawsuit, even if a class is certified.
>
> By tapping the button below you agree to the <u>Terms of Service</u> and acknowledge you have read the <u>Privacy Policy</u>.

Dkt. #16-1. Below the notice is a button that reads in bolded letters: "I agree, Let's Play!" *Id.*

In mid-April, Plaintiff's counsel began to receive phone calls from players inquiring about the "pop-up" window in the virtual casino games. Dkt. #16 at ¶ 5. The following week, on April 20, 2021, Plaintiff filed the instant TRO requesting that the Court assert control over communications by Defendants with putative class members pursuant to Fed. R. Civ. P. 23(d). Dkt. #15. Specifically, Plaintiff requests this Court require Defendants to (1) immediately stop displaying the pop-up; and (2) restore the Terms of Use to the version in place at the time the case was filed. *Id.* at 16. On April 23, 2021, Defendants filed a Response opposing Plaintiff's motion. Dkt. #27.

### III.   DISCUSSION

**A. Failure to Effect Service**

As an initial matter, Defendants argue that this Court lacks personal jurisdiction over this action given Plaintiff's failure to effect service. *Id.* at 7-8. Plaintiff concedes that he has not served Defendants with the summons and complaint. Dkt. #15 at 11. Although he claims that Defendants "have evaded service of the lawsuit," *id.* at 20, he has not petitioned for alternative service. To the extent he deposited a copy of the instant motion at a mailbox address in San Francisco, Defendants dispute that delivery to the Fillmore Street address constitutes proper service, given that it is not the address of any office of Defendants. *See* Dkt. #27 at 5-6 ("SpinX is currently leasing a post office box in San Francisco for the sole purpose of accepting opt-out notices from U.S. players, as set forth in the New Terms"). The Court finds it highly doubtful

ORDER DENYING PLAINTIFF HEATHCOTE'S MOTION FOR TEMPORARY RESTRAINING ORDER - 4

that Defendants have been properly served at this time. However, given the analysis below, the Court declines to rule on the service issue before the matter is fully briefed. Likewise, given that Defendants have appeared and filed a response, it will not deny the instant motion for failure to provide notice under LCR 65.

**B. Legal Standard**

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).

As an alternative to this test, a preliminary injunction is appropriate if "serious questions going to the merits were raised and the balance of the hardships tips sharply" in the moving party's favor, thereby allowing preservation of the status quo when complex legal questions require further inspection or deliberation. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). However, the "serious questions" approach supports a court's entry of a TRO only so long as the moving party also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest. *Id.* at 1135. The moving party bears the burden of persuasion and must make a clear showing that he is entitled to such relief. *Winter*, 555 U.S. at 22.

For the reasons set forth below, Plaintiff has failed to carry his burden under either test. He has not demonstrated a likelihood of success on the merits on his claim that Defendants' communication interferes with putative class members' rights under Fed. R. Civ. P. 23(d), nor has he raised serious questions going to the merits of that claim.

     i.     Controlling Class Communications under Rule 23(d)

Under Fed. R. Civ. P. 23(d), courts are afforded "considerable discretion" to regulate defendant communications with class members in order to prevent abuse. *Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055, 1061 (W.D. Wash. 2019) (quoting *Jimenez v. Menzies Aviation Inc.*, No. 15-CV-02392-WHO, 2015 WL 4914727, at *5 (N.D. Cal. Aug. 17, 2015)). "Because class actions 'present opportunities for abuse, [] a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties.'" *Id.* (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989)) (internal quotations omitted). However, any order regulating communications between parties and putative class members must "be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* (internal quotations omitted).

When considering whether a defendant's effort to obtain an arbitration provision from putative class members interferes with their rights under Rule 23(d), courts analyze the timing of the communication, its potential to mislead putative class members, and the risk that putative class members may forfeit their rights "without really knowing what they are." *Id.*; *see also Jimenez*, 2015 WL 4914727, at *6 (finding new arbitration policy invalid as applied to putative class members who were not informed of the pending lawsuit). In contrast, the communication with putative class members is deemed proper if it "does so in a manner that discloses information

ORDER DENYING PLAINTIFF HEATHCOTE'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 6

about this suit and affords an opt-out." *McKee v. Audible, Inc.*, No. CV 17-1941-GW(EX), 2018 WL 2422582, at *8-9 (C.D. Cal. Apr. 6, 2018).

