1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6

7

8

9

10

11

12

13

WILLIAM HEATHCOTE individually and on
behalf of all others similarly situated,

Plaintiff,

v.

SPINX GAMES LIMITED, GRANDE GAMES
LIMITED, and BEIJING BOLE
TECHNOLOGY CO., LTD.,

Defendants.

Case No. 2:20-cv-01310-RSM

**PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE(S)**

I.  INTRODUCTION ............................................................................................. 1

II.  PROCEDURAL BACKGROUND ................................................................... 2

III.  TERMS OF THE PROPOSED SETTLEMENT ................................................ 3

    A.  Settlement Class Definition .................................................................... 3

    B.  Monetary Relief ..................................................................................... 4

    C.  Prospective Relief .................................................................................. 4

    D.  Release ................................................................................................... 5

    E.  Class Notice ........................................................................................... 6

    F.  Incentive Awards ................................................................................... 6

    G.  Attorneys' Fees And Expenses .............................................................. 6

IV.  LEGAL STANDARD ...................................................................................... 6

V.  ARGUMENT .................................................................................................... 8

    A.  The Settlement Class Meets All Requirements Of Fed. R. Civ. P. 23(a), 23(b)(2), And 23(b)(3) ................................................................ 8

        1.  Fed. R. Civ. P. 23(a)(1) – Numerosity ...................................... 8

        2.  Fed. R. Civ. P. 23(a)(2) – Commonality ................................... 9

        3.  Fed. R. Civ. P. 23(a)(3) – Typicality ...................................... 10

        4.  Fed. R. Civ. P. 23(a)(4) – Adequacy ...................................... 10

    B.  The Proposed Class Satisfied The Requirements of Rule 23(b)(3) ......... 12

    C.  The Court Should Preliminarily Approve The Settlement Because It Is Fair, Adequate, And Reasonable ...................................................... 14

        1.  The Proposed Settlement is the Product of Serious, Informed, and Non-Collusive Negotiations ............................................. 16

        2.  The Settlement Class Meets All Of The *Hanlon* Factors ........... 17

        3.  The Settlement Class Meets All Of The New Rule 23(e)(2) Factors ..................................................................................... 21

    D.  The Proposed Notice Program Constitutes Adequate Notice And Should Be Approved .......................................................................... 25

VI.  CONCLUSION .............................................................................................. 27

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
  731 F.3d 952 (9th Cir. 2013) ......................................................................... 10

*Ali v. Menzies Aviation, Inc.*,
  2016 WL 4611542 (W.D. Wash. Sept. 6, 2016) ...................................... 9, 10

*Bennett v. SimplexGrinnell LP*,
  2015 WL 1849543 (N.D. Cal. Apr. 22, 2015) .............................................. 19

*Bess v. Ocwen Loan Servicing LLC*,
  334 F.R.D. 432 (W.D. Wash. 2020) .............................................................. 13

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
  2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) .............................................. 18

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ......................................................................... 11

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2014) ...................................................................................... 12

*Evon v. Law Offices of Sidney Mickell*,
  688 F.3d 1015 (9th Cir. 2012) ......................................................................... 9

*Farrell v. Bank of Am. Corp., N.A.*,
  827 F. App'x 628 (9th Cir. 2020) .................................................................. 24

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
  307 F.3d 997 (9th Cir. 2002) ......................................................................... 23

*G. F. v. Contra Costa County*,
  2015 WL 4606078 (N.D. Cal. July 30, 2015) .............................................. 22

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................................ 17, 21

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ...................................................................................... 10

*Gragg v. Orange CAB Co., Inc.*,
  2017 WL 785170 (W.D. Wash. Mar. 1, 2017) ............................................ 16

*Greer v. Dick's Sporting Goods, Inc.*,
  2020 WL 5535399 (E.D. Cal. Sept. 15, 2020) ............................................ 15

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................................ passim

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. 2011) ............................................................................ 23

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .................................................. 21, 24

*Hilsley v. Ocean Spray Cranberries, Inc.*,
  2020 WL 520616 (S.D. Cal. Jan. 31, 2020) ................................................ 21, 22, 26

*Ikuseghan v. Multicare Health Sys.*,
  2016 WL 3976569 (W.D. Wash. July 25, 2016) .................................................... 18

*In re Apple Computer Sec. Litig.*,
  1991 WL 238298 (N.D. Cal. Sept. 6, 1991) .......................................................... 18

*In re Bluetooth Headset Products Liab. Litig.*,
  654 F.3d 935 (2011) ......................................................................................... 16, 17

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) .............................................................. 22, 24

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ........................................................................... 20, 21

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ...................................................... 19

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................ 21

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ............................................................................. 8, 23

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) .......................................................................... 6, 7, 8

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................ 7

*In re Transpacific Passenger Air Transportation Antitrust Litig.*,
  2019 WL 6327363 (N.D. Cal. Nov. 26, 2019) ..................................................... 23

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
  2020 WL 4212811 (N.D. Cal. July 22, 2020) ........................................................ 9

*Jama v. GCA Services Group, Inc.*,
  2017 WL 4758722 (W.D. Wash. Oct. 20, 2017) ................................................................... 9

*Johnson v. Triple Leaf Tea Inc.*,
  2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ................................................................... 19

*Kelley v. Microsoft Corp.*,
  251 F.R.D. 544 (W.D. Wash. 2008) ................................................................................... 14

*Kramer v. XPO Logistics, Inc.*,
  2020 WL 1643712 (N.D. Cal. Apr. 2, 2020) ..................................................................... 22

*Kumar v. Salov N. Am. Corp.*,
  2017 WL 2902898 (N.D. Cal. July 7, 2017) ..................................................................... 24

*Lealao v. Beneficial California, Inc*,
  82 Cal. App. 4th 19 (2000) ................................................................................................. 24

*Millan v. Cascade Water Servs., Inc.*,
  310 F.R.D. 593 (E.D. Cal. 2015) ..................................................................................... 7, 8

*Morris v. Lifescan, Inc.*,
  54 F. App'x 663 (9th Cir. 2003) ......................................................................................... 23

*Murillo v. Pac. Gas & Elec. Co.*,
  266 F.R.D. 468 (E.D. Cal. 2010) ......................................................................................... 7

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ............................................................................... 7, 8, 17, 20

*Parra v. Bashas', Inc.*,
  536 F.3d 975 (9th Cir. 2008) ............................................................................................... 9

*Perks v. Activehours, Inc.*,
  2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ................................................................... 27

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
  390 U.S. 414 (1968) ............................................................................................................. 8

*Reichert v. Keefe Commissary Network, LLC*,
  331 F.R.D. 541 (W.D. Wash. 2019) ....................................................................... 12, 13, 14

*Rinky Dink, Inc. v. World Bus. Lenders, LLC*,
  2016 WL 4052588 (W.D. Wash. Feb. 3, 2016) ................................................................. 15

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ............................................................................... 16, 17, 21

*Scott v. United Servs. Auto. Ass'n*,
  2013 WL 12251170 (W.D. Wash. Jan. 7, 2013) ............................................................. 16

*Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*,
  2019 WL 358517 (E.D. Cal. Jan. 29, 2019) .................................................................. 14

*Smith v. Kaiser Foundation Hospitals*,
  2020 WL 5064282 (S.D. Cal. Aug. 26, 2020) ................................................................ 15

