1

2

3  UNITED STATES DISTRICT COURT
   WESTERN DISTRICT OF WASHINGTON
4  AT SEATTLE

5

6  ALMA SUE CROFT, individually and on
   behalf of all others similarly situated,

7                                    Plaintiff,

8

9                    v.

10 SPINX GAMES LIMITED, GRANDE GAMES
   LIMITED, and BEIJING BOLE
11 TECHNOLOGY CO., LTD.,

12                                   Defendants.

Case No. 2:20-cv-01310-RSM

**CLASS COUNSEL'S MOTION FOR
AWARD OF ATTORNEYS' FEES
AND EXPENSES AND ISSUANCE OF
INCENTIVE AWARD**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ..................................................................................................................1

PROCEDURAL HISTORY ...................................................................................................1

ARGUMENT .........................................................................................................................3

I.       CLASS COUNSEL'S FEE REQUEST IS REASONABLE UNDER THE
         PERCENTAGE OF THE BENEFIT METHOD.................................................................3

         A.      Class Counsel Achieved Extraordinary Results For The Class................................4

         B.      Class Counsel's Efforts Also Generated Non-Monetary Benefits .........................5

         C.      Market Rates as Reflected by Awards in Similar Cases Support Class
                 Counsel's Fee Request ...........................................................................................7

         D.      Plaintiff's Claims Carried Substantial Risk...........................................................8

         E.      Class Counsel Provided Quality Work in a Complex Case .....................................9

         F.      Class Counsel Handled This Case on a Contingent Basis and Bore
                 the Financial Burden...............................................................................................10

II.      THE COURT NEED NOT CONDUCT A LODESTAR CROSS-CHECK .......................11

III.     CLASS COUNSEL'S ATTORNEYS' FEES ARE REASONABLE UNDER
         A LODESTAR CROSS-CHECK...................................................................................13

         A.      Class Counsel Spent A Reasonable Number Of Hours On This
                 Litigation At A Reasonable Hourly Rate ................................................................13

         B.      All Relevant Factors Support Applying a Multiplier to Class
                 Counsel's Lodestar ...............................................................................................14

IV.      CLASS COUNSEL'S REASONABLY INCURRED EXPENSES SHOULD
         BE REIMBURSED ........................................................................................................15

V.       THE REQUESTED INCENTIVE AWARD FOR PLAINTIFF IS
         REASONABLE..............................................................................................................15

CONCLUSION .......................................................................................................................16

1

# TABLE OF AUTHORITIES

**PAGE(S)**

2

3

**CASES**

4

*Acosta v. Frito-Lay, Inc.*,
    2018 WL 646691 (N.D. Cal. Jan. 31, 2018) ................................................................. 15

5

*Aguilar v. Wawona Frozen Foods*,
    2017 WL 2214936 (E.D. Cal. May 19, 2017) ............................................................. 15

6

7

*Barbosa v. Cargill Meat Solutions Corp.*,
    297 F.R.D. 431 (E.D. Cal. 2013) ........................................................................... 9, 13

8

*Bowles v. Dep't of Ret. Sys.*,
    121 Wash.2d 52, 847 P.2d 440 (1993) ........................................................................ 3

9

10

*Campbell v. Facebook*,
    951 F.3d 1106 (9th Cir. 2020) ................................................................................ 11

11

*Farrell v. Bank of America Corp.*,
    827 F. App'x 628 (9th Cir. 2020) ....................................................................... 11, 12

12

13

*Fischel v. Equitable Life Assur. Society of U.S.*,
    307 F.3d 997 (9th Cir. 2002) .................................................................................. 14

14

*Garcia v. Schlumberger Lift Sols.*,
    2020 WL 6886383 (E.D. Cal. Nov. 24, 2020) ............................................................ 5

15

16

*George v. Acad. Mortg. Corp. (UT)*,
    369 F. Supp. 3d 1356 (N.D. Ga. 2019) ...................................................................... 7

17

18

*Graham v. DaimlerChrysler Corp.*,
    34 Cal. 4th 553 (2004) ......................................................................................... 11

19

*Greko v. Diesel U.S.A., Inc.*,
    2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ........................................................... 16

20

21

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................................ 12

22

23

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ..................................................................................... 15

24

*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. Jan. 20, 2011) ................................................................ 14

25

26

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ............................................................................................. 14

27

28

*Ikuseghan v. Multicare Health Sys.*,
   2016 WL 4363198 (W.D. Wash. Aug. 16, 2016) .......................................................... 12

*In re Anthem, Inc. Data Breach Litig.*,
   2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ............................................................ 10

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .................................................................................... 11

*In re Heritage Bond Litigation*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................................................ 5

*In re HP Inkjet Printer Litig.*,
   716 F.3d 1173 (9th Cir. 2013) ............................................................................... 4, 5

*In re HPL Techs., Inc. Sec. Litig.*,
   366 F. Supp. 2d 912 (N.D. Cal. 2005) ...................................................................... 13

*In re HQ Sustainable Mar. Indus., Inc. Derivative Litig.*,
   2013 WL 5421626 (W.D. Wash. Sept. 26, 2013) ...................................................... 12

*In re Hyundai & Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) .................................................................................... 11

*In re M.D.C. Holdings Sec. Litig.*,
   1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ............................................................... 7

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
   2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) .............................................................. 4

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................................... 9

