**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| ALMA SUE CROFT, individually and on behalf of all others similarly situated, | Case No. 2:20-cv-01310-RSM |
| Plaintiff, | **DECLARATION OF PHILIP L. FRAIETTA IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND ISSUANCE OF INCENTIVE AWARD** |
| v. | |
| SPINX GAMES LIMITED, GRANDE GAMES LIMITED, and BEIJING BOLE TECHNOLOGY CO., LTD., | |
| Defendants. | |

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE, NEW YORK, NY 10019
TEL. 646.837.7150 · FAX. 212.989.9163

## DECLARATION OF PHILIP L. FRAIETTA

I, Philip L. Fraietta, pursuant to 28 U.S.C. § 1746, declare as follows:

1.    I am an attorney at law licensed to practice in the State of New York, and I have been admitted to practice *pro hac vice* in this action.  I am a Partner with Bursor & Fisher, P.A., Class Counsel in this action.  I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, could and would competently testify thereto under oath.

2.    I make this declaration in support of Plaintiff's Motion for Attorneys' Fees and Costs and Issuance of an Incentive Award.

3.    Attached hereto as **Exhibit A** is a true and correct copy of the Parties' Class Action Settlement Agreement, and the exhibits attached thereto.

4.    This case required a significant amount of skilled legal work, including: (1) extensive pre-litigation investigation into Defendant's mobile applications, corporate organization, and business model; (2) briefing a motion for temporary restraining order due to Defendants' pop-up within the Applications; (3) preparing for and participating in an all-day mediation with Hon. Layn Phillips (Ret.); (4) negotiating this settlement, the ancillary documents thereto, and managing the dissemination of notice and the claims process; (5) working with third parties to obtain the requisite class data in order to properly effectuate the settlement; (6) negotiating supplemental protective orders with third parties prior to the production of the requisite class data; and (7) navigating the sudden death of William Heathcote and drafting a motion to substitute his mother as the named Plaintiff in this action.

5.    I believe the work performed by Class Counsel in this case represents the highest caliber of legal work and strongly supports their requested fee award.

6.    As part of their obligations under Fed. R. Civ. P. 26, the parties discussed the prospect of resolution at an early practicable juncture.

7.    Those discussions eventually led to an agreement between the Parties to engage in mediation, which the Parties agreed would take place before the Honorable Layn Phillips (Ret.), who is a neutral affiliated with Phillips ADR Enterprises ("Phillips ADR").  In the weeks leading

DECLARATION OF PHILIP L. FRAIETTA
CASE NO. 2:20-CV-01310-RSM - 1

up to the mediation, the Parties were in regular communication with each other and with the Phillips ADR team, as the Parties sought to crystallize the disputed issues, produce focal information and data, and narrow down potential frameworks for resolution.

8.      During this period, Defendants provided Class Counsel with several sets of detailed transactional data for virtual chip purchases made by the Settlement Class; the Parties exchanged briefing on the core facts, legal issues, litigation risks, and potential settlement structures; and the Parties supplemented that briefing with extensive telephonic correspondence, mediated and shuttled by the Phillips ADR team, clarifying each other's positions in advance of the mediation.

9.      On October 20, 2021, the Parties participated in a mediation before Judge Phillips. At the conclusion of the mediation session, Judge Phillips made a mediator's proposal to settle the case in principle, which both Parties accepted.

10.     Thereafter, the Parties spent the next several months negotiating and executing a term sheet memorializing the Settlement Agreement.

11.     Unfortunately, on January 5, 2022, as the parties were on the cusp of finalizing the long form settlement agreement, Plaintiff William Heathcote passed away unexpectedly at the age of 39.

12.     Alma Sue Croft, Plaintiff's mother and sole heir, retained Class Counsel in order to see her son's efforts through to the finish line. The Settlement was fully executed on February 14, 2022.

13.     Over the following months, Class Counsel worked diligently with third parties such as Apple, Google, and Amazon in order to ascertain the Class Member data to effectuate notice. This process entailed, among other tasks, drafting and negotiating supplemental protective orders. *E.g.*, ECF Nos. 59, 65, 68.

14.      My firm worked on this case entirely on contingency, advancing both my firm's time and required litigation costs and expenses.