      ii.      Defendants' Pop-Up Window and Revised Terms of Service

Plaintiff argues that Defendants' pop-up is misleading, given that it fails to "meaningfully inform users about their potential rights." Dkt. #15 at 14 (citing *Kater*, 423 F. Supp. 3d at 1063). In *Kater*, the court analyzed issues similar to those presented here—specifically, the legality of a pop-up window in a virtual gambling mobile application that referenced pending class action litigation and prevented players from continuing play unless they clicked "I Agree." *See Kater*, 423 F. Supp. 3d at 1063. However, the terms of the pop-up in *Kater* are readily distinguishable from the terms at issue here.

In *Kater*, the pop-up deemed improper by the court failed to provide information about the current status of pending litigation, the type of relief being sought, previous decisions by the court regarding arbitration or how to contact plaintiffs' counsel. *Id.* at 1059. The pop-up also failed to advise players to seek their own counsel if they had questions about the terms. *Id.* In granting plaintiffs' motion for a preliminary injunction, the *Kater* court set forth three requirements for defendants' pop-up or other initial communication to putative class members: (1) it must reference putative class members' ability to opt out of arbitration and out of the agreement to waive their status as a putative class member, and provide instruction on how to do so; (2) it must "briefly explain the rights at issue" in the lawsuit such that "an average user would understand what they are giving up" by clicking "I Agree"; and (3) it must advise players to contact an attorney for advice on the legal terms, and provide contact information for plaintiff's attorney in the class action lawsuit. *Id.* at 1065. Pursuant to this order, the *Kater* defendants revised their pop-up communication to contain the above-listed information, and the court

ORDER DENYING PLAINTIFF HEATHCOTE'S MOTION FOR TEMPORARY RESTRAINING ORDER - 7

approved it.  *See* Dkt. #27 at 26-29 (attaching *Kater v. Downs*, C15-0612-RBL, Dkt. #145 (W.D. Wash. Dec. 19, 2019) (Order on Parties' Proposed Pop-Up Language)).

Here, Defendants' notice meets the three above-listed requirements and is largely identical to the revised pop-up communication approved by the *Kater* court.  *See id.*  It provides the same opt-out procedure of mailing written notice within thirty days of accepting the terms of use.  Dkt. #16-1.  Furthermore, it expressly informs players about the pending lawsuit.  *See* Dkt. #16-1 ("There is a pending lawsuit in federal court in Washington State relating to Grande Games, Ltd. This lawsuit asserts claims under Washington Law, including the Recovery of Money Lost at Gambling Act and the Consumer Protection Act. The lawsuit seeks to recover money allegedly lost while playing Grande Games' games.").  It likewise informs putative class members of the rights they forfeit by agreeing to the terms: "If you accept the Terms of Service and do not opt out of the Dispute Resolution and Arbitration Provision, you cannot participate in this lawsuit, even if a class is certified."  *Id*.  The notice also advises putative class members to consult an attorney if they have any questions and provides contact information for Plaintiff's counsel in this lawsuit.  *Id*.  In addition to bearing close similarity to defendants' approved communication in *Kater*, the language in Defendants' pop-up is also substantially identical to the terms addressed in *Wilson v. Huuuge, Inc.*—another case in this district that analyzed the legality of a pop-up window in a virtual gambling application during the pendency of a class action lawsuit.  *See* 2020 WL 8771059-RBL, at *1 (W.D. Wash. Apr. 20, 2020).  In light of this case law, the Court finds minimal support for Plaintiff's position that the terms of the pop-up window are improper or coercive.

In addition to *Kater*, Plaintiff relies on other cases from the Ninth Circuit addressing the lawfulness of a defendant's communication about a new arbitration agreement sent during the

ORDER DENYING PLAINTIFF HEATHCOTE'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 8

pendency of litigation. Dkt. #15 at 13-14 (citing *Jimenez*, 2015 WL 4914727, at *5; *Balasanyan v. Nordstrom, Inc.*, 2012 WL 760566 (S.D. Cal. Mar. 8, 2012); *O'Connor v. Uber Techs., Inc.*, 2013 WL 6407583 (N.D. Cal. Dec. 6, 2013); *McKee v. Audible, Inc.*, No. CV 17-1941-GW(EX), 2018 WL 2422582 (C.D. Cal. Apr. 6, 2018). However, the communications at issue in these cases are factually distinguishable from the pop-up at issue here, given that the improper communications failed to inform putative class members of the pending litigation and/or provided no reasonable opt-out mechanism.