*State of Fla. v. Dunne*,
  915 F.2d 542 (9th Cir. 1990) ......................................................................................... 23

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ................................................................................... 11, 23

*Tavenner v. Talon Grp.*,
  2012 WL 1022814 (W.D. Wash. Mar. 26,  2012) ............................................................ 9

*Taylor v. Universal Auto Grp. I, Inc.*,
  2014 WL 6654270 (W.D. Wash. Nov. 24, 2014) ..................................................... 13, 14

*Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ....................................................................................... 12

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ............................................................................................ 12, 13

*Vega v. Weatherford U.S., Limited Partnership*,
  2016 WL 7116731 (E.D. Cal. Dec. 7, 2016) ................................................................. 20

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ....................................................................................... 16

*Wal–Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ........................................................................................................ 9

*Williams v. MGM-Pathe Commc'ns Co.*,
  129 F.3d 1026 (9th Cir. 1997) ....................................................................................... 23

*Wolin v. Jaguar Land Rover North America, LLC*,
  617 F.3d 1168 (2010) ..................................................................................................... 14

*Young v. Polo Retail, LLC*,
  2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ................................................................. 23

**STATUTES**

RCW 19.86.010 ....................................................................................................................... 2

RCW 4.24.070 ................................................................................................................ 2

**RULES**

Fed. R. Civ. P. 23 ................................................................................................... passim

Fed. R. Civ. P. 25 ........................................................................................................ 3

Fed. R. Civ. P. 26 ........................................................................................................ 2

**OTHER AUTHORITIES**

W. Rubenstein, Newberg on Class Actions (5th ed. 2012) .................................... 7, 11, 12

Manual for Complex Litigation (4th ed. 2004) ........................................................ 7, 25

## I.     INTRODUCTION

In this putative class action, Plaintiff William Heathcote ("Plaintiff")[1] alleges that Defendants Grande Games Limited, SpinX Games Limited, and Beijing Bole Technology Co., Ltd. (collectively, "Defendants") own and operate various social casino Applications that constitute illegal gambling under Washington state law.  After several months of arm's-length negotiations—including a full-day mediation session facilitated by the Hon. Layn R. Phillips (Ret.) of Phillips ADR and his staff—Plaintiff and Defendants have reached a class-wide settlement that provides excellent relief to the Class.

The proposed Settlement establishes a non-reversionary cash common fund of $3.5 million from which participating Class Members stand to recover substantial portions of their alleged damages, ranging from 10% (at the low end) to more than 50% (at the high end) of total monies spent on Defendants' Applications.  In addition, the Settlement further requires Defendants to implement meaningful prospective relief, including by providing addiction-related resources within their social casino games and by creating and honoring a comprehensive self-exclusion policy. Notably, the proposed Settlement here is directly in line with, and proportionate to, other recent settlements within this District that have been fully approved involving nearly identical allegations: *Kater v. Churchill Downs*, Case No. 15-cv-00612 (W.D. Wash.), *Wilson v. Huuuge, Inc.*, Case No. 18-cv-05276 (W.D. Wash), and *Wilson v. Playtika, Ltd.*, Case No. 18-cv-05277 (W.D. Wash.).

As detailed herein, the Court should have no hesitation finding that the Settlement falls within the range of possible approval.  Accordingly, Plaintiff respectfully requests that the Court enter an order in the form of the Proposed Preliminary Approval Order, which is filed concurrently herewith.  That Order will: (1) grant preliminary approval of the Settlement; (2) conditionally certify the Class, designate Plaintiff as Class Representative, and appoint Philip L. Fraietta and Alec M. Leslie of Bursor & Fisher, P.A. as Class Counsel; (3) appoint JND Legal Administration as the Settlement Administrator and establish procedures for giving notice to members of the Class;

---

[1] Due to the death of named Plaintiff William Heathcote and subsequent Unopposed Motion for Substitution of Named Plaintiff (ECF No. 47), the term "Plaintiff" as used herein shall also be used to refer to Alma Sue Croft where appropriate.

(4) approve forms of notice to Class Members; (5) mandate procedures and deadlines for exclusion requests and objections; and (5) set a date, time and place for a final approval hearing.

## II.   PROCEDURAL BACKGROUND

On September 1, 2020, Plaintiff filed this putative class action in the United States District Court for the Western District of Washington against Defendant Grande Games Limited.  *See* ECF No. 1.  Plaintiff alleged that Grande Games' mobile casino-style Applications fall within the definition of an illegal gambling game and that players can recover their losses under Washington law, setting forth claims for violations of RCW 4.24.070 (the "Recovery of Money Lost at Gambling Act" or "RMLGA"), violations of RCW 19.86.010 *et seq.* (the "Washington Consumer Protection Act" or "CPA") and unjust enrichment, based on Plaintiff's use of and purchases of virtual items in Grande Games' Applications.  *Id.*

On April 9, 2021, Plaintiff filed a First Amended Class Action Complaint adding Defendants SpinX Games Limited and Beijing Bole Technology Co., Ltd. to the case, and making the same allegations against those Defendants as well.  *See* ECF No. 14.

In or around February 2021, Defendants displayed a pop-up window in certain of their Applications.  The pop-up window included a button that, if clicked, purported to bind players to terms of use requiring persons to arbitrate any claims against Defendants (hereinafter, the "Dispute Resolution and Arbitration Provision" or "DRAP").

In response to the pop-up window, on April 20, 2021, Plaintiff moved for a temporary restraining order to, *inter alia*, enjoin Defendants from displaying the pop-up window.  After full briefing from Plaintiff and Defendants, the Court denied Plaintiff's motion on April 28, 2021.  *See* ECF No. 31.  On May 14, 2021, the Parties filed a stipulation – which the Court granted – wherein Defendants agreed to waive service of process in exchange for 90 days to respond to Plaintiff's First Amended Complaint.  *See* ECF No. 39.

From that point, the Parties engaged in direct communications, and, as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of resolution.  Those discussions eventually led to an agreement between the Parties to engage in mediation, which the Parties

agreed would take place before the Honorable Layn Phillips (Ret.), who is a neutral affiliated with Phillips ADR Enterprises ("Phillips ADR").

In the weeks leading up to the mediation, the Parties were in regular communication with each other and with the Phillips ADR team, as the Parties sought to crystallize the disputed issues, produce focal information and data, and narrow down potential frameworks for resolution. Declaration of Philip L. Fraietta ("Fraietta Decl."), ¶ 3.  During this period, Defendants provided Class Counsel with several sets of detailed transactional data for virtual chip purchases made by the Settlement Class; the Parties exchanged briefing on the core facts, legal issues, litigation risks, and potential settlement structures; and the Parties supplemented that briefing with extensive telephonic correspondence, mediated and shuttled by the Phillips ADR team, clarifying each other's positions in advance of the mediation.  *Id.*

On October 20, 2021, the Parties participated in a mediation before Judge Phillips.  At the conclusion of the mediation session, Judge Phillips made a mediator's proposal to settle the case in principle, which both Parties accepted.  *Id.* ¶ 4.  Thereafter, the Parties spent the next four months negotiating and executing a term sheet memorializing their agreement (hereinafter, the "Settlement").  *Id.* ¶ 7.

Unfortunately, on January 5, 2022, as the parties were on the cusp of finalizing the long form settlement agreement, Plaintiff William Heathcote passed away unexpectedly at the age of 39. *Id.* ¶ 8.  He is survived only by his mother, Alma Sue Croft, who wishes to be substituted in his place pursuant to Fed. R. Civ. P. 25(a)(1) and see the case through its conclusion.  *Id.*  The Settlement was fully executed on February 14, 2022.  *Id.* ¶ 9.

## III.    TERMS OF THE PROPOSED SETTLEMENT

The key terms of the Settlement Agreement are summarized below for the Court's convenience.

### A.    Settlement Class Definition

The Settlement Class is defined as: "All Persons who played Cash Frenzy, Lotsa Slots, DAFU, Jackpot World, Jackpot Fever, Jackpot Crush, Jackpot Mania, Cash Bash and/or Vegas Friends (collectively, "the Applications"), on or before January 31, 2022, while located in the state

of Washington.  Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendants, Defendants' subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons."  Settlement § 1.34.

**B.      Monetary Relief**

Defendants have agreed to establish a $3,500,000 Settlement Fund from which Class members who file a valid claim will be entitled to recover a cash payment, after deducting costs and administrative expenses, any fee award to proposed Class Counsel, and any incentive payment to the Class Representative.  *See* Settlement § 1.36.  No portion of the Settlement Fund will revert to Defendants.  *Id.* § 2.1(k).  Any Settlement Class member checks not chased within 180 days of issuance, such funds shall remain in the Net Settlement Fund and shall be apportioned pro rata to participating Settlement Class members in a second distribution, if practicable, subject to the provisions set forth in Settlement § 2.1(g).  *Id.* § 2.1(j).  Pursuant to the Settlement's Plan of Allocation, the amount of each Settlement Class member's payment will first depend on whether the Settlement Class member is potentially subject to Defendants' Dispute Resolution and Arbitration Provision ("DRAP").  *Id.* §§ 2.1(c)-(d).  Recovery will differ from the baselines established by DRAP status according to the Settlement Class member's lifetime spending amount (i.e., individuals with higher Lifetime Spending Amounts will recover a greater percentage back) and overall Settlement Class member participation levels.  *Id.*  The parties anticipate that Settlement Class members in the highest category of Lifetime Spending Amounts will recover approximately 50% of their total spend, and that participating Settlement Class members in the lowest category of lifetime spend will recover approximately 10% of their total spend.  *Id.*

**C.      Prospective Relief**

Defendants will place resources relating to video game behavior disorders within the Applications.  Within the self-service resources available to players, Defendants shall add an

additional button or link with labeling referring to video game behavior disorder resources.  This link or button shall be similarly prominent to other links or buttons within the self-service resources.  When clicked, the link or button will take players to a webpage that (1) encourages responsible gameplay; (2) describes what video game behavior disorders are; (3) provides or links to resources relating to video game behavior disorders; and (4) includes a link to Defendants' self-exclusion policy.  Customer service representatives will provide the same information to any player that contacts them and references or exhibits video game behavior disorders, and will face no adverse employment consequences for providing players with this information.  Settlement § 2.2(a).

In addition, Defendants shall publish on their website a voluntary self-exclusion policy.  That policy shall provide that, when a player self-excludes by specifying the Player ID(s) that the player wishes to ban, Defendants shall use commercially reasonable efforts to immediately ban the account(s) associated with those Player ID(s).  Defendants shall retain discretion as to the particular method by which players may self-exclude; which may include, for example, permitting players to self-exclude by contacting Customer Support, completing a form on Defendants' website, or any other reasonably accessible means.  Defendants shall use commercially reasonable efforts to prevent any use of the Application specified by the player.  After a self-exclusion request is responded to in full by Defendants, Defendants shall not remove those restrictions for the period identified in the self-exclusion policy at the time the self-exclusion is requested.  *Id.* § 2.2(b).

Finally, Defendants shall implement game mechanics for the Applications to ensure that players who run out of sufficient virtual chips to play the game they are playing will be able to continue to play games within the Applications without needing to purchase additional virtual coins or unreasonably wait (i.e., more than 30 seconds) until they would have otherwise received free additional virtual coins.  *Id.* § 2.2(c).

### D.   Release

In exchange for the relief described herein, Defendants shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and

discharged all claims against Plaintiff, the Settlement Class, and Class Counsel that arise out of or relate in any way to the commencement, prosecution, settlement, or resolution of the Action, except for claims to enforce the terms of the Settlement.  *Id.* § 3.3.

### E.      Class Notice

The Settlement Fund will be used to pay the costs of sending the notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement.  *Id.* § 1.36.  JND Legal Administration, the Settlement Administrator, will send class notices via email and/or U.S. Mail based on records produced by Defendant and obtained from third parties.  *Id.* § 4.  JND will also establish a settlement website and implement a digital publication notice campaign targeting class members.  *Id.* § 4.2.  In line with Rule 23, the notice will include the nature of the action, a summary of the settlement terms, and instructions on how to object or opt out of the settlement, including relevant deadlines. *Id.* § 4.3.

### F.      Incentive Awards

With no consideration having been given or received, Plaintiff William Heathcote will seek no more than $5,000 as an incentive award.  *Id.* § 9.3.

### G.      Attorneys' Fees And Expenses

The Parties have agreed that proposed Class Counsel is entitled to an award of reasonable attorneys' fees and expenses in an mount to be determined by the Court and to be paid from the Settlement Fund.  *Id.* § 9.1.  With no consideration given or received, Class Counsel will limit its petition for attorneys' fees to no more than twenty-five percent (25%) of the Settlement Fund (i.e., $875,000.00), plus reimbursement of Court-approved costs and expenses associated with the Action.  *Id.*

## IV.    LEGAL STANDARD

Approval of class action settlements involves a two-step process.  First, the Court must make a preliminary determination whether the proposed settlement appears to be fair and is "within the range of possible approval."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) ("*In re Syncor*").  If so, notice can be sent to class members and the Court can schedule a final

approval hearing where a more in-depth review of the settlement terms will take place.  *See*

MANUAL FOR COMPLEX LITIGATION § 21.312, at 293-96 (4th ed. 2004).

At the preliminary approval stage, "[t]he court is really only concerned with whether the

proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as

unduly preferential treatment of class representatives or segments of the class, or excessive

compensation of attorneys."  *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal.

2010) (internal quotations omitted).  Notice of a settlement should be disseminated where "the

proposed settlement appears to be the product of serious, informed, non collusive negotiations, has

no obvious deficiencies, does not improperly grant preferential treatment to class representatives or

segments of the class, and falls within the range of possible approval."  *In re Tableware Antitrust

Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting NEWBERG ON CLASS ACTIONS §

11.25 (1992)).  Preliminary approval does not require an answer to the ultimate question of

whether the proposed settlement is fair and adequate, for that determination occurs only after

notice of the settlement has been given to the members of the settlement class.  *In re Tableware

Antitrust Litig.*, 484 F. Supp. 2d at 1079 (finding that "[t]he question currently before the court is

whether this settlement should be preliminarily approved" for the purposes of notifying the

putative class members of the proposed settlement and proceeding with a fairness hearing, which

requires the court to consider whether the settlement appears to be fair and "*falls within the range

of possible approval*") (emphasis added).

Nevertheless, a review of the standards applied in determining whether a settlement should

be given final approval is helpful to the determination of preliminary approval.  One such standard

is the strong judicial policy of encouraging compromises, particularly in class actions.  *See In re

Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir.

1982), *cert. denied*, 459 U.S. 1217 (1983)); *see also Millan v. Cascade Water Servs., Inc.*, 310

F.R.D. 593, 602 (E.D. Cal. 2015) ("The Ninth Circuit has declared that a strong judicial policy

favors settlement of class actions.").  While the Court has discretion regarding the approval of a

proposed settlement, it should give "proper deference to the private consensual decision of the

parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  In fact, when a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable and adequate.  *See In re Syncor*, 516 F.3d at 1100.

Beyond the public policy favoring settlements, the principal consideration in evaluating the fairness and adequacy of a proposed settlement is the likelihood of recovery balanced against the benefits of settlement.  "[B]asic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation."  *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). That said, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625.

## V.    ARGUMENT

### A.    The Settlement Class Meets All Requirements Of Fed. R. Civ. P. 23(a), 23(b)(2), And 23(b)(3)

"Before the court may evaluate a class action settlement under Rule 23(e) of the Federal Rules of Civil Procedure, the settlement class must meet the requirements of Rules 23(a)": (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation."  *Millan*, 310 F.R.D. at 603.  "Once subsection (a) is satisfied, the putative class must then fulfill the requirements of Rule 23(b)(3)."  *Id.*  The Settlement Class meets all of these requirements.

### 1.    Fed. R. Civ. P. 23(a)(1) – Numerosity

The first prerequisite to class certification under Rule 23(a)—numerosity—requires that the "class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1). There is no specific minimum number of proposed class members required to satisfy the numerosity requirement, but generally a class of forty or more members is considered sufficient.

*See Ali v. Menzies Aviation, Inc.*, 2016 WL 4611542, at *1 (W.D. Wash. Sept. 6, 2016); *see also Jama v. GCA Services Group, Inc.*, 2017 WL 4758722, at *3 (W.D. Wash. Oct. 20, 2017) (numerosity satisfied by class of 93 class members).  Here, the proposed Class consists of thousands of individuals.  *See* Fraietta Decl. ¶ 11.  Accordingly, numerosity is easily met for the purposes of preliminary approval.

### 2.   Fed. R. Civ. P. 23(a)(2) – Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011).  "This requirement has been construed permissively, and all questions of fact and law need not be common to satisfy the rule." *In re Yahoo! Inc. Customer Data Security Breach Litig.*, 2020 WL 4212811, at *2 (N.D. Cal. July 22, 2020) ("*In re Yahoo*") (internal quotations omitted).  "Indeed, "for purposes of Rule 23(a)(2), even a single common question will do." *Id*.  The common contention must be of such a nature that it is capable of class-wide resolution, and that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.  Moreover, "[where] the circumstances of each particular class member vary but retain a common core of factual legal issues with the rest of the class, commonality exists," *Parra v. Bashas', Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008), and "[i]t is not necessary that members of the proposed class share every fact in common." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (internal quotations omitted).  Indeed, "the theoretical possibility of individual issues is not enough to outweigh the benefits of common resolution of classwide issues." *Tavenner v. Talon Grp.*, 2012 WL 1022814, at *4 (W.D. Wash. Mar. 26, 2012).

This case presents a host of common questions:  (i) whether the virtual chips in Defendants' Applications are "things of value"; (ii) whether the Applications constitute "gambling" under Washington law; (iii) whether class members are entitled to recover their losses under Washington law (iv) whether Defendants' conduct violates the Washington Consumer Protection Act; (v) whether Defendants' have been unjustly enriched at Plaintiff's and the Class's expense; and (vi)

whether Plaintiff and the Class are entitled to treble damages under the Washington Consumer

Protection Act.

These common questions, all of which stem from Defendants' common course of conduct,

are sufficient to establish commonality. *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957

(9th Cir. 2013) (internal quotations omitted) (noting key inquiry is "whether class treatment will

generate common answers apt to drive the resolution of the litigation"). At the heart of this case

is Plaintiff's allegation that the Applications constitute illegal gambling. This litigation, if tried to

a verdict, would resolve all claims stemming from that allegation. Thus, commonality is satisfied.

### 3. Fed. R. Civ. P. 23(a)(3) – Typicality

Rule 23(a)(3) requires that the claims of the representative plaintiffs be "typical of the

claims … of the class." *See* Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards,

representative claims are 'typical' if they are reasonably co-extensive with those of absent class

members; they need not be substantially identical." *See Hanlon*, 150 F.3d at 1020. In short, to

meet the typicality requirement, the representative plaintiffs simply must demonstrate that the

members of the settlement class have the same or similar grievances. *Gen. Tel. Co. of Sw. v.

Falcon*, 457 U.S. 147, 161 (1982). Ultimately, "a class representative must be part of the class and

possess the same interest and suffer the same injury as the class members." *Ali*, 2016 WL 4611542,

at *2 (quoting *Gen. Tel. Co. of the SW v. Falcon*, 457 U.S. 147, 156 (1982)) (internal quotations

omitted).

Typicality is met here because, while Plaintiff's individual damages may not be identical to

each Class member's, his legal claim against Defendants is identical to those possessed by all Class

members: i.e., that the Applications are illegal gambling games, and thus Plaintiff's and Class

members' in-game losses must be returned to them under Washington law. Accordingly, Plaintiff

and Class members have suffered the same injury by virtue of their use of the allegedly illegal

Applications. Plaintiff therefore has the same interest as every other Class member in obtaining all

available relief for Defendants' alleged violations. As a result, typicality is satisfied.

### 4. Fed. R. Civ. P. 23(a)(4) – Adequacy

The final requirement of Rule 23(a) is that "the representative parties will fairly and

adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "To determine whether the representation meets this standard, we ask two questions: (1) do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003).  Adequacy is presumed where a fair settlement was negotiated at arm's-length.  Newberg on Class Actions §11.28, at 11-59.

As to the first inquiry, Plaintiff and Class Counsel have no conflicts of interests with the Class.  *See* Fraietta Decl. ¶ 13.  Rather, the named Plaintiff, like each absent Class Member, has a strong interest in proving Defendants' common course of conduct, and obtaining redress.  *Id.* ¶ 12.

As to the second inquiry, Plaintiff and his counsel have vigorously and competently pursued the Class Members' claims.  Plaintiff, for his part, has demonstrated his willingness to vigorously prosecute this case, including by providing his counsel with relevant documents, testimony, and consumer insight into the intricacies of Defendants' Applications.  Plaintiff has remained in constant communication with his counsel, and he was heavily involved in nearly every aspect of this case, from its inception through settlement.  *See* Fraietta Decl. ¶ 12.  Plaintiff, by and through his successor, Alma Sue Croft, will fairly and adequately protect the interests of the Settlement Class.

Likewise, the Court should have no hesitation in appointing Bursor & Fisher, P.A. as Class Counsel.  As an initial matter, the Court need only ask whether proposed Class Counsel are unencumbered by conflicts of interest and will vigorously prosecute the action.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).  The answer to both questions is clearly yes.

First, there is no indicia of conflicts of interest and counsel is aware of none.  Fraietta Decl. ¶ 13.  Proposed Class Counsel have no financial stake in the Defendants, nor do they have any connections to Class members that might cause them to privilege certain Class members over others.  *Id.*  Second, Class Counsel has and will continue to prosecute this case and protect the interests of the proposed Class.  Class Counsel are well-qualified and experienced members of the plaintiffs' bar, and have significant experience and success in prosecuting complex class actions

such as this one.  *See* Fraietta Decl., Ex. 2 (firm resume of Bursor & Fisher, P.A.).  Notably, Class

Counsel was recently appointed as Head of the Facebook Track in a high-profile MDL class action

lawsuit involving similar "illegal gambling" allegations against Apple, Google, and Facebook.

*See*, *e.g.*, *In Re: Apple Inc. App Store Simulated Casino-Style Games Litig.*, Case No. 5:21-md-

03001-EJD, ECF No. 51 (N.D. Cal. Sept. 23, 2021) (Order Granting Appointment of Interim Lead

Counsel).  Accordingly, Rule 23(a)(4) is satisfied.

### B.       The Proposed Class Satisfied The Requirements of Rule 23(b)(3)

In addition to satisfying all four of Rule 23(a)'s prerequisites for certification, a proposed

class must also satisfy Rule 23(b)(3)'s additional requirements—predominance and superiority.

*See* Fed. R. Civ. P. 23(b)(3).  Certification is encouraged where, as here, "the actual interests of the

parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022.

As detailed below, the predominance and superiority requirements of Rule 23(b)(3) are satisfied.

#### 1.       Common Questions of Law and Fact Predominate

Common questions predominate here. The Supreme Court has made clear that

predominance is a qualitative inquiry: "The predominance inquiry 'asks whether the common,

aggregation-enabling, issues in the case are more prevalent or important than the non-common,

aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036,

1045 (2016) (quoting 2 W. Rubenstein, NEWBERG ON CLASS ACTIONS § 4:49 (5th ed. 2012)).

When considering whether common issues predominate, the court should begin with "the elements

of the underlying cause of action." *Reichert v. Keefe Commissary Network, LLC*, 331 F.R.D. 541,

553 (W.D. Wash. 2019) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809

(2014)).  "More important questions apt to drive the resolution of the litigation are given more

weight in the predominance analysis over individualized questions which are of considerably less

significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th

Cir. 2016).  As these cases and the text of the rule make clear, individual questions need not be

absent, but merely must occupy less importance to the litigation than common questions.

The inquiry is especially straightforward in this case.  The showings needed for Plaintiff to prevail on the elements of his claims under Washington's RMLGA and the CPA depend on evidence or legal argument that is common to the class—principally the operation of Defendants' Applications.  A factfinder's resolution of questions related to the operation of the Applications— for example, whether the chips sold in the Applications are "things of value"—will resolve questions central to the claims of every class member in one fell swoop, driving the litigation forward.  *See Reichert*, 331 F.R.D. at 554-55 (finding predominance satisfied when all or nearly all elements of the class's prima facie case presented common questions); *Taylor v. Universal Auto Grp. I, Inc.*, 2014 WL 6654270, at *16 (W.D. Wash. Nov. 24, 2014) (predominance satisfied where "predominant" issue contested by the parties was common to the class).  An assessment of each class member's Lifetime Spending Amount will be accomplished by a common and straightforward method: summing their spending evidenced by the data to be provided to the court-appointed Settlement Administrator.  *Cf. Bess v. Ocwen Loan Servicing LLC*, 334 F.R.D. 432, 436 (W.D. Wash. 2020) (quotation omitted) ("[T]he need for individualized findings as to the amount of damages does not defeat class certification.").

Whether a class member has DRAP or non-DRAP claims will also be determined using data provided to the court-appointed Settlement Administrator by Defendants and the Platform Providers.  These common questions overwhelm any individualized questions affecting particular class members, either as they relate to the Class's ability to make a *prima facie* showing of Defendant's liability, or with respect to potential affirmative defenses. And, in any event, the Supreme Court has made clear that the existence of "affirmative defenses peculiar to some individual class members" does not defeat predominance, even if those defenses must be tried separately.  *Tyson Foods*, 136 S. Ct. at 1045.  Predominance is therefore satisfied.

### 2.    A Class Action is the Superior Method of Resolving the Controversy

The superiority criterion encompasses at least four considerations: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). The first and second factors plainly point in favor of certification. "There is no indication that any [class members] have an interest in pursuing their own claims—in fact, it would likely be uneconomical for them to do so. There is also no evidence that certain [class members] have already initiated their own individual actions." *Reichert*, 331 F.R.D. at 556.

While some class members have substantial alleged damages, it is difficult to imagine that a rational contingency-fee lawyer would take on any individual claim given the time, effort, and resources that Defendants have demonstrated they are willing to commit to defending claims against its Applications. *See Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). Moreover, the huge number of individuals in the class would overwhelm the judicial system if class members were forced to litigate individually. *See Taylor*, 2014 WL 6654270, at *19.

Next, this forum is the clear choice in which to concentrate the litigation. The claims arise under Washington law, and the Class is composed of individuals who played the Applications while in Washington. *See Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*, 2019 WL 358517, at *6 (E.D. Cal. Jan. 29, 2019) ("The fact that all remaining claims are brought under California law weighs in favor of a California federal court adjudicating the dispute."). Moreover, this forum is intimately familiar with the facts and law underlying this action. It would make little sense to force the Parties to start over elsewhere. *See Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 560 (W.D. Wash. 2008) (finding the forum superior because "the Court is already familiar with [p]laintiffs' claims"). Accordingly, a class action is the superior method for adjudicating the controversy between the Parties, and as all requirements of class certification under Rule 23 are met, the proposed Settlement Class should be certified.

### C.   The Court Should Preliminarily Approve The Settlement Because It Is Fair, Adequate, And Reasonable

Fed. R. Civ. P. 23(e)(2) provides that "the court may approve [a proposed class action

settlement] only after a hearing and on finding that it is fair, reasonable, and adequate."  When

making this determination, the Ninth Circuit has instructed district courts to balance several

factors:  (1) the strength of Plaintiff's case; (2) the risk, expense, complexity, and likely duration of

further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount

offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and

(6) the experience and views of counsel.  *Hanlon*, 150 F.3d at 1026 (the "*Hanlon* Factors").[2]

"These factors substantively track those provided in 2018 amendments to Rule 23(e)(2),

under which the court may approve a settlement only after considering whether:

    (A)   the class representatives and class counsel have adequately represented the class;

    (B)   the proposal was negotiated at arm's length;

    (C)   the relief provided for the class is adequate, taking into account:

        (i)   the costs, risks, and delay of trial and appeal;

        (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)   any agreement required to be identified under Rule 23(e)(3); and

    (D)   the proposal treats class members equitably relative to each other."

*Greer v. Dick's Sporting Goods, Inc.*, 2020 WL 5535399, at *2 (E.D. Cal. Sept. 15, 2020).  The

new Rule 23(e) factors are "not intended to 'displace' any factors developer over the years in the

circuit courts."  *Smith v. Kaiser Foundation Hospitals*, 2020 WL 5064282, at *9 (S.D. Cal. Aug.

26, 2020) (citing Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment).

At the preliminary approval stage, this Court can conduct a "less searching" inquiry than at

final approval, and "seek[] merely to identify any 'glaring deficiencies' prior to sending notice to

class members."  *Rinky Dink, Inc. v. World Bus. Lenders, LLC*, 2016 WL 4052588, at *4 (W.D.

Wash. Feb. 3, 2016).  Here, nonetheless, the Settlement Class meets both the *Hanlon* Factors and

---

[2] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement."  *Hanlon*, 150 F.3d at 1026.  This consideration is more germane to final approval, and will be addressed at the appropriate time.

the new Rule 23(e)(2) factors.

### 1. The Proposed Settlement is the Product of Serious, Informed, and Non-Collusive Negotiations

This Settlement is the product of informed, arm's-length negotiations facilitated by Hon. Layn R. Phillips (Ret.), a well-renowned mediator who has intimate knowledge of the facts, legal issues, and value of these types of litigations.[3] *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."); *Helde v. Knight Transportation, Inc.*, No. 2:12-cv-00904, Dkt. No. 191 at 2 (W.D. Wash. May 24, 2017) (granting preliminary approval where "Settlement Agreement resulted from extensive arm's-length negotiations, with participation of an experienced mediator"); *Gragg v. Orange CAB Co., Inc.*, 2017 WL 785170, at *1 (W.D. Wash. Mar. 1, 2017) (same).

Furthermore, this Settlement presents none of the red flags the Ninth Circuit has flagged as indicative of potential collusion—(1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded," (2) "when the parties negotiate a 'clear sailing' arrangement," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth*, 654 F.3d at 947 (quotations omitted).

As an initial matter, proposed Class Counsel is not receiving a disproportionate distribution of the Settlement Fund or being amply rewarded while the class receives no monetary distribution. To the contrary, proposed Class Counsel have limited themselves to a fee petition within the "usual range" for fees in this Circuit—25% of the Settlement Fund. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). And far from receiving coupons or meaningless *cy pres*-only relief, class members will receive substantial individual cash recoveries.[4] Second, there is no "clear

---

[3] In particular, Judge Phillips has successfully mediated other cases involving nearly identical claims. *See, e.g., Wilson v. Huuuge, Inc.*, Case No. 18-cv-05276 (W.D. Wash.); *Wilson v. Playtika, Ltd.*, Case No. 18-cv-05393 (W.D. Wash.); *Kater v. Churchill Downs*, Case No. 15-cv-00612 (W.D. Wash.).

[4] While Plaintiff will petition the Court for a reasonable service award, no class member will be given preferential treatment at the expense of another. *See Scott v. United Servs. Auto. Ass'n*, 2013 WL 12251170, at *1 (W.D. Wash. Jan. 7, 2013) (noting preliminary approval generally granted absent "obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class") (citations omitted).

sailing" provision in the settlement.  *See In re Bluetooth*, 654 F.3d at 947 (defining clear sailing provisions).  Defendants are free to object to proposed Class Counsel's fee request should they determine the request is unreasonable.  Third, there is no possibility that any funds revert back to Defendant.  *See* Settlement § 1.36; *id.* § 2.1(k).

In sum, there is no indicia of collusion here because there was no collusion.  This Settlement is the product of serious, informed, non-collusive negotiations.  That fact militates in favor of granting preliminary approval.

### 2.   The Settlement Class Meets All Of The *Hanlon* Factors

#### i.   *Hanlon Factor 1 – The Strength Of Plaintiff's Case*

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice."  *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted).  The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."  *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

Here, as set forth in the Fraietta Declaration, Class Counsel engaged in arms-length negotiations with Defendants' counsel and with the assistance of a neutral mediator, and Class Counsel was thoroughly familiar with the applicable facts, legal theories, and defenses on both sides.  Fraietta Decl. ¶¶ 2, 4, 6.  Although Plaintiff and Class Counsel had confidence in their claims, a favorable outcome was not assured.  *Id.* ¶ 10.  They also recognize that they would face risks at class certification, summary judgment, and trial.  *Id.*  Defendants vigorously deny Plaintiff's allegations and assert that neither Plaintiff nor the Class suffered any harm or damages. In addition, Defendants would no doubt present a vigorous defense at trial, and there is no assurance that the Class would prevail – or even if they did, that they would not be able to obtain an award of damages significantly more than achieved here absent such risks.  Thus, in the eyes of Class Counsel, the proposed Settlement provides the Class with an outstanding opportunity to obtain significant relief at this stage in the litigation.  *Id.*  The Settlement also abrogates the risks

that might prevent them from obtaining any relief.  *Id.*; *see also Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at \*4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").  Accordingly, this factor is met.

      ii.    *Hanlon Factor 2 – The Risk, Expense, Complexity, And Likely Duration Of Further Litigation*

As referenced above, proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a class, having summary judgment granted against Plaintiff, or losing at trial.  Such considerations have been found to weigh heavily in favor of settlement. *See Ikuseghan v. Multicare Health Sys.*, 2016 WL 3976569, at \*4 (W.D. Wash. July 25, 2016) ("[T]he outcome of trial and any appeals are inherently uncertain and involve significant delay.  The [s]ettlement avoids these challenges."); *see also Curtis-Bauer*, 2008 WL 4667090, at \*4 ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").  Even assuming Plaintiff was to survive a motion to dismiss and summary judgment, he would face the risk of establishing liability at trial in light of the numerous defenses Defendants were prepared to assert. The experience of Class Counsel has taught them that these considerations can make the ultimate outcome of a trial highly uncertain.

Moreover, even if Plaintiff prevailed at trial, in light of the numerous class members that were arguably bound by arbitration and a class action waiver, there is a substantial likelihood that Class members may not be awarded significantly more than is offered to them under this Settlement on an individual basis.  For example, in *In re Apple Computer Sec. Litig.*, 1991 WL 238298, at \*1 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for plaintiffs after an extended trial.  Based on the jury's findings, recoverable damages would have exceeded $100 million. However, weeks later, Judge Ware overturned the verdict, entering judgment notwithstanding the verdict for the individual defendants, and ordered a new trial with respect to the corporate defendant.  *Id.*  By settling, Plaintiff and the Class avoid these risks, as well as the delays and risks of the appellate process.

### iii.  Hanlon Factor 3 – The Risk Of Maintaining Class Action Status Throughout The Trial

In addition to the risks of continuing the litigation, Plaintiff would also face risks in certifying a class and maintaining class status through trial.  Even if the Court were to grant a motion for class certification, the class could still be decertified at any time.  *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted).  From their prior experience, Class Counsel anticipates that Defendants would likely appeal the Court's decision pursuant to Rule 23(f), and/or move for decertification at a later date. "[C]onsummating this Settlement promptly in order to provide effective relief to Plaintiff and the Class" eliminates these risks by ensuring Class Members a recovery that is certain and immediate. *Johnson v. Triple Leaf Tea Inc.*, 2015 WL 8943150, at *4 (N.D. Cal. Nov. 16, 2015).

### iv.  Hanlon Factor 4 – The Amount Offered In Settlement

By any measure, the Settlement here offers meaningful relief for the Settlement Class. Three million five hundred thousand dollars ($3,500,000.00) is a massive recovery for this Washington-only class.  It is a large enough sum such that non-DRAP Class members with the highest Lifetime Spending Amounts are likely to recover 50%, or more depending on *pro rata* adjustment, and that no participating Class member is likely to recover under 10% of their Lifetime Spending Amount.  *See* Ex. E to Settlement.  And in the midst of financial uncertainty brought about by the COVID-19 pandemic, these recoveries are even more significant for Class members.

The prospective relief offered by the settlement bolsters the fairness of the settlement.  *See Bennett v. SimplexGrinnell LP*, 2015 WL 1849543, at *7 (N.D. Cal. Apr. 22, 2015) (noting "the significant value of the prospective relief also obtained in the settlement agreement" warranted preliminary approval).  The settlement requires Defendants to establish and make publicly available a voluntary self-exclusion policy that will allow players to exclude themselves from further gameplay, to link to that policy prominently within the games, and to have its customer service representatives provide that link to players who contact them and reference or exhibit video game behavior disorders.  *See* Settlement § 2.2. These changes, intended to generally mirror the sorts of

voluntary self-exclusion programs that states often require casinos to implement, reflect a pioneering advancement in social casino self-regulation.  And as relevant here, these changes to Defendants' conduct—in conjunction with the $3.5 million cash fund—militate in favor of approval.  *See Officers for Justice*, 688 F.2d at 628 ("It is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.").  Further, Defendants have already implemented changes to in-game mechanics that prevent players from being forced to purchase additional virtual coins or wait before continuing to play at least one game within the Application they are playing.  As such, this factor is satisfied.

> v.    *Hanlon Factor 5 – The Extent Of Discovery Completed And The Stage Of The Proceedings*

Under this factor, courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  Plaintiff, through undersigned counsel, has conducted extensive research, discovery, and investigation during the prosecution of the action, including, without limitation: (i) the review of voluminous in-game purchase documents produced by Defendants; (ii) the review of publicly available reports, articles, and other publications concerning Defendants' Applications; (iii) the review of publicly available information regarding Defendants and their business practices, and (iv) hired and consulted extensively with a damages expert in order to assist with analyzing and synthesizing the data produced by Defendants.  These efforts led to the production of critical documents concerning the case, which Class Counsel reviewed and used to ascertain the strengths and weaknesses of the case.  Fraietta Decl. ¶ 2.  The parties also held numerous telephonic and written discussions regarding Plaintiff's allegations, discovery, and settlement, as well a full-day mediation with Hon. Layn R. Phillips (Ret.) of Phillips ADR.  *Id.* ¶ 4.  The Settlement is the result of fully-informed negotiations.  *Id.* ¶ 6.  *Vega v. Weatherford U.S., Limited Partnership*, 2016 WL 7116731, at *9 (E.D. Cal. Dec. 7, 2016) (factor weighed in favor of settlement where "[g]iven the discovery completed by the parties, it appears that the parties made informed decisions, which lead to resolution of the matter with a mediator").

###### vi.     Hanlon Factor 6 – The Experience And Views Of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected3 outcome in litigation." *Rodriguez*, 563 F.3d at 967.  Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See* Fraietta Decl., Ex. 2 (firm resume of Bursor & Fisher, P.A.).  Based on their experience, Class Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation.

### 3.     The Settlement Class Meets All Of The New Rule 23(e)(2) Factors

###### i.     Rule 23(e)(2)(A) – The Class Representatives And Class Counsel Have Adequately Represented The Class

"The Ninth Circuit has explained that 'adequacy of representation ... requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018) (quoting *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d at 462).  Here, this prong is met for the same reasons as Plaintiff and Class Counsel met the adequacy prong under Fed. R. Civ. P. 23(a)(4).  *See* Argument § A.4, *supra*; *see also Hilsley*, 2020 WL 520616, at *5 ("Because the Court found that adequacy under Rule 23(a)(4) has been satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met.").

###### ii.     Rule 23(e)(2)(B) – The Proposal Was Negotiated At Arm's Length

A court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner*, 2010 WL 1687832, at *9 (citing *Rodriguez*, 563 F.3d at 965).  Here, both Class Counsel and counsel for Defendants are experienced in class action litigation, and were "thoroughly familiar with the applicable facts, legal theories, and defenses on both sides." *Hilsley*, 2020 WL 520616, at

*5. Further, "the Settlement was reached as a result of informed and non-collusive arms-length negotiations [over a number of months] facilitated by a neutral mediator." *Kramer v. XPO Logistics, Inc.*, 2020 WL 1643712, at *1 (N.D. Cal. Apr. 2, 2020); *G. F. v. Contra Costa County*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotations omitted); *see also* Fraietta Decl. ¶¶ 3-5.    Thus, this prong is met.

### iii.    Rule 23(e)(2)(C) – The Relief Provided For The Class Is Adequate

Fed. R. Civ. P. 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." "The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement." *Hilsley*, 2020 WL 520616, at *6. Each prong is met.

**"The Costs, Risks, And Delay Of Trial And Appeal":** Plaintiff established above that this factor is met. *See* Argument § C.2, *supra*.

**"The Effectiveness Of Any Proposed Method Of Distributing Relief To The Class":** "The goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Hilsley*, 2020 WL 520616, at *7. As described *infra*, the proposed notice plan and claims procedure is straightforward and comports with due process. *See* Argument § D. The plan was proposed by experienced and competent counsel and ensures "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 695 (S.D.N.Y. 2019) (internal quotations omitted).

1

**"The Terms Of Any Proposed Award Of Attorney's Fees":**  Class Counsel will petition

2

this Court for an award of up to one quarter of the Settlement Fund (or $875,000.00) in attorneys'

3

fees, plus reimbursement of Court-approved costs and expenses associated with the Action.

4

Settlement § 9.1.  Under Ninth Circuit standards, a District Court may award attorneys' fees under

5

either the "percentage-of-the-benefit" method or the "lodestar" method.  *Fischel v. Equitable Life*

6

*Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002).  "Courts in the Ninth Circuit prefer to use

7

the percentage-of-recovery method, but to cross-check the final figure with a lodestar calculation."

8

*In re Transpacific Passenger Air Transportation Antitrust Litig.*, 2019 WL 6327363, at *1 (N.D.

9

Cal. Nov. 26, 2019).

10

Under the common fund doctrine, courts typically award attorneys' fees based on a

11

percentage of the total settlement, and "25% of the common fund [is] benchmark award for

12

attorney fees."  *Hanlon*, 150 F.3d at 1029.  Courts in this Circuit, however, routinely award higher

13

percentages up to and including one third.  *See State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir.

14

1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming

15

attorney's fee award of 33% of the recovery); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th

16

Cir. 2003) (affirming attorney's fee award of 33% of the recovery).  To calculate attorneys' fees

17

based on the percentage of the benefit, Ninth Circuit precedent requires courts to award class

18

counsel fees based on the total benefits being made available rather than the amount actually paid

19

out.  *Young v. Polo Retail, LLC*, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007) ("The Ninth

20

Circuit, however, bars consideration of the class's actual recovery in assessing the fee award");

21

*Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (ruling that a district

22

court abused its discretion in basing attorney fee award on actual distribution to class instead of

23

amount being made available).  The Court must also include the value of the benefits conferred to

24

the Class, including any attorneys' fees, expenses, and notice and claims administration payments

25

to be made.  *See*, *e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 972-74 (9th Cir. 2003); *Hartless v.*

26

*Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011), *aff'd*, 473 F. App'x. 716 (9th Cir. 2012).  Stated

27

otherwise, California courts include the requested attorneys' fees when calculating the total value

28

of the settlement fund.  *Lealao v. Beneficial California, Inc*, 82 Cal. App. 4th 19, 33 (2000).

Further, the value of injunctive relief must be included in calculating the total benefit made

available to the class.  *See*, *e.g.*, *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 631 (9th

Cir. 2020) (upholding district court's approval of attorneys' fees where it was apparent that

injunctive relief offered "generated benefits far beyond the cash settlement fund") (internal

quotations omitted); *Kumar v. Salov N. Am. Corp.*, 2017 WL 2902898, at *7 (N.D. Cal. July 7,

2017), *aff'd*, 737 F. App'x 341 (9th Cir. 2018) ("The Court analyzes an attorneys' fee request

based on either the 'lodestar' method or a percentage of the total benefit made available to the

settlement class, *including costs, fees, and injunctive relief*.") (emphasis added).

Here, Class Counsel has made available a non-reversionary common fund of $3.5 million,

which will compensate Settlement Class members for 10 to 50% of the monies spent on

Defendants' Applications, subject to *pro rata* adjustment.  Class Counsel has also instituted

significant and valuable injunctive relief, as discussed *supra* § III.C; *see also* Settlement § 2.2.

**"Any Agreement Required To Be Identified By Rule 23(e)(3)":**  This prong asks

whether there was "any agreement made in connection with the proposal."  *In re GSE Bonds

Antitrust Litig.*, 414 F. Supp. 3d at 696.  Here, other than the Settlement, no such agreement exists.

*See* Fraietta Decl. ¶ 9.

In light of the foregoing, the Settlement provides adequate relief to the Settlement Class

under Rule 23(e)(2)(C).

    iv. *Rule 23(e)(2)(D) – The Proposal Treats Class Members
       Equitably Relative To Each Other*

Under this factor, courts consider whether the Settlement "improperly grant[s] preferential

treatment to class representatives or segments of the class."  *Hefler*, 2018 WL 6619983, at *8.

Here, each Settlement Class member will be compensated based on their total Lifetime Spending

Amount, and whether they are bound by Defendants' DRAP.  This does not constitute "preferential

treatment" because Class members who spent more money on Defendants' applications stand to

recover more money, as do Class members who are not subject to Defendants' DRAP.  Notably,

however, the Settlement still provides excellent relief for Class members who are subject to

Defendants' DRAP, even though Defendants have a colorable argument that those claims should

not be worth anything.  Thus, this Rule 23(e)(2) factor is also met.

> **D.**    **The Proposed Notice Program Constitutes Adequate Notice And Should Be Approved**

Once preliminary approval of a class action settlement is granted, notice must be directed to

class members.  For class actions certified under Rule 23(b)(3), "the court must direct to class

members the best notice that is practicable under the circumstances, including individual notice to

all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  In

addition, Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class

members who would be bound by a proposal."  Fed. R. Civ. P. 23(e)(1)

When a court is presented with class notice pursuant to a settlement, both the class

certification notice and notice of settlement may be combined in the same notice.  MANUAL FOR

COMPLEX LITIGATION § 21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the

Rule 23(e) notice are sometimes combined.").  This notice allows Class Members to decide

whether to opt out of or participate in the class and/or to object to the Settlement and argue against

final approval by the Court.  *Id.*  The proposed notice program here informs the Class of their rights

and includes a comprehensive plan for direct notice (for those Class Members for whom Defendant

has contact information), a settlement website, and an expansive digital and social media

notification campaign, and constitutes the best notice practicable under the circumstances.

Here, the Parties have agreed upon a multi-part notice plan to be carried out by JND Legal

Administration, a well-respected class action settlement administrator.  Defendants have agreed to

provide the Settlement Administrator and proposed Class Counsel all Settlement Class Member

contact information reasonably available to Defendants, including names, phone numbers, and

email addresses. *See* Agreement § 4.1(a).  For each Player ID with a Lifetime Spending Amount

greater than zero, Defendants must also provide the Player ID's Lifetime Spending Amount, if

known, and information sufficient to determine whether the Player ID clicked to "accept" the

Defendants' DRAP on or after February 1, 2021, but before January 31, 2022.  *Id.*  Defendants and

proposed Class Counsel shall each provide the Settlement Administrator the information reflected

in any opt-out letters received by Defendants before the date of the execution of this Settlement Agreement.  *Id.* § 4.1(d).  Proposed Class Counsel and Defendants' Counsel have also agreed to cooperate to work with the Platform Providers to obtain other information necessary to effectuate the notice and administration program.

**Publication, Media, and Internet Notice:** Notice shall be provided via a media and Internet notice program, including banner ads on Internet sites targeted to the Settlement Class Members.  This campaign is estimated to collectively obtain roughly 3 million individual notice impressions.  The digital and social media notice program is described in detail in the JND Declaration.

**Email and U.S. Mail Notice:**  A notice substantially in the form attached as Exhibit F to the Settlement shall be e-mailed or mailed to the last known e-mail address or mailing address of any Class Member whose contact information is available to Defendant.  E-Mail Notice will be followed by U.S. Mail Notice (Exhibit B to the Settlement) to any recipient for whom E-Mail Notice is unsuccessful.

**Settlement Website:**  The parties will post a copy of the Long Form Notice (Ex. D) on a website to be maintained by the Administrator, which will additionally contain the settlement documents, an online claim form (Ex. A), a list of important dates, and any other information to which the parties may agree.  *See Hilsley*, 2020 WL 520616, at *7 ("The claims process is straightforward and allows Settlement Class members to make a claim by submitting a valid and timely Claim Form to the Settlement Administrator without complication.").  The website shall also contain a Settlement Email Address and Settlement Telephone Number in addition to Class Counsel's contact information, where Class Members can submit questions and receive further information and assistance.

**CAFA Notice:**  The parties shall also cause to be disseminated the notice to public officials required by the Class Action Fairness Act ("CAFA").  *See* Settlement § 4.2(e).

These proposed methods of giving notice are appropriate because they provide a fair opportunity for Class Members to obtain full disclosure of the conditions of the Settlement and to

make an informed decision regarding the proposed Settlement.  The notice plan is calculated to reach no less than 70% of Settlement Class Members, which is the hallmark of a great notice program, and certainly within the range of approval.  *Perks v. Activehours, Inc.*, 2021 WL 1146038, at *2 (N.D. Cal. Mar. 25, 2021) ("The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class.").  Thus, the notices and notice procedures amply satisfy the requirements of due process.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff and Class Counsel respectfully request that the Court grant preliminary approval to the Settlement, provisionally certify the Class, approve the proposed notice plan, and enter the Proposed Preliminary Approval Order in the form submitted herewith.

Dated:  February 15, 2022              **BURSOR & FISHER, P.A.**

By: _____/s/  *Philip L. Fraietta*_____
            Philip L. Fraietta

Philip L. Fraietta (*pro hac vice*)
Alec M. Leslie (*pro hac vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail:  pfraietta@bursor.com
              aleslie@bursor.com

**CARSON NOEL PLLC**
Wright A. Noel (State Bar No. 25264)
20 Sixth Avenue NE
Issaquah, WA 98027
Telephone: (425) 837-4717
Facsimile: (425) 837-5396
Email: wright@carsonnoel.com

*Attorneys for Plaintiff*