*In re Optical Disk Drive Prods. Antitrust Litig.*,
   959 F.3d 922 (9th Cir. 2020) .................................................................................. 4, 7

*In re Sumitomo Copper Litig.*,
   74 F.Supp.2d 393 (S.D.N.Y.1999) ........................................................................... 11

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ............................................................................. 10, 11

*Jenson v. First Tr. Corp.*,
   2008 WL 11338161 (C.D. Cal. June 9, 2008) ............................................................ 7

*Kater v. Churchill Downs Inc.*,
   886 F.3d 784 (9th Cir. 2018) ................................................................................. 9, 12

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975) ............................................................................... 14

*McClintic v. Lithia Motors, Inc.*,
2011 WL 13127844 (W.D. Wash. Oct. 19, 2011) ............................................... 16

*McKeen-Chaplin v. Provident Savings Bank, FSB*,
2018 WL 3474472 (E.D. Cal. July 19, 2018) ..................................................... 11

*Morales v. City of San Rafael*,
96 F.3d 359 (9th Cir. 1996) ............................................................................... 14

*Perez v. Rash Curtis & Associates*,
2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) .................................................... 14

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ............................................................................. 16

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) ........................................................................... 12

*Stanger v. China Elec. Motor, Inc.*,
812 F.3d 734 (9th Cir. 2016) ............................................................................. 11

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ............................................................................. 15

*Steiner v. Am. Broad. Co.*,
248 F. App'x 780 (9th Cir. 2007) ................................................................. 8, 15

*Van Vranken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) .................................................................... 16

*Vasquez v. Coast Valley Rooding, Inc.*,
266 F.R.D. 482 (E.D. Cal. Mar. 9, 2010) .......................................................... 10

*Vincent v. Hughes Air W., Inc.*,
557 F.2d 759 (9th Cir. 1977) ............................................................................. 15

*Vizcaino v. Microsoft Corp.*,
142 F. Supp. 2d 1299 (W.D. Wash. 2001) ...................................................... 3, 4

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) .................................................................... passim

*Wing v. Asarco Inc.*,
114 F.3d 986 (9th Cir. 1997) ............................................................................... 9

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE, NEW YORK, NY 10019
TEL. 646.837.7150 · FAX. 212.989.9163

*Wininger v. SI Mgmt. L.P.*,
 301 F.3d 1115 (9th Cir. 2002) ........................................................................ 15

*Zakskorn v. American Honda Motor Co.*,
 2015 WL 3622990 (E.D. Cal. June 9, 2015) ................................................... 14

**STATUTES**

RCW 19.86.010 ................................................................................................ 1, 2

RCW 4.24.070 ...................................................................................................... 1

**RULES**

Fed. R. Civ. P. 26 ................................................................................................. 2

**OTHER AUTHORITIES**

A Fiduciary Judge's Guide to Awarding Fees in Class Actions,
 89 FORDHAM L. REV 1151 (2021) .................................................................... 8

ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS (3d ed. 1992) ................... 15

*Exploding the Class Action Agency Costs Myth: The Social Utility of Entrepreneurial Lawyers*,
 155 U. PA. L. REV. 103 (2006) ......................................................................... 12

The Rise of Contingent Fee Representation in Patent Litigation,
 64 ALA. L. REV. 335 (2012) .............................................................................. 8

**INTRODUCTION**

Plaintiff and Class Counsel have achieved an outstanding result in this case:  a $3.5 million non-reversionary, common fund settlement.  In the midst of a recession, the settlement payment checks Class Members will receive are significant, impactful, and immediate.  Indeed, under the Settlement allocation structure, Class Members stand to recover substantial portions of the amounts spent on Defendants' mobile gambling Applications, ranging from 10% (at the low end) to more than 50% (at the high end).  Furthermore, the Settlement requires Defendants to implement meaningful prospective relief, including by providing addiction-related resources within their social casino games and by creating and honoring a comprehensive self-exclusion policy.  Notably, the proposed Settlement here is directly in line with, and proportionate to, other recent settlements within this District that have been finally approved involving nearly identical allegations: *Kater v. Churchill Downs*, Case No. 15-cv-00612, ECF No. 222 (W.D. Wash. Feb. 11, 2021), *Wilson v. Huuuge, Inc.*, Case No. 18-cv-05276, ECF No. 140 (W.D. Wash. Feb. 11, 2021), *Wilson v. Playtika, Ltd.*, Case No. 18-cv-05277, ECF No. 164 (W.D. Wash. Feb. 11, 2021), and *Reed v. Light & Wonder, Inc.*, Case No. 18-cv-000565-RSL, ECF No. 197 (W.D. Wash. Aug. 12, 2022).

Notwithstanding these exceptional results, Class Counsel seek only the "benchmark" fee award of 25% of the Settlement Fund, in addition to reimbursement of their reasonably incurred litigation expenses as well as an incentive award for the Class Representative.  As explained further below, the requested award would fairly compensate Class Counsel and the Class Representative for the result they achieved, and this motion should be granted.

**PROCEDURAL HISTORY**

On September 1, 2020, former Plaintiff William Heathcote filed this putative class action in the United States District Court for the Western District of Washington against Defendant Grande Games Limited.  *See* ECF No. 1.  Mr. Heathcote alleged that Grande Games' mobile casino-style Applications fall within the definition of an illegal gambling game and that players can recover their losses under Washington law, setting forth claims for violations of RCW 4.24.070 (the "Recovery of Money Lost at Gambling Act" or "RMLGA"), violations of RCW 19.86.010 *et seq.* (the "Washington Consumer Protection Act" or "CPA") and unjust enrichment, based on Mr. Heathcote's

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

use of and purchases of virtual items in Grande Games' Applications.  *Id.*

On April 9, 2021, Mr. Heathcote filed a First Amended Class Action Complaint adding Defendants SpinX Games Limited and Beijing Bole Technology Co., Ltd. to the case, and making the same allegations against those Defendants as well.  *See* ECF No. 14.

In or around February 2021, Defendants displayed a pop-up window in certain of their Applications.  The pop-up window included a button that, if clicked, purported to bind players to terms of use requiring persons to arbitrate any claims against Defendants.

In response to the pop-up window, on April 20, 2021, Mr. Heathcote moved for a temporary restraining order to, *inter alia*, enjoin Defendants from displaying the pop-up window.  After full briefing from Plaintiff Heathcote and Defendants, the Court denied Plaintiff Heathcote's motion on April 28, 2021.  *See* ECF No. 31.  On May 14, 2021, the Parties filed a stipulation – which the Court granted – wherein Defendants agreed to waive service of process in exchange for 90 days to respond to Plaintiff Heathcote's First Amended Complaint.  *See* ECF No. 39.

From that point, the Parties engaged in direct communications, and, as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of resolution.  Those discussions eventually led to an agreement between the Parties to engage in mediation, which the Parties agreed would take place before the Honorable Layn Phillips (Ret.), who is a neutral affiliated with Phillips ADR Enterprises ("Phillips ADR").  In the weeks leading up to the mediation, the Parties were in regular communication with each other and with the Phillips ADR team, as the Parties sought to crystallize the disputed issues, produce focal information and data, and narrow down potential frameworks for resolution.  Declaration of Philip L. Fraietta ("Fraietta Decl."), ¶ 7.  During this period, Defendants provided Class Counsel with several sets of detailed transactional data for virtual chip purchases made by the Settlement Class; the Parties exchanged briefing on the core facts, legal issues, litigation risks, and potential settlement structures; and the Parties supplemented that briefing with extensive telephonic correspondence, mediated and shuttled by the Phillips ADR team, clarifying each other's positions in advance of the mediation.  *Id.* ¶ 8.

On October 20, 2021, the Parties participated in a mediation before Judge Phillips.  At the

conclusion of the mediation session, Judge Phillips made a mediator's proposal to settle the case in principle, which both Parties accepted. *Id.* ¶ 9. Thereafter, the Parties spent the next several months negotiating and executing a term sheet memorializing their agreement (hereinafter, the "Settlement"). *Id.* ¶ 10.

Unfortunately, on January 5, 2022, as the parties were on the cusp of finalizing the long form settlement agreement, Mr. Heathcote passed away unexpectedly at the age of 39. *Id.* ¶ 11. Alma Sue Croft, Mr. Heathcote's mother and sole heir, retained Class Counsel in order to see her son's efforts through to the finish line. *Id.* ¶ 12. The Settlement was fully executed on February 14, 2022., *id.*, and the Court granted Class Counsel's motion to substitute Ms. Croft as named Plaintiff in this action. ECF No. 54. Class Counsel's motion for preliminary approval was granted on March 24, 2022. ECF No. 60.

Over the following months, Class Counsel worked diligently with third parties such as Apple, Google, and Amazon in order to ascertain the Class Member data to effectuate notice. Fraietta Decl. ¶ 13. Over this time, various protective orders were negotiated, filed, and entered by the Court, and the Settlement approval schedule was extended to accommodate the same. *See* ECF Nos. 59, 65, 66, 68, 69. After that process was completed, Apple, Google, and Amazon produced relevant data and notice was disseminated to the Class Members in accordance with the operative Scheduling Order.

## ARGUMENT

### I.   CLASS COUNSEL'S FEE REQUEST IS REASONABLE UNDER THE PERCENTAGE OF THE BENEFIT METHOD

Because Washington law governs the claims in this case, it also governs the award of fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under Washington law, the percentage-of-recovery approach is generally used to calculate fees in common fund cases, and 25% is considered the "benchmark." *Bowles v. Dep't of Ret. Sys.*, 121 Wash.2d 52, 72, 847 P.2d 440 (1993) (observing that the lodestar method is generally reserved for statutory fee cases); *see also Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1302 (W.D. Wash. 2001), *aff'd*, 290 F.3d at 1043 ("The Washington Supreme Court rejected the lodestar method for determining attorneys fees in a common fund action.").

Washington courts look to federal law for guidance on determining an appropriate fee percentage, *see, e.g.*, *id.*, and the Ninth Circuit considers 25% the "benchmark" fee award in common fund cases, *Vizcaino*, 290 F.3d at 1047. When Ninth Circuit courts consider a request for attorneys' fees based on the percentage method, they typically consider some combination of the following non-exhaustive list of factors: "(1) the extent to which class counsel achieved exceptional results for the class; (2) whether the case was risky for class counsel; (3) whether counsel's performance generated benefits beyond the cash settlement fund; (4) the market rate for the particular field of law; (5) the burdens class counsel experienced while litigating the case; (6) and whether the case was handled on a contingency basis." *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020). Here, as discussed below, each factor definitively supports Class Counsel's fee request because Class Counsel's outstanding work secured remarkable results for the Settlement Class in the face of substantial risks to any recovery.

Accordingly, Class Counsel request a fee award of $875,000, or 25% of the Settlement Fund, in addition to reimbursement of their reasonably incurred expenses. This percentage would properly compensate Class Counsel for achieving an exceptional result.

## A. Class Counsel Achieved Extraordinary Results For The Class

When determining an award of attorneys' fees in a class action, "[t]he most important factor is the results achieved for the class." *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *3 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019). Typically, courts "aim to tether the value of an attorneys' fees award to the value of the class recovery." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013). In a common fund case in which class counsel seek an award as a percentage of the fund, "this task is fairly effortless. The district court can assess the relative value of the attorneys' fees and the class relief simply by comparing the amount of cash paid to the attorneys with the amount of cash paid to the class. The more valuable the class recovery, the greater the fees award." *Id.*

Here, the Settlement establishes a $3.5 million non-reversionary common fund from which Class Members may make claims to receive substantial reimbursement for monies spent on

Defendants' gambling applications.   The plan of allocation is structured in tiers so that Class Members who spent more money on the applications are entitled to commensurately recoup more money.   Further, all claims will likely be subject to *pro rata* upward adjustment.   Thus, by way of example, Settlement Class Members in the highest category of Lifetime Spending Amounts slated to recover the majority—*i.e.*, more than half—of their losses.

Given that the benefits of the Settlement far outshine those in any other remotely comparable class action settlement, Class Counsel respectfully submits that it is reasonable to award a benchmark fee of 25% of the Settlement Fund.   *Cf. HP*, 716 F.3d at 1178 (discussing the benefits of tying counsel's compensation to class members' recovery).   The results achieved here are significant, and the requested fee is in line with—or lower than—what courts regularly award in Washington and throughout the Ninth Circuit.   *See*, *e.g.*, *Wilson v. Huuuge, Inc.*, Case No. 18-cv-05276-RSL, ECF No. 141 (W.D. Wash. Feb. 11, 2021) (granting 25% of common fund in attorneys' fees); *Wilson v. Playtika Ltd. et al.*, Case No. 18-cv-05277-RSL, ECF No. 165 (W.D. Wash. Feb. 11, 2021) (same); *Reed v. Light & Wonder, Inc.*, Case No. 18-cv-000565-RSL, ECF No. 196 (W.D. Wash. Aug. 12, 2022) (same);  *see also West v. Cal. Service Bureau, Inc*., Case No. 4:16-cv-03124-YGR (N.D. Cal. Jan. 23, 2019) (awarding 33.33% of the common fund settlement); *Garcia v. Schlumberger Lift Sols.*, 2020 WL 6886383, at *3 (E.D. Cal. Nov. 24, 2020), *report and recommendation adopted*, 2020 WL 7364769 (E.D. Cal. Dec. 15, 2020) (awarding attorneys' fees of "33.33% of the gross settlement amount"); *In re Heritage Bond Litigation*, 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005) (awarding attorneys' fees of "thirty-three and one-third percent (33 1/3%) of the common fund").

**B.**     **Class Counsel's Efforts Also Generated Non-Monetary Benefits**

The monetary component of this Settlement is the primary relief provided to the Settlement Class, and it is the only component of the Settlement that Class Counsel ask to be compensated for directly.   That said, the non-monetary benefits that Class Counsel achieved for the Class in this litigation are significant and meaningful, and they further justify the appropriateness of the requested fee award here.

Specifically, the Settlement requires Defendants to place resources relating to video game behavior disorders within the Applications. Within the self-service resources available to players, Defendants are required to add an additional button or link with labeling referring to video game behavior disorder resources. This link or button will be similarly prominent to other links or buttons within the self-service resources. When clicked, the link or button will take players to a webpage that (1) encourages responsible gameplay; (2) describes what video game behavior disorders are; (3) provides or links to resources relating to video game behavior disorders; and (4) includes a link to Defendants' self-exclusion policy. Customer service representatives will provide the same information to any player that contacts them and references or exhibits video game behavior disorders, and will face no adverse employment consequences for providing players with this information. *See* Settlement § 2.2(a).

In addition, Defendants shall publish on their website a voluntary self-exclusion policy. That policy shall provide that, when a player self-excludes by specifying the Player ID(s) that the player wishes to ban, Defendants shall use commercially reasonable efforts to immediately ban the account(s) associated with those Player ID(s). Defendants shall retain discretion as to the particular method by which players may self-exclude; which may include, for example, permitting players to self-exclude by contacting Customer Support, completing a form on Defendants' website, or any other reasonably accessible means. Defendants shall use commercially reasonable efforts to prevent any use of the Application specified by the player. After a self-exclusion request is responded to in full by Defendants, Defendants shall not remove those restrictions for the period identified in the self-exclusion policy at the time the self-exclusion is requested. *Id*. § 2.2(b).

Finally, Defendants shall implement game mechanics for the Applications to ensure that players who run out of sufficient virtual chips to play the game they are playing will be able to continue to play games within the Applications without needing to purchase additional virtual coins or unreasonably wait (i.e., more than 30 seconds) until they would have otherwise received free additional virtual coins. *Id*. § 2.2(c). These injunctive components of the settlement further warrant the requested fee.

**C.      Market Rates as Reflected by Awards in Similar Cases Support Class Counsel's Fee Request**

Although the Ninth Circuit has not adopted the full market-mimicking approach of other circuits, "the market rate for the particular field of law" is still an important consideration. *Optical Disk Drive*, 959 F.3d at 930. Here, a market-based analysis supports the reasonableness of using the percentage method to calculate the fee in this case and the 25% percentage Class Counsel requests.

The market for high-stakes, high-value, plaintiff's-side litigators is entirely driven by a percentage-of-the-recovery model, with sophisticated clients typically incentivizing their lawyers by agreeing to a fixed percentage of between 30% and 40% of the recovery. *See Jenson v. First Tr. Corp.*, 2008 WL 11338161, at *13 n.15 (C.D. Cal. June 9, 2008) ("If this were non-representative litigation, the customary fee arrangement would likely be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery."); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *7 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery."); *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1382 (N.D. Ga. 2019) ("Plaintiffs request for approval of Class Counsel's 33% fee falls within the range of the private marketplace, where contingency-fee arrangements are often between 30 and 40 percent of any recovery"). The relevant market comparison for the fee in this case, therefore, is the percentage of recovery.

In terms of the specific amount requested here, the private market would easily support a fee higher than the 25% that Class Counsel request. The Ninth Circuit has questioned the market-based approach where the sole point of comparison is other judicially approved fees. *See Vizcaino*, 290 F.3d at 1049. Accordingly, a good starting point for the market comparison is "commercial litigation where the fee is determined by application of the negotiated contingency percentage to the amount of the recovery." *Id.* Although no such market truly exists for class actions, *see id.*, there are meaningful comparisons to be had in other areas of law. For example, sophisticated business clients who serve as named plaintiffs in class actions commonly agree to pay fees of 33 percent or greater to their counsel. *See, e.g., San Allen, Inc. v. Buehrer*, Case No. CV07-644950, Motion for Attorneys' Fees at 24 (Ohio Com. Pl. Nov. 7, 2014) (business plaintiffs signed retainers agreeing to pay 33.3%

of recovery); *In re U.S. Foodservice, Inc. Pricing Litigation*, Case No. 3:07-md-1894 (AWT), ECF No. 510-1 at 20-21 (D. Conn. Aug. 29, 2014) (business plaintiffs agreed to fee award as high as 40%). Similar rates prevail in antitrust class actions where businesses participate as plaintiffs. *See*, *e.g.*, *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 2:06-cv-1797-MSG, ECF No. 870 at 1-2; (E.D. Pa. Oct. 15, 2015) (noting that courts "have routinely granted a fee award of 33%" in Hatch-Waxman antitrust cases). Same for pharmaceutical cases, where a 33% fee "heavily dominate[s]" the market and "the average [is] 32.85 percent." Brian T. Fitzpatrick, A Fiduciary Judge's Guide to Awarding Fees in Class Actions, 89 FORDHAM L. REV 1151, 1161 (2021). And in patent cases, where plaintiffs agreed to pay their lawyers using a flat contingent fee, "the mean rate [is] 38.6% of the recovery." David L. Schwartz, The Rise of Contingent Fee Representation in Patent Litigation, 64 ALA. L. REV. 335, 360 (2012).

Comparison to judicially approved fees can also be useful, and that comparison supports Class Counsel's request here as well. Given the Ninth Circuit's benchmark, the mean percentage award of attorneys' fees in class actions in the Ninth Circuit is 24.5% of the fund and the mean percentage awarded in the Western District of Washington is 26.98%. *See Huuuge*, Case No. 18-cv-05276, ECF No. 125 (W.D. Wash. Dec. 14, 2020) (Expert Declaration of Professor William B. Rubenstein, ¶ 14). In other words, Class Counsel's request for 25% of the Settlement Fund falls below the relevant market rate, meaning a market analysis supports the requested award.

### D.     Plaintiff's Claims Carried Substantial Risk

In determining the appropriateness of a fee award, the next step is to consider the flip side of the results—risk. That is, the amount of the fee depends in part on whether, and to what degree, "class counsel ran the risk of not being paid at all." *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 782 & n.2 (9th Cir. 2007). Here, Class Counsel worked entirely on contingency, advancing both their time and required costs and expenses. Fraietta Decl. ¶ 14. If Defendants had won this case, through any number of avenues, Class Counsel would not have been compensated at all.

Here, although Class Counsel believes Plaintiff's claims were on strong footing given other recent decisions in this District concerning similar facts and allegations, along with the Ninth Circuit's

ruling in *Kater v. Churchill Downs Inc.*, 886 F.3d 784 (9th Cir. 2018), Class Counsel faced significant risk from a damages perspective.  As the Court may recall, soon after the Complaint was filed, Defendants displayed a pop-up window within their Applications with a button that, if clicked, purported to bind players to terms of use requiring persons to arbitrate any claims against Defendants. Thus, a majority of the Class was arguably bound by arbitration and faced the very real possibility of not being able to recover anything through this class action.  Fraietta Decl. ¶ 15.  This would also present difficulties upon class certification, as Defendants would likely assert that a class action is unmanageable given the existence of arbitration for a majority of the Class.  Moreover, around the same time, Defendants also implemented "continuous play" within their Applications, thereby further reducing the amount of damages at issue.  Against this backdrop, Class Counsel's result is an outstanding result for the Class.

The Court should also not ignore that Defendant is represented by highly skilled counsel. These lawyers vigorously represented their clients, challenged Plaintiffs' claims, and sought to obtain a defense verdict and deprive the Class of any recovery. "The quality of opposing counsel is important in evaluating the quality of Class Counsel's work."  *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013); *see also Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997) (affirming fee award and noting that the court's evaluation of class counsel's work considered "the quality of opposition counsel and [defendant's] record of success in this type of litigation").

Finally, even if Plaintiff and Class Counsel had been able to prevail at trial, they still faced the daunting prospect of affirming any verdict on post-trial motions in this Court and later on appeal. Fraietta Decl. ¶ 16.  That process would potentially have taken years and involved tremendous risk that a hard-fought victory could be lost.  *Id.*  There can be no doubt that Class Counsel faced daunting risks in this case that more than justify the fee award sought by Class Counsel.

### E.     Class Counsel Provided Quality Work in a Complex Case

The prosecution of a complex class action like this one "requires unique … skills and abilities."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (citation and

quotation marks omitted).  Here, this case also required a significant amount of skilled legal work, including: (1) extensive pre-litigation investigation into Defendant's mobile applications, corporate organization, and business model; (2) briefing a motion for temporary restraining order due to Defendants' pop-up within the Applications; (3) preparing for and participating in the mediation with Judge Phillips; (4) negotiating this settlement, the ancillary documents thereto, and managing the dissemination of notice and the claims process; (5) working with third parties to obtain the requisite class data in order to properly effectuate the settlement; (6) negotiating supplemental protective orders with third parties prior to the production of the requisite class data; and (7) navigating the sudden death of William Heathcote and drafting a motion to substitute his mother as the named Plaintiff in this action.  Fraietta Decl. ¶ 4*; see also In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *13 (approving attorneys' fees where class counsel "performed significant factual investigation prior to bringing th[is] action[] … participated in protracted negotiations[,]" and filed several pleadings").  The work performed by Class Counsel in this case represents the highest caliber of legal work and strongly supports their requested fee award.  Fraietta Decl. ¶ 5.

> **F.** **Class Counsel Handled This Case on a Contingent Basis and Bore the Financial Burden**

To date, Class Counsel has worked for over two years with no payment, and no guarantee of payment absent a successful outcome.  That itself presented considerable risk.  *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. at 492 (E.D. Cal. Mar. 9, 2010).  Courts have long recognized that attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorneys' normal hourly rates.  *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).  The contingent nature of Class Counsel's fee recovery, coupled with the uncertainty that any recovery would be obtained, are significant.  *Id*. at 1300.  In *Wash. Pub. Power*, the Ninth Circuit recognized that:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases ... [I]f this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Id.* at 1299-1300 (citations omitted) (internal quotations marks omitted); *see also McKeen-Chaplin v. Provident Savings Bank, FSB*, 2018 WL 3474472, at *2 (E.D. Cal. July 19, 2018) ("Counsel has not received payment for the vast majority of its time spent on this case … and took on significant financial risk by taking on this action on a contingency fee basis."); *Graham v. DaimlerChrysler Corp.,* 34 Cal. 4th 553, 580 (2004) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed.  The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.") (internal citations omitted); *In re Sumitomo Copper Litig.*, 74 F.Supp.2d 393, 396-98 (S.D.N.Y.1999) ("No one expects a lawyer whose compensation is contingent on the success of his services to charge, when successful, as little as he would charge a client who in advance of the litigation has agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee dependent solely on the reasonable amount of time expended.").

Further, if the case had advanced through class certification, Class Counsel's expenses would have increased many-fold, and Class Counsel would have been required to advance these expenses potentially for several years to litigate this action through judgment and appeals.

Weighing each of the aforementioned factors, Class Counsel's fee request of $875,000—or 25% of the $3.5 million common fund—is reasonable.

## II.        THE COURT NEED NOT CONDUCT A LODESTAR CROSS-CHECK

Class Counsel respectfully submit that consideration of lodestar in this case would not accurately account for the efforts Class Counsel contributed toward the Settlement it obtained for the Class, would not guard against a windfall, and would create perverse incentives for future class actions with regard to efficiency.  For that reason, the Court should not—and certainly need not— conduct a lodestar cross-check.  Indeed, it is "settled" law that the Ninth Circuit *does not* require a lodestar cross-check.  *Farrell v. Bank of America Corp.*, 827 F. App'x 628, 630 (9th Cir. 2020); *accord Campbell v. Facebook*, 951 F.3d 1106, 1126 (9th Cir. 2020); *In re Hyundai & Fuel Econ. Litig.*, 926 F.3d 539, 571 (9th Cir. 2019) (*en banc*); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011); *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738-39 (9th Cir.

2016); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

A district court may appropriately determine that the circumstances of a given case warrant a certain percentage of a fund—particularly if that percentage is around the 25% benchmark without considering class counsel's lodestar. *See Farrell*, 827 F. App'x at 630. Courts in this district, including this Court, routinely do just that. *See, e.g.*, *In re HQ Sustainable Mar. Indus., Inc. Derivative Litig.*, 2013 WL 5421626 (W.D. Wash. Sept. 26, 2013); *Ikuseghan v. Multicare Health Sys.*, 2016 WL 4363198, at *2 (W.D. Wash. Aug. 16, 2016) (collecting cases, awarding 33% of the fund and declining to conduct a lodestar cross-check). Notably, there have been four similar settlements involving allegedly illegal "casino-style" gambling applications within this District, and all of the courts in those cases did not conduct lodestar cross-checks in approving attorneys' fees of the benchmark 25% of the common fund. *See, e.g.*, *Kater v. Churchill Downs*, Case No. 15-cv-00612 (W.D. Wash.); *Wilson v. Huuuge, Inc.*, Case No. 18-cv-05276 (W.D. Wash); *Wilson v. Playtika, Ltd.*, Case No. 18-cv-05277 (W.D. Wash.); *Reed v. Scientific Games Corp.*, Case No. 18-cv-00565-RSL (W.D. Wash.).

In support of the *Kater*, *Huuuge*, and *Playtika* settlements, plaintiffs' counsel submitted an Expert Declaration of Professor Charles Silver (*E.g., Huuuge*, Case No. 3:18-cv-05276, ECF. No. 126) wherein he explains why lodestar cross-checks are undesirable for a variety of reasons: they have been uniformly rejected by the private market; they "penalize efficiency and reward delay"; and at bottom they weaken the alignment of incentives between client and counsel (with the effect of discouraging lawyers from taking risks that class members would rationally want them to accept). *See* Silver Decl. ¶¶ 73-76. Myriad class action scholars echo Professor Silver's criticism of lodestar cross-checks. Professors Myriam Gilles and Gary B. Friedman, for example, argue that using the lodestar cross-check effectively blunts the incentives for class counsel to achieve the largest possible award for the class, in turn reducing the deterrence effect of class action. *See* Myriam Gilles & Gary B. Friedman, *Exploding the Class Action Agency Costs Myth: The Social Utility of Entrepreneurial Lawyers*, 155 U. Pa. L. Rev. 103, 150-55 (2006). Similarly, Professor Brian T. Fitzpatrick argues

that a lodestar cross-check is simply a way to "sneak the lodestar method in the backdoor," which "sends a bad message to future class action lawyers: don't resolve cases too quickly; drag them out to beef up your lodestar so your fee percentage isn't cut." Brian T. Fitzpatrick, *The Conservative Case for Class Actions*, University of Chicago Press, Oct 30, 2019.

Finally, as is evident from Class Counsel's lodestar, submitted as Ex. B to the Fraietta Decl., Class Counsel has worked diligently on this case, has not overstaffed it, and has not performed unnecessary tasks in an effort to pad its lodestar. As such, relying on a lodestar cross-check here would effectively penalize Class Counsel's choices and incentivize attorneys in similar situations in the future to delay and overstaff cases for the purpose of manufacturing thousands of unnecessary, additional hours for the sole purpose of inflating lodestars. The Court should not create those incentives with its fee decision in this case.

## III.   CLASS COUNSEL'S ATTORNEYS' FEES ARE REASONABLE UNDER A LODESTAR CROSS-CHECK

If the Court opts to conduct a lodestar cross-check, it supports the requested fee. Courts in the Ninth Circuit may examine the lodestar calculation as a cross-check on the percentage fee award. *Vizcaino*, 290 F.3d at 1050. The cross-check analysis is a two-step process. First, the lodestar is determined by multiplying the number of hours reasonably expended by the reasonable rates requested by the attorneys. *See Barbosa*, 297 F.R.D. at 451. Second, the court cross-checks the proposed percentage fee against the lodestar. *Id.* "Three figures are salient in a lodestar calculation: (1) counsel's reasonable hours, (2) counsel's reasonable hourly rate and (3) a multiplier thought to compensate for various factors (including unusual skill or experience of counsel, or the *ex ante* risk of nonrecovery in the litigation)." *Id.* (citing *In re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 919 (N.D. Cal. 2005). Here, the lodestar cross-check confirms the reasonableness of Class Counsel's requested fee.

### A.   Class Counsel Spent A Reasonable Number Of Hours On This Litigation At A Reasonable Hourly Rate

Class Counsel worked efficiently. Class Counsel have submitted their detailed daily billing records showing what work was done and by whom. *See* Fraietta Decl., Ex. B. Those records

confirm Class Counsel efficient billing.

The blended hourly rate for Class Counsel's work of $373 is quite reasonable. *See id.* ¶ 18. And the hourly rates for each of the lawyers who staffed the case, which are set forth in the Exhibit B to Fraietta Decl., are also reasonable and amply supported by the evidentiary material submitted with the Fraietta Declaration. *Id.* at Exs. D-M. Rates are "reasonable where they [are] similar to those charged in the community and approved by other courts." *Hartless v. Clorox Co.*, 273 F.R.D. 630, 644 (S.D. Cal. Jan. 20, 2011). Indeed, courts within this Circuit have previously found the rates of Class Counsel fair and reasonable. *See Perez v. Rash Curtis & Associates*, 2020 WL 1904533, at *20 (N.D. Cal. Apr. 17, 2020) (finding Bursor & Fisher's blended hourly rate of $634.48 to be reasonable); *Zakskorn v. American Honda Motor Co.*, 2015 WL 3622990, at *13-15 (E.D. Cal. June 9, 2015) (approving a fee request where Bursor & Fisher submitted hourly rates of up to $850 per hour for partners and $450 per hour for associates). Here too, the Court should find Class Counsel's hours and rates reasonable.

### B.   All Relevant Factors Support Applying a Multiplier to Class Counsel's Lodestar

The lodestar analysis is not limited to the initial mathematical calculation of Class Counsel's base fee. *See Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996). Rather, Class Counsel's actual lodestar may be enhanced according to those factors that have not been "subsumed within the initial calculation of hours reasonably expended at a reasonable rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 n. 9 (1983) (citation omitted); *see also Morales*, 96 F.3d at 364. In considering the reasonableness of attorneys' fees and any requested multiplier, the Ninth Circuit has directed district courts to consider the time and labor required, the novelty and complexity of the litigation, the skill and experience of counsel, the results obtained, and awards in similar cases. *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d at 1007, n. 7 (9th Cir. 2002); *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d at 70 (9th Cir. 1975). Class Counsel discussed most of these factors above and all weigh heavily in favor of the requested fee award in this action. *See supra* § I.

A fee award of $875,000 would represent a multiplier of 3.3 over the base lodestar. Fraietta Decl. ¶ 29. In a historical review of numerous class action settlements, the Ninth Circuit found that

lodestar multipliers normally range from 0.6 to 19.6, with most (83%) falling between 1 and 4.  *See Vizcaino*, 290 F.3d at 1051 n. 6 (finding no abuse of discretion in awarding a multiplier of 3.65); *see also Steiner v. Am. Broad. Co.,* 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming award with multiplier of 6.85); *Aguilar*, 2017 WL 2214936, at *6 (noting that "courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher"); ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 14:03 (3d ed. 1992) (recognizing that multipliers of 1 to 4 are frequently awarded).  Thus, the Court should find that the lodestar cross-check strongly supports the requested fee award.

## IV.     CLASS COUNSEL'S REASONABLY INCURRED EXPENSES SHOULD BE REIMBURSED

The Ninth Circuit allows recovery of litigation expenses in the context of a class action settlement.  *See Staton v. Boeing Co.*, 327 F.3d at 974 (9th Cir. 2003).  Class Counsel is entitled to reimbursement for standard out-of-pocket expenses that an attorney would ordinarily bill a fee-paying client.  *See*, *e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *Acosta v. Frito-Lay, Inc.*, 2018 WL 646691, at *11 (N.D. Cal. Jan. 31, 2018) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund.") (citation omitted).  Expense awards comport with the notion that the district court may "spread the costs of the litigation among the recipients of the common benefit."  *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1121 (9th Cir. 2002).

To date, Class Counsel incurred out-of-pocket costs and expenses in the aggregate amount of $22,295.01 in prosecuting this litigation on behalf of the Class.  Fraietta Decl. ¶ 19.  These expenses are attached as Exhibit C to the Fraietta Decl., submitted herewith.  These expenses include mediation fees, Hague service charges, and other related litigation expenses.  *Id.*  These expenses were necessarily and reasonably incurred to bring this case to a successful conclusion, and they reflect market rates for various categories of expenses incurred.  *Id.*

## V.     THE REQUESTED INCENTIVE AWARD FOR PLAINTIFF IS REASONABLE

In recognition of her and her late son's efforts on behalf of the Class, and subject to the

approval of the Court, Plaintiff seeks a $5,000 incentive award as appropriate compensation for her time and effort serving as the Class Representative in this litigation.

Service awards "are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); *Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602, at *13 (N.D. Cal. Apr. 26, 2013) (granting request for $5,000 incentive award); *McClintic v. Lithia Motors, Inc.*, 2011 WL 13127844, at *6 (W.D. Wash. Oct. 19, 2011) ($10,000 incentive award reasonable in $1.74 million settlement).  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59.  Service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, *inter alia*, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained as a result of the litigation.  *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

The requested amount of $5,000 for Plaintiff reflects her and her son's significant involvement and dedication to the case.  Indeed, William Heathcote—and now Alma Sue Croft—consulted with Class Counsel throughout the investigation, filing, prosecution and settlement of this litigation.  Fraietta Decl. ¶ 31; *see also generally* Croft Decl.  As such, William Heathcote and Alma Sue Croft were actively involved in the litigation and devoted substantial time and effort to the case. *Id.*  Both Mr. Heathcote and Ms. Croft were prepared to "go the distance" in this litigation to continue to represent the Class and fight to obtain significant relief on their behalf.  *Id.*; *see also generally* Croft Decl.  Their actions and dedication played a significant role in this case and helped achieve the exceptional settlement that will benefit thousands upon thousands of class members.   Fraietta Decl. ¶ 32.  Accordingly, a $5,000 incentive award for Plaintiff Alma Sue Croft is fair and reasonable.

## CONCLUSION

Plaintiff respectfully requests that the Court approve Class Counsel's fee request of 25% of the Settlement Fund, or $875,000; award Class Counsel costs and expenses in the amount of $22,295.01; and award Alma Sue Croft an incentive award of $5,000.

1

Dated:  October 24, 2022

**BURSOR & FISHER, P.A.**

2

3

By:          */s/   Philip L. Fraietta*
                Philip L. Fraietta

4

Philip L. Fraietta (*pro hac vice*)

5

Alec M. Leslie (*pro hac vice*)
888 Seventh Avenue

6

New York, NY 10019
Telephone: (646) 837-7150

7

Facsimile: (212) 989-9163
E-Mail:  pfraietta@bursor.com

8

aleslie@bursor.com

9

**CARSON NOEL PLLC**

10

Wright A. Noel (State Bar No. 25264)
20 Sixth Avenue NE

11

Issaquah, WA 98027
Telephone: (425) 837-4717

12

Facsimile: (425) 837-5396
Email: wright@carsonnoel.com

13

*Attorneys for Plaintiff*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28