15.     Soon after the Complaint was filed in this action, Defendants displayed a pop-up window within their Applications with a button that, if clicked, purported to bind players to terms

DECLARATION OF PHILIP L. FRAIETTA
CASE NO. 2:20-CV-01310-RSM - 2

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE, NEW YORK, NY 10019
TEL. 646.837.7150 · FAX. 212.989.9163

of use requiring persons to arbitrate any claims against Defendants. Thus, a majority of the Class was arguably bound by arbitration and faced the very real possibility of not being able to recover anything through this class action.

16.     Even if Plaintiff and Class Counsel had been able to prevail at trial, they still faced the daunting prospect of affirming any verdict on post-trial motions in this Court and later on appeal. That process would potentially have taken years and involved tremendous risk that a hard-fought victory could be lost.

17.     Attached hereto as **Exhibit B** is a true and correct copy of my firm's lodestar in this action. The hourly rates for each of the individuals who staffed the case are reasonable and amply supported by evidentiary material submitted herewith. I have personally reviewed all of my firm's time entries associated with this case, and have used billing judgment to ensure that duplicative and unnecessary time has been excluded and that only time reasonably devoted to the litigation has been included. My firm's time entries were regularly and contemporaneously recorded by me and the other timekeepers pursuant to firm policy and have been maintained in the computerized records of my firm.

18.     Through October 17, 2022, my firm expended 417.6 hours in this case. My firm's lodestar in this case, based on current billing rates, is $262,235. The blended hourly rate for my firm's work in this matter is $373.

19.     To date, my firm has also expended $22,295.01 in out-of-pocket costs and expenses in connection with the prosecution of this case. Attached as **Exhibit C** is an itemized list of those costs and expenses. These costs and expenses are reflected in the records of my firm, and were necessary to prosecute this litigation. These expenses include mediation fees, Hague service charges, and other related litigation expenses. These expenses were necessarily and reasonably incurred to bring this case to a successful conclusion, and they reflect market rates for various categories of expenses incurred. Cost and expense items are billed separately, and such charges are not duplicated in my firm's billing rates.

20.     Included within **Exhibit B** is a chart setting forth the hourly rates charged for

DECLARATION OF PHILIP L. FRAIETTA
CASE NO. 2:20-CV-01310-RSM - 3

**BURSOR & FISHER, P.A.**
888 SEVENTH AVENUE, NEW YORK, NY 10019
TEL. 646.837.7150 · FAX. 212.989.9163

lawyers and staff at my firm at the time the work was completed.  Based on my knowledge and experience, the hourly rates charged by my firm are within the range of market rates charged by attorneys of equivalent experience, skill, and expertise.  As a matter of firm policy, we do not discount our regular hourly rates for non-contingent hourly work.  I have personal knowledge of the range of hourly rates typically charged by counsel in our field in New York, California, Florida, and elsewhere, both on a current basis and in the past.  In determining my firm's hourly rates from year to year, my partners and I have consciously taken market rates into account and have aligned our rates with the market.

21.     Through my practice, I have become familiar with the non-contingent market rates charged by attorneys in New York, California, Florida, and elsewhere (my firm's offices are in New York City, Walnut Creek, California, and Miami, Florida).  This familiarity has been obtained in several ways:  (1) by litigating attorneys' fee applications; (2) by discussing fees with other attorneys; (3) by obtaining declarations regarding prevailing market rates filed by other attorneys seeking fees; and (4) by reviewing attorneys' fee applications and awards in other cases, as well as surveys and articles on attorney's fees in the legal newspapers and treatises.  The information I have gathered shows that my firm's rates are in line with the non-contingent market rates charged by attorneys of reasonably comparable experience, skill, and reputation for reasonably comparable class action work.  In fact, comparable hourly rates have been found reasonable by various courts for reasonably comparable services, including:

i.    *Laydon v. Mizuho Bank, Ltd.*, No. 1:12-cv-03419-GBD, ECF No. 837 (S.D.N.Y. Dec. 7, 2017), approving partner rates of $875 to $975 and associate rates of $325 to $600.

ii.   *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *17 (S.D.N.Y. April 26, 2016), approving partner rates of $834 to $1,125 and associate rates of $411 to $714.

iii.  *In re Platinum & Palladium Commod. Litig.*, Slip Op. No. 10-cv-3617, 2015 U.S. Dist. LEXIS 98691, at *13 (S.D.N.Y. July 7, 2015), approving billing rates of $950 and $905 per hour and referring to a recent National Law Journal survey yielding an average hourly partner billing rate of $982 in New York.

iv.   *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, Case No. 1:08-md-01963-RWS, 909 F. Supp. 2d 259, 271-72 (S.D.N.Y. 2012), approving fee award

based on hourly rates ranging from $275 to $650 for associates and $725 to $975 for partners, as set forth in ECF No. 302-5.

v.   *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liab. Litig.*, Case No. 15-md-02672-CRB, ECF No. 3053 (N.D. Cal. Mar. 17, 2017), approving partner rates up to $1,600, and associate rates up to $790.

vi.   *In re TFT-LCD (Flat Panel) Antitrust Litigation*, Case No. 07-md-1827-SI, ECF No. 1827 (N.D. Cal. 2013), an antitrust class action in which the court found blended hourly rates of $1000, $950, $861, $825, $820, and $750 per hour reasonable for the lead class counsel.

vii.   *Williams v. H&R Block Enterprises, Inc.*, Alameda County Superior Ct. No. RG08366506, Order of Final Approval and Judgment filed November 8, 2012, a wage and hour class action, in which the court found the hourly rates of $785, $775, and $750 reasonable for the more senior class counsel.

viii.   *Luquetta v. The Regents of the Univ. of California*, San Francisco Superior Ct. Case No. CGC-05-443007, Order Granting Plaintiff's Motion for Common Fund Attorneys' Fees and Expenses, filed October 31, 2012, a class action to recover tuition overcharges, in which the court found the hourly rates of $850, $785, $750, and $700 reasonable for plaintiffs' more experienced counsel.

ix.   *Pierce v. County of Orange*, 905 F. Supp. 2d 1017 (C.D. Cal. 2012), a civil rights class action brought by pre-trial detainees, in which the court approved a lodestar-based, *inter alia*, on 2011 rates of $850 and $825 per hour.

x.   *Holloway et. al. v. Best Buy Co., Inc.*, Case No. 05-cv-5056-PJH (N.D. Cal. 2011) (Order dated November 9, 2011), a class action alleging that Best Buy discriminated against female, African American and Latino employees by denying them promotions and lucrative sales positions, in which the court approved lodestar-based rates of up to $825 per hour.

xi.   *Californians for Disability Rights, Inc., et al. v. California Department of Transportation, et al.*, 2010 U.S. Dist. LEXIS 141030 (N.D. Cal. 2010), adopted by Order Accepting Report and Recommendation filed February 2, 2011, a class action in which the court found reasonable 2010 hourly rates of up to $835 per hour.

xii.   *Qualcomm, Inc. v. Broadcom, Inc.*, Case No. 05-cv-1958-B, 2008 WL 2705161 (S.D. Cal. 2008), in which the court found the 2007 hourly rates requested by Wilmer Cutler, Pickering, Hale & Dorr LLP reasonable; those rates ranged from $45 to $300 for staff and paralegals, from $275 to $505 for associates and counsel, and from $435 to $850 for partners.

22.   The reasonableness of my firm's hourly rates is also supported by several surveys of legal rates, including the following:

i.   In an article entitled "Big Law Rates Topping $2,000 Leave Value 'In Eye of Beholder,'" written by Roy Strom and published by Bloomberg Law on June 9,

2022, the author describes how Big Law firms have crossed the $2,000-per hour rate. The article also notes that law firm rates have been increasing by just under 3% per year. A true and correct copy of this article is attached hereto as **Exhibit D**.

ii.      The CounselLink Enterprise Management Trends Report for June 2022 states that the median partner rate in New York was $1,030. The report also notes that median partner rates have grown by 4.0% in San Francisco and 4.3% in New York. A true and correct copy of this article is attached hereto as **Exhibit E**.

iii.      In an article entitled "On Sale: The $1,150-Per Hour Lawyer," written by Jennifer Smith and published in the Wall Street Journal on April 9, 2013, the author describes the rapidly growing number of lawyers billing at $1,150 or more revealed in public filings and major surveys. The article also notes that in the first quarter of 2013, the 50 top-grossing law firms billed their partners at an average rate between $879 and $882 per hour. A true and correct copy of this article is attached hereto as **Exhibit F**.

iv.      In an article published April 16, 2012, the Am Law Daily described the 2012 Real Rate Report, an analysis of $7.6 billion in legal bills paid by corporations over a five-year period ending in December 2011. A true and correct copy of that article is attached hereto as **Exhibit G**. That article confirms that the rates charged by experienced and well-qualified attorneys have continued to rise over this five-year period, particularly in large urban areas like the San Francisco Bay Area. It also shows, for example that the top quartile of lawyers bill at an average of "just under $900 per hour."

v.      Similarly, on February 25, 2011, the Wall Street Journal published an on-line article entitled "Top Billers." A true and correct copy of that article is attached hereto as **Exhibit H**. That article listed the 2010 and/or 2009 hourly rates for more than 125 attorneys, in a variety of practice areas and cases, who charged $1,000 per hour or more. Indeed, the article specifically lists *eleven* (11) Gibson Dunn & Crutcher attorneys billing at $1,000 per hour or more.

vi.      On February 22, 2011, the ALM's Daily Report listed the 2006-2009 hourly rates of numerous San Francisco attorneys. A true and correct copy of that article is attached hereto as **Exhibit I**. Even though rates have increased significantly since that time, my firm's rates are well within the range of rates shown in this survey.

vii.      The Westlaw CourtExpress Legal Billing Reports for May, August, and December 2009 (attached hereto as **Exhibit J**) show that as far back as 2009, attorneys with as little as 19 years of experience were charging $800 per hour or more, and that the rates requested here are well within the range of those reported. Again, current rates are significantly higher.

viii.      The National Law Journal's December 2010, nationwide sampling of law firm billing rates (attached hereto as **Exhibit K**) lists 32 firms whose highest rate was $800 per hour or more, eleven firms whose highest rate was $900 per hour or more, and three firms whose highest rate was $1,000 per hour or more.

DECLARATION OF PHILIP L. FRAIETTA
CASE NO. 2:20-CV-01310-RSM - 6

ix.     On December 16, 2009, The American Lawyer published an online article entitled "Bankruptcy Rates Top $1,000 in 2008-2009." That article is attached hereto as **Exhibit L**. In addition to reporting that several attorneys had charged rates of $1,000 or more in bankruptcy filings in Delaware and the Southern District of New York, the article also listed 18 firms that charged median partner rates of from $625 to $980 per hour.

x.      According to the National Law Journal's 2014 Law Firm Billing Survey, law firms with their largest office in New York have average partner and associate billing rates of $882 and $520, respectively. Karen Sloan, *$1,000 Per Hour Isn't Rare Anymore; Nominal Billing Levels Rise, But Discounts Ease Blow*, National Law Journal, Jan. 13, 2014. The survey also shows that it is common for legal fees for partners in New York firms to exceed $1,000 an hour. *Id.* A true and correct copy of this survey is attached hereto as **Exhibit M**.

23.     Given my firm's unique experience and track record of success, my hourly rate is set at $700. My firm's rates have been deemed reasonable by Courts across the country, including in New York, California, Michigan, Illinois, Missouri, and New Jersey, for example:

xi.     *Russett v. Northwestern Mutual Life Insurance Co.*, Case No. 19-cv-07414, S.D.N.Y. (Oct. 6, 2020 Final Judgment And Order Of Dismissal With Prejudice).

xii.    *Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279, S.D.N.Y. (Apr. 24, 2019 Final Judgment *And* Order Of Dismissal With Prejudice).

xiii.   *Taylor v. Trusted Media Brands, Inc.*, Case No. 16-cv-01812, S.D.N.Y. (Feb. 1, 2018 Final Judgment And Order Of Dismissal With Prejudice).

xiv.    *Rodriguez v. CitiMortgage, Inc.*, Case No. 11-cv-4718, S.D.N.Y. (Oct. 6, 2015), the court concluded during the *fairness* hearing that Bursor & Fisher's rates for two of its partners, Joseph Marchese and Scott Bursor, were "reasonable."

xv.     *Perez v. Rash Curtis & Associates*, 2020 WL 1904533, at *20 (N.D. Cal. Apr. 17, 2020) (concluding that "blended rate of $634.48 is within the reasonable range of rates").

xvi.    *In re Haier Freezer Consumer Litig.*, Case No. C11-02911 EJD, N.D. Cal. (Oct. 25, 2013 Final Judgment And *Order* Granting Plaintiffs' Motion For Final Approval Of Class Action Settlement And For Award Of Attorneys' Fees, Costs And Incentive Awards).

xvii.   *Kokoszki v. Playboy Enterprises, Inc.*, Case No. 19-cv-10302, E.D. Mich. (Aug. 19, 2020 Final Judgment And Order Of Dismissal With Prejudice.

xviii.  *Moeller v. American Media, Inc.*, Case No. 16-cv-11367, E.D. Mich. (Sept. 28, 2017 Order And Judgment Of Dismissal With Prejudice).

xix.    *In re Michaels Stores Pin Pad Litigation*, Case No. 11-cv-03350, N.D. Ill. (Apr. 17,

2013 Order Approving *Settlement*).

xx.    *In re Blue Buffalo Company, Ltd. Marketing and Sales Practices Litigation*, Case No. 14-md-02562, E.D. Mo. (*June* 16, 2016 Order Awarding Fees And Costs).

xxi.    *Rossi v. The Procter & Gamble Co.*, Case No. 11-7238, D.N.J. (Oct. 3, 2013 Final Approval Order And Judgment).

24.    No court has ever cut my firm's fee application by a single dollar on the ground that our hourly rates were not reasonable.

25.    Attached hereto as **Exhibit N** is a current firm resume for Bursor & Fisher, P.A.

26.    As aforementioned, my firm, Bursor & Fisher, P.A., has significant experience in litigating class actions of similar size, scope, and complexity to the instant action.  *See, e.g.*, Ex. N.

27.    My firm has also been recognized by courts across the country for its expertise. (*See* Ex. N); see also *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. 2014) (Rakoff, J.) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008."); *Williams v. Facebook, Inc.*, Case No. 3:18-cv-01881, ECF No. 51 (N.D. Cal June 26, 2018) (appointing Bursor & Fisher class counsel to represent a putative nationwide class of all persons who installed Facebook Messenger applications and granted Facebook permission to access their contact list).

28.    Moreover, my firm has served as trial counsel for class action Plaintiffs in six jury trials and has won all six, with recoveries ranging from $21 million to $299 million

29.    Though not required, to the extent the Court conducts a lodestar cross-check, the requested fee award would represent a 3.3 multiplier.

30.    In addition to the time enumerated above, I estimate that my firm will incur an additional 50-75 hours of future work in connection with the preparation of Plaintiff's Motion for Final Approval, the fairness hearing, coordinating with JND, monitoring settlement administration, and responding to Settlement Class Member inquiries.

31.    Plaintiff Alma Sue Croft, and her late son, William Heathcote, were significantly involved and dedicated to this case.  William Heathcote—and now Plaintiff Alma Sue Croft—

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE, NEW YORK, NY 10019
TEL. 646.837.7150 · FAX. 212.989.9163

consulted with Class Counsel throughout the investigation, filing, prosecution and settlement of this litigation.  As such, Mr. Heathcote and Ms. Croft were actively involved in the litigation and devoted substantial time and effort to the case.  Both Mr. Heathcote and Ms. Croft were prepared to "go the distance" in this litigation to continue to represent the Class and fight to obtain significant relief on their behalf.  Their actions and dedication played a significant role in this case and helped achieve the exceptional settlement that will benefit thousands upon thousands of class members.

32.      I am therefore of the opinion that Mr. Heathcote and Ms. Croft's active involvement in this case was critical to its ultimate resolution.  They took their roles as class representatives seriously, devoting significant amounts of time and effort to protecting the interests of the class. Without their willingness to assume the risks and responsibilities of serving as class representatives, I do not believe such a strong result could have been achieved.

I declare under penalty of perjury under the laws of the United States, the State of New York and the State of Washington that the foregoing is true and correct.  Executed on October 24, 2022 at New York, New York.

                                         */s Philip L. Fraietta*
                                         Philip L. Fraietta