In *Jimenez*, *Balsanyan*, and *McKee*, the communications offered no opt-out procedure whatsoever. *See Jimenez*, 2015 WL 4914727, at *5 ("[T]he manner in which Menzies issued the policy—not informing Mijos and other putative class members of the pending litigation, not explaining the consequences of agreeing to the policy, and not providing an opt-out procedure constituted improper class communication."); *Balsanyan*, 2012 WL 760566, at *3 (finding invalid Nordstrom's communication regarding an arbitration agreement that did not alert putative class members of the litigation, and provided no opt-out); *McKee*, 2018 WL 2422582, at *6 ("Audible's actions . . . effectively asked putative class members to waive their ability to participate in this, or any class action, in exchange for continued use and enjoyment of their Audible Membership, and did so without providing notice of the present action or affording opt out rights."). In *O'Connor*, defendants' communication contained an opt-out provision, but the court found that its requirement that uses send a letter via "hand delivery or overnight mail" was "extremely onerous." 2013 WL 6407583, at *6. However, the court noted that opt-out by a "less burdensome means," such as delivery by first-class mail, could have "accomplished the same end." *Id.* None of these cases apply to the communication at issue here, which notifies putative class members of this lawsuit, informs them that they relinquish their rights to participate in the

ORDER DENYING PLAINTIFF HEATHCOTE'S MOTION FOR TEMPORARY
RESTRAINING ORDER - 9

lawsuit if they accept, and allows players to opt out by sending notice via U.S. mail. *See* Dkt. #16-1.

Finally, Plaintiff argues that the statements in the pop-up window and Terms of Service are misleading, given that the Court has not determined that a post-lawsuit arbitration clause may be enforceable, the terms do not provide details about Plaintiffs' claims, and they do not inform putative class members that they may be foregoing claims under Washington law because of the California choice of law provision contained therein. Dkt. #15 at 15. However, the pop-up need not explain "how each provision from the terms could affect the claims" in this case. *Wilson*, 2020 WL 8771059 at *1. Rather, it merely needs to inform players of "the much more easily-understood bottom line": that clicking "I agree" precludes them from participating in this lawsuit. *Id.* Such is the case here. To the extent Plaintiff argues that *Wilson* was "decided incorrectly" and "goes against the weight of authority within this Circuit," Dkt. #15 at 17, the Court finds no support for this argument. Plaintiff relies on several cases addressing settlement offers, none of which bear on the issue presented here regarding communications of new arbitration agreements. *See, e.g.*, *Kirby v. Kindred Healthcare Operating, LLC*, No. 19- cv-00833-JLS-DFM, 2020 WL 4639493, at *3 (C.D. Cal. May 1, 2020) (settlement offer that failed to append complaint was impermissible); *Kutzman v. Derrel's Mini Storage, Inc.*, 354 F. Supp. 3d 1149, 1151–1152, 1156 (E.D. Cal. 2018) (settlement offers to putative class members impermissible); *Slavkov v. Fast Water Heater Partners I, LP*, 2015 WL 6674575, at *2-3 (N.D. Cal. Nov. 2, 2015) (same). Accordingly, the Court finds no basis to diverge from Judge Leighton's reasoning in *Wilson*.

For these reasons, Plaintiff has failed to demonstrate a likelihood of success on the merits of his claim that Defendants' communications to class members are improper. Nor has he raised serious questions going to the merits. Because Plaintiff has failed to show likelihood of success

ORDER DENYING PLAINTIFF HEATHCOTE'S MOTION FOR TEMPORARY RESTRAINING ORDER - 10

or serious questions going to the merits, the Court need not address the remaining elements to obtain preliminary injunctive relief. *See Winter*, 555 U.S. at 20; *Cottrell*, 632 F.3d at 1134–35. Accordingly, the Court DENIES Plaintiff's motion.

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's TRO Motion, Dkt. #15.

DATED this 28th day of April, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE