1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALMA SUE CROFT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPINX GAMES LIMITED, GRANDE GAMES LIMITED, and BEIJING BOLE TECHNOLOGY CO., LTD.,<br><br>Defendants. | Case No. 2:20-cv-01310-RSM<br><br>**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT** |

**BURSOR & FISHER, P.A.**
888 SEVENTH AVENUE, NEW YORK, NY 10019
TEL. 646.837.7150 · FAX. 212.989.9163

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 2

THE TERMS OF THE SETTLEMENT AGREEMENT ............................................ 3

      A.    Settlement Class Definition ............................................................ 4

      B.    Monetary Relief .............................................................................. 4

      C.    Prospective Relief ........................................................................... 5

      D.    Release ............................................................................................ 6

      E.    Class Notice .................................................................................... 6

      F.    Incentive Award and Attorneys' Fees and Expenses .................... 6

ARGUMENT ............................................................................................................. 6

I.      THE COURT NEED NOT REVISIT CLASS CERTIFICATION. ........................ 6

II.     NOTICE WAS SUCCESSFUL AND SATISFIED DUE PROCESS. .................. 7

III.    THE COURT SHOULD FINALLY APPROVE THE SETTLEMENT. ................ 9

      A.    The Settlement Meets All Of The *Hanlon* Factors ....................... 9

            1.    The strength of plaintiff's case. ........................................ 10

            2.    The risk, expense, complexity, and likely duration of further litigation. ................................................................. 11

            3.    The risk of maintaining class action status through the trial. ....................... 12

            4.    The amount offered in settlement. ................................... 12

            5.    The extent of discovery completed and the stage of the proceedings. ................................................................. 13

            6.    The extent of discovery completed and the stage of the proceedings. ................................................................. 14

            7.    The Reaction of Settlement Class Members ................... 14

      B.    The Settlement Meets All Of The Rule 23(e)(2) Factors ............. 15

            1.    Class Counsel and the Class Representatives have adequately represented the Class and support the Settlement. ....................... 15

            2.    The Settlement was negotiated at arm's length. ............. 16

            3.    The amount offered in Settlement is adequate, taking into account the strength of Plaintiff's case, and the risks inherent in further litigation. ...................... 17

            4.    The Settlement Treats Settlement Class Members Equitably. ................ 20

            5.    Class Counsel Had Sufficient Information To Reach An Informed Judgement About The Benefits of Settling, And The Quality Of The Settlement. ................ 20

            6.    The Reaction Of The Settlement Class Has Been Favorable. ........ 20

CONCLUSION ..................................................................................................................20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Bennett v. SimplexGrinnell LP*,
   2015 WL 1849543 (N.D. Cal. Apr. 22, 2015)............................................................... 12

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .................................................................................. 9, 14

*Clemans v. New Werner Co.*,
   2013 WL 12108739 (W.D. Wash. Nov. 22, 2013)........................................................ 14

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
   2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ............................................................. 11

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ................................................................................................. 7

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ..................................................................................... 15

*Farrell v. Bank of Am. Corp., N.A.*,
   827 F. App'x 628 (9th Cir. 2020)................................................................................. 19

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
   307 F.3d 997 (9th Cir. 2002) ..................................................................................... 18

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)............................................................. 10

*Gragg v. Orange CAB Co., Inc.*,
   2017 WL 785170 (W.D. Wash. Mar. 1, 2017)............................................................. 16

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................ passim

*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. 2011) ................................................................................ 19

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ....................................................... 15, 20

*Hilsley v. Ocean Spray Cranberries, Inc.*,
   2020 WL 520616 (S.D. Cal. Jan. 31, 2020) ............................................................. 8, 18

*Ikuseghan v. Multicare Health Sys.*,
   2016 WL 3976569 (W.D. Wash. July 25, 2016) .......................................................... 11

**BURSOR & FISHER, P.A.**
888 SEVENTH AVENUE, NEW YORK, NY 10019
TEL. 646.837.7150 · FAX. 212.989.9163

*In re Apple Computer Sec. Litig.*,
  1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ..................................................... 11, 16

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ............................................................................. 9, 17

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) ............................................................... 18, 19

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ............................................................................. 13, 15

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ....................................................... 12

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................... 14

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ................................................................................ 18

*In re Transpacific Passenger Air Transportation Antitrust Litig.*,
  2019 WL 6327363 (N.D. Cal. Nov. 26, 2019) ....................................................... 18

*Johnson v. Triple Leaf Tea Inc.*,
  2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ....................................................... 12

*Juris v. Inamed Corp.*,
  685 F.3d 1294 (11th Cir. 2012) .......................................................................... 7

*Kumar v. Salov N. Am. Corp.*,
  2017 WL 2902898 (N.D. Cal. July 7, 2017) ......................................................... 19

*Morris v. Lifescan, Inc.*,
  54 F. App'x 663 (9th Cir. 2003) .......................................................................... 19

*Mullins v. Direct Digital LLC*,
  795 F.3d 654 (7th Cir. 2015) .............................................................................. 7

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ............................................................................. 10, 13

*Pelletz v. Weyerhouser Corp.*,
  255 F.R.D. 537 (W.D. Wash. 2009) .................................................................... 14

*Perks v. Activehours, Inc.*,
  2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ....................................................... 9

*Rinky Dink, Inc. v. World Bus. Lenders, LLC*,
   2016 WL 4052588 (W.D. Wash. Feb. 3, 2016) ........................................................ 20

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .................................................................... 10, 14, 16

*Schneider v. Wilcox Farms, Inc.*,
   2009 WL 10726662 (W.D. Wash. Jan. 12, 2009) ................................................ 14

*Scott v. United Servs. Auto. Ass'n*,
   2013 WL 12251170 (W.D. Wash. Jan. 7, 2013) .................................................. 17

*State of Fla. v. Dunne*,
   915 F.2d 542 (9th Cir. 1990) ............................................................................. 18

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................................. 19

*Vega v. Weatherford U.S., Limited Partnership*,
   2016 WL 7116731 (E.D. Cal. Dec. 7, 2016) ...................................................... 13

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ........................................................................... 17

*Walters v. Target Corp.*,
   2020 WL 6277436 (S.D. Cal. Oct. 26, 2020) ...................................................... 9

*Williams v. MGM-Pathe Commc'ns Co.*,
   129 F.3d 1026 (9th Cir. 1997) ........................................................................... 19

*Young v. Polo Retail, LLC*,
   2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ...................................................... 19

**STATUTES**

RCW 19.86.010 ............................................................................................................ 2

RCW 4.24.070 .............................................................................................................. 2

**RULES**

Fed. R. Civ. P. 23 ................................................................................................. passim

Fed. R. Civ. P. 25(a)(1) .............................................................................................. 3

Fed. R. Civ. P. 26 ....................................................................................................... 2

**BURSOR & FISHER, P.A.**
888 SEVENTH AVENUE, NEW YORK, NY 10019
TEL. 646.837.7150 · FAX. 212.989.9163

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

On March 24, 2021, this Court preliminarily approved the class action settlement between Plaintiff Alma Sue Croft ("Plaintiff")[1] and Defendants Grande Games Limited, SpinX Games Limited, and Beijing Bole Technology Co., Ltd. (collectively, "Defendants") and directed that notice be sent to the Settlement Class. *See* ECF No. 60 (Preliminary Approval Order), ECF No. 62 (Amended Preliminary Approval Order), ECF No. 66 (Order Extending Deadlines), and ECF No. 70 (Order Extending Deadlines). The settlement administrator has implemented the Court-approved notice plan and direct notice has reached approximately 96.7% of the certified Settlement Class. The reaction from the class has been overwhelmingly positive, which is not surprising given the strength of the Settlement. Specifically, of the 87,324 class members, **zero** have objected and only two have requested to be excluded. The Settlement is an excellent result for the class and the Court should grant final approval.

The Settlement's strength largely speaks for itself: it creates a $3.5 million non-reversionary common fund from which participating Class Members stand to recover substantial portions of their alleged damages, ranging from 10% (at the low end) to more than 50% (at the high end) of total monies spent on Defendants' Applications. In addition, the Settlement further requires Defendants to implement meaningful prospective relief, including by providing addiction-related resources within their social casino games and by creating and honoring a comprehensive self-exclusion policy. Notably, the proposed Settlement here is directly in line with, and proportionate to, other recent settlements within this District that have been finally approved involving nearly identical allegations. *See Kater v. Churchill Downs*, No. 15-cv-00612, ECF No. 222 (W.D. Wash. Feb. 11, 2021); *Wilson v. Huuuge, Inc.*, No. 18-cv-05276, ECF No. 140 (W.D. Wash. Feb. 11, 2021); *Wilson v. Playtika, Ltd.*, No. 18-cv-05277, ECF No. 164 (W.D. Wash. Feb. 11, 2021); *Reed v. Light & Wonder, Inc.*, No. 18-cv-000565-RSL, ECF No. 197 (W.D. Wash. Aug. 12, 2022).

---

[1] Due to the death of named Plaintiff William Heathcote and subsequent Unopposed Motion for Substitution of Named Plaintiff (ECF No. 47), the term "Plaintiff" as used herein shall also be used to refer to William Heathcote, where appropriate.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

For these reasons, and as explained further below, the Settlement is fair, reasonable, and adequate, warranting this Court's final approval.

## BACKGROUND

On September 1, 2020, Plaintiff filed this putative class action in the United States District Court for the Western District of Washington against Defendant Grande Games Limited.  *See* ECF No. 1.  Plaintiff alleged that Grande Games' mobile casino-style Applications fall within the definition of an illegal gambling game and that players can recover their losses under Washington law, setting forth claims for violations of RCW 4.24.070 (the "Recovery of Money Lost at Gambling Act" or "RMLGA"), violations of RCW 19.86.010 *et seq.* (the "Washington Consumer Protection Act" or "CPA") and unjust enrichment, based on Plaintiff's use of and purchases of virtual items in Grande Games' Applications.  *Id.*

On April 9, 2021, Plaintiff filed a First Amended Class Action Complaint adding Defendants SpinX Games Limited and Beijing Bole Technology Co., Ltd. to the case, and making the same allegations against those Defendants as well.  *See* ECF No. 14.

In or around February 2021, Defendants displayed a pop-up window in certain of their Applications.  The pop-up window included a button that, if clicked, purported to bind players to terms of use requiring persons to arbitrate any claims against Defendants (hereinafter, the "Dispute Resolution and Arbitration Provision" or "DRAP").

In response to the pop-up window, on April 20, 2021, Plaintiff moved for a temporary restraining order to, *inter alia*, enjoin Defendants from displaying the pop-up window.  After full briefing from Plaintiff and Defendants, the Court denied Plaintiff's motion on April 28, 2021.  *See* ECF No. 31.  On May 14, 2021, the Parties filed a stipulation – which the Court granted – wherein Defendants agreed to waive service of process in exchange for 90 days to respond to Plaintiff's First Amended Complaint.  *See* ECF No. 39.

From that point, the Parties engaged in direct communications, and, as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of resolution.  Those discussions eventually led to an agreement between the Parties to engage in mediation, which the Parties

1   agreed would take place before the Honorable Layn Phillips (Ret.), who is a neutral affiliated with
2   Phillips ADR Enterprises ("Phillips ADR").
3        In the weeks leading up to the mediation, the Parties were in regular communication with
4   each other and with the Phillips ADR team, as the Parties sought to crystallize the disputed issues,
5   produce focal information and data, and narrow down potential frameworks for resolution.
6   Declaration of Philip L. Fraietta ("Fraietta Decl."), ¶ 5.  During this period, Defendants provided
7   Class Counsel with several sets of detailed transactional data for virtual chip purchases made by
8   the Settlement Class; the Parties exchanged briefing on the core facts, legal issues, litigation risks,
9   and potential settlement structures; and the Parties supplemented that briefing with extensive
10  telephonic correspondence, mediated and shuttled by the Phillips ADR team, clarifying each
11  other's positions in advance of the mediation.  *Id.*
12       On October 20, 2021, the Parties participated in a mediation before Judge Phillips.  At the
13  conclusion of the mediation session, Judge Phillips made a mediator's proposal to settle the case in
14  principle, which both Parties accepted.  *Id.* ¶ 6.  Thereafter, the Parties spent the next four months
15  negotiating and executing a term sheet memorializing their agreement (hereinafter, the
16  "Settlement").  *Id.* ¶ 8.
17       Unfortunately, on January 5, 2022, as the parties were on the cusp of finalizing the long
18  form settlement agreement, Plaintiff William Heathcote passed away unexpectedly at the age of 39.
19  *Id.* ¶ 9.  He is survived only by his mother, Alma Sue Croft, who wishes to be substituted in his
20  place pursuant to Fed. R. Civ. P. 25(a)(1) and see the case through its conclusion.  *Id.*  The
21  Settlement was fully executed on February 14, 2022.  *Id.* ¶ 10.  Plaintiff moved for preliminary
22  approval on February 15, 2022, *see* Dkt. 50, and the Court granted preliminary approval on March
23  24, 2022, *see* Dkt. 62.

24                    **THE TERMS OF THE SETTLEMENT AGREEMENT**

25       For the Court's convenience, the key terms of the Settlement Agreement (the "Settlement") –
26  attached to the Fraietta Declaration as Exhibit 1 – are briefly summarized as follows:

27
28

**BURSOR & FISHER, P.A.**
888 SEVENTH AVENUE, NEW YORK, NY 10019
TEL. 646.837.7150 · FAX. 212.989.9163

**A.      Settlement Class Definition**

The Settlement Class is defined as: "All Persons who played Cash Frenzy, Lotsa Slots, DAFU, Jackpot World, Jackpot Fever, Jackpot Crush, Jackpot Mania, Cash Bash and/or Vegas Friends (collectively, "the Applications"), on or before January 31, 2022, while located in the state of Washington.  Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendants, Defendants' subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons."  Settlement § 1.34.

**B.      Monetary Relief**

Defendants have agreed to establish a $3,500,000 Settlement Fund from which Class members who file a valid claim will be entitled to recover a cash payment, after deducting costs and administrative expenses, any fee award to proposed Class Counsel, and any incentive payment to the Class Representative.  *See* Settlement § 1.36.  No portion of the Settlement Fund will revert to Defendants.  *Id.* § 2.1(k).  Any Settlement Class member checks not cashed within 180 days of issuance, such funds shall remain in the Net Settlement Fund and shall be apportioned pro rata to participating Settlement Class members in a second distribution, if practicable, subject to the provisions set forth in Settlement § 2.1(g).  *Id.* § 2.1(j).  Pursuant to the Settlement's Plan of Allocation, the amount of each Settlement Class member's payment will first depend on whether the Settlement Class member is potentially subject to Defendants' Dispute Resolution and Arbitration Provision ("DRAP").  *Id.* §§ 2.1(c)-(d).  Recovery will differ from the baselines established by DRAP status according to the Settlement Class member's lifetime spending amount (i.e., individuals with higher Lifetime Spending Amounts will recover a greater percentage back) and overall Settlement Class member participation levels.  *Id.*  The parties anticipate that Settlement Class members in the highest category of Lifetime Spending Amounts will recover approximately 50% of their total spend, and that participating Settlement Class members in the lowest category of lifetime spend will recover approximately 10% of their total spend.  *Id.*

**BURSOR & FISHER, P.A.**
888 SEVENTH AVENUE, NEW YORK, NY 10019
TEL. 646.837.7150 · FAX. 212.989.9163

C.      **Prospective Relief**

Defendants will place resources relating to video game behavior disorders within the Applications.  Within the self-service resources available to players, Defendants shall add an additional button or link with labeling referring to video game behavior disorder resources.  This link or button shall be similarly prominent to other links or buttons within the self-service resources.  When clicked, the link or button will take players to a webpage that (1) encourages responsible gameplay; (2) describes what video game behavior disorders are; (3) provides or links to resources relating to video game behavior disorders; and (4) includes a link to Defendants' self-exclusion policy.  Customer service representatives will provide the same information to any player that contacts them and references or exhibits video game behavior disorders, and will face no adverse employment consequences for providing players with this information.  Settlement § 2.2(a).

In addition, Defendants shall publish on their website a voluntary self-exclusion policy. That policy shall provide that, when a player self-excludes by specifying the Player ID(s) that the player wishes to ban, Defendants shall use commercially reasonable efforts to immediately ban the account(s) associated with those Player ID(s).  Defendants shall retain discretion as to the particular method by which players may self-exclude; which may include, for example, permitting players to self-exclude by contacting Customer Support, completing a form on Defendants' website, or any other reasonably accessible means.  Defendants shall use commercially reasonable efforts to prevent any use of the Application specified by the player.  After a self-exclusion request is responded to in full by Defendants, Defendants shall not remove those restrictions for the period identified in the self-exclusion policy at the time the self-exclusion is requested.  *Id.* § 2.2(b).

Finally, Defendants shall implement game mechanics for the Applications to ensure that players who run out of sufficient virtual chips to play the game they are playing will be able to continue to play games within the Applications without needing to purchase additional virtual coins or unreasonably wait (i.e., more than 30 seconds) until they would have otherwise received free additional virtual coins.  *Id.* § 2.2(c).

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE, NEW YORK, NY 10019
TEL. 646.837.7150 · FAX. 212.989.9163

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### D.      Release

In exchange for the relief described herein, Defendants shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all claims against Plaintiff, the Settlement Class, and Class Counsel that arise out of or relate in any way to the commencement, prosecution, settlement, or resolution of the Action, except for claims to enforce the terms of the Settlement. *Id.* § 3.3.

### E.      Class Notice

The Settlement Fund will be used to pay the costs of sending the notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement. *Id.* § 1.36.

### F.      Incentive Award and Attorneys' Fees and Expenses

The Settlement provides that Plaintiff may seek an incentive award and that Class Counsel may seek an award of reasonable attorneys' fees and expenses in amounts to be determined by the Court and paid from the Settlement Fund. *Id.* §§ 9.1-9.3. With no consideration having been given or received, Plaintiff agreed to seek no more than $5,000 as an incentive award, and Class Counsel agreed to limit its petition for attorneys' fees to no more than 25% of the Settlement Fund (i.e., $875,000), plus reimbursement of Court-approved costs and expenses associated with the Action. *Id.* §§ 9.1, 9.3. Plaintiff and Class Counsel moved for these awards separately. *See* ECF No. 71. That motion is unopposed (ECF No. 75), and there were no objections to it. Payment of attorneys' fees, costs, and expenses is due within 30 days after entry of Final Judgment. *Id.* § 9.3.

<u>**ARGUMENT**</u>

## I.      THE COURT NEED NOT REVISIT CLASS CERTIFICATION.

A threshold inquiry at final approval is whether the Class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-22 (9th Cir. 1998). Because no relevant facts have changed since the Court conditionally certified the Settlement Class, ECF No. 62, the Court need not revisit class certification here. *See, e.g., Aikens v. Panatte, LLC*, No. 2:17-cv-01519, Dkt. 54 (W.D. Wash. Feb. 5, 2019).

## II.     NOTICE WAS SUCCESSFUL AND SATISFIED DUE PROCESS.

Prior to granting final approval to this Settlement, the Court must consider whether the Class Members received "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "The rule does not insist on actual notice to all class members in all cases." *Mullins v. Direct Digital LLC*, 795 F.3d 654, 665 (7th Cir. 2015); *see also Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) (noting that "even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice" and collecting cases). Although what constitutes the "best notice practicable" is case-specific, the Federal Judicial Center has noted that a notice campaign that reaches 70% of a class is often reasonable. Federal Judicial Center, *Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide*, at 3 (2010), available at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

The Court has already provisionally approved the Notice Plan proposed by the Class Representatives and Class Counsel. ECF Nos. 60, 62, 66, and 70. The notice program here informed the Class of their rights and included a comprehensive plan for direct notice (for those Class Members for whom Defendant has contact information), a settlement website, and an expansive digital and social media notification campaign, and constitutes the best notice practicable under the circumstances.

The Parties agreed upon a multi-part notice plan to be carried out by JND Legal Administration ("JND"), a well-respected class action settlement administrator. Defendants agreed to provide the Settlement Administrator and Class Counsel all Settlement Class Member contact information reasonably available to Defendants, including names, phone numbers, and email addresses. *See* Settlement § 4.1(a). For each Player ID with a Lifetime Spending Amount greater than zero, Defendants also provided the Player ID's Lifetime Spending Amount, if known, and information sufficient to determine whether the Player ID clicked to "accept" the Defendants' DRAP on or after February 1, 2021, but before January 31, 2022. *Id.* Defendants and Class Counsel each provided the Settlement Administrator the information reflected in any opt-out letters

received by Defendants before the date of the execution of this Settlement Agreement.  *Id.* § 4.1(d).

Class Counsel and Defendants' Counsel cooperated to work with the Platform Providers to obtain

other information necessary to effectuate the notice and administration program.

**Publication, Media, and Internet Notice:** Notice was provided via a media and Internet

notice program, including banner ads on Internet sites targeted to the Settlement Class Members.

This campaign collectively obtained roughly 3 million individual notice impressions.  The digital

and social media notice program is described in detail in the JND Declaration.

**Email and U.S. Mail Notice:** A notice substantially in the form attached as Exhibit B to

the Settlement was e-mailed or mailed to the last known e-mail address or mailing address of any

Class Member whose contact information is available to Defendant.  E-Mail Notice was followed

by U.S. Mail Notice (Exhibit C to the Settlement) to any recipient for whom E-Mail Notice is

unsuccessful.

**Settlement Website:** The parties posted a copy of the Long Form Notice (Ex. D) on a

website maintained by the Administrator, which additionally contained the settlement documents,

including the Fee Petition, an online claim form (Ex. A), a list of important dates, and any other

information to which the parties may agree.  *See Hilsley*, 2020 WL 520616, at *7 ("The claims

process is straightforward and allows Settlement Class members to make a claim by submitting a

valid and timely Claim Form to the Settlement Administrator without complication.").  The

website also contained a Settlement Email Address and Settlement Telephone Number in addition

to Class Counsel's contact information, where Class Members could submit questions and receive

further information and assistance.

**CAFA Notice:** The parties also caused to be disseminated the notice to public officials

required by the Class Action Fairness Act ("CAFA").  *See* Settlement § 4.2(e).

These methods of notice were appropriate because they provided a fair opportunity for

Class Members to obtain full disclosure of the conditions of the Settlement and to make an

informed decision regarding the proposed Settlement.  The notice plan was calculated to reach no

less than 70% of Settlement Class Members, which is the hallmark of a great notice program, and

certainly within the range of approval.  *Perks v. Activehours, Inc.*, 2021 WL 1146038, at *2 (N.D. Cal. Mar. 25, 2021) ("The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class.").  And the notice plan dramatically beat that target as it successfully delivered <u>direct</u> notice to approximately 96.7% of the Settlement Class.  *See* JND Decl. ¶ 15.  Thus, the notices and notice procedures amply satisfy the requirements of due process.

## III.     THE COURT SHOULD FINALLY APPROVE THE SETTLEMENT.

To approve the settlement of a class action as fair, reasonable, and adequate, Rule 23(e) requires the Court to consider "whether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."  These factors largely encompass those identified by the Ninth Circuit for evaluating a class settlement.  *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *see also Hanlon*, 150 F.3d at 1026 (stating factors).

The Committee Notes to the recent revision of Rule 23 make clear that the newly enumerated factors were not intended to replace approval factors already used in courts around the country, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Thus, courts examine the new Rule 23 factors alongside the traditional *Hanlon* factors relevant to the particular case, mindful that there is considerable overlap between the two.  *See, e.g.*, *Walters v. Target Corp.*, No. 16-cv-1678, 2020 WL 6277436, at *5 (S.D. Cal. Oct. 26, 2020).

### A.     The Settlement Meets All Of The *Hanlon* Factors

When making this determination, the Ninth Circuit has instructed district courts to balance

several factors:  (1) the strength of Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class members. *Hanlon*, 150 F.3d at 1026 (the "*Hanlon* Factors").[2]

### 1.      The strength of plaintiff's case.

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted).  The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

Here, as set forth in the Fraietta Declaration, Class Counsel engaged in arms-length negotiations with Defendants' counsel and with the assistance of a neutral mediator, and Class Counsel was thoroughly familiar with the applicable facts, legal theories, and defenses on both sides.  Fraietta Decl. ¶¶ 2, 4, 6.  Although Plaintiff and Class Counsel had confidence in their claims, a favorable outcome was not assured.  *Id*. ¶ 14.  They also recognize that they would face risks at class certification, summary judgment, and trial.  *Id*.  Defendants vigorously deny Plaintiff's allegations and assert that neither Plaintiff nor the Class suffered any harm or damages.  In addition, Defendants would no doubt present a vigorous defense at trial, and there is no assurance that the Class would prevail – or even if they did, that they would not be able to obtain an award of damages significantly more than achieved here absent such risks.  Thus, in the eyes of Class Counsel, the proposed Settlement provides the Class with an outstanding opportunity to obtain significant relief at this stage in the litigation.  *Id*.  The Settlement also abrogates the risks

---

[2] There is no governmental participant here, so that factor is neutral.  Further, to date, there are no agreements that must be identified under Rule 23(e)(3), nor do counsel anticipate reaching any such agreements.

that might prevent them from obtaining any relief.  *Id.*; *see also Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at \*4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").  Accordingly, this factor is met.

### 2. The risk, expense, complexity, and likely duration of further litigation.

As referenced above, proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a class, having summary judgment granted against Plaintiff, or losing at trial.  Such considerations have been found to weigh heavily in favor of settlement. *See Ikuseghan v. Multicare Health Sys.*, 2016 WL 3976569, at \*4 (W.D. Wash. July 25, 2016) ("[T]he outcome of trial and any appeals are inherently uncertain and involve significant delay.  The [s]ettlement avoids these challenges."); *see also Curtis-Bauer*, 2008 WL 4667090, at \*4 ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").  Even assuming Plaintiff was to survive a motion to dismiss and summary judgment, Plaintiff would face the risk of establishing liability at trial in light of the numerous defenses Defendants were prepared to assert. The experience of Class Counsel has taught them that these considerations can make the ultimate outcome of a trial highly uncertain.

Moreover, even if Plaintiff prevailed at trial, in light of the numerous class members that were arguably bound by arbitration and a class action waiver, there is a substantial likelihood that Class members may not be awarded significantly more than is offered to them under this Settlement on an individual basis.  For example, in *In re Apple Computer Sec. Litig.*, 1991 WL 238298, at \*1 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for plaintiffs after an extended trial.  Based on the jury's findings, recoverable damages would have exceeded $100 million. However, weeks later, Judge Ware overturned the verdict, entering judgment notwithstanding the verdict for the individual defendants, and ordered a new trial with respect to the corporate defendant.  *Id.*  By settling, Plaintiff and the Class avoid these risks, as well as the delays and risks of the appellate process.

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE, NEW YORK, NY 10019
TEL. 646.837.7150 · FAX. 212.989.9163

### 3. The risk of maintaining class action status through the trial.

In addition to the risks of continuing the litigation, Plaintiff would also face risks in certifying a class and maintaining class status through trial. Even if the Court were to grant a motion for class certification, the class could still be decertified at any time. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted). From their prior experience, Class Counsel anticipates that Defendants would likely appeal the Court's decision pursuant to Rule 23(f), and/or move for decertification at a later date. "[C]onsummating this Settlement promptly in order to provide effective relief to Plaintiff and the Class" eliminates these risks by ensuring Class Members a recovery that is certain and immediate. *Johnson v. Triple Leaf Tea Inc.*, 2015 WL 8943150, at *4 (N.D. Cal. Nov. 16, 2015).

### 4. The amount offered in settlement.

By any measure, the Settlement here offers meaningful relief for the Settlement Class. Three million five hundred thousand dollars ($3,500,000.00) is a massive recovery for this Washington-only class. It is a large enough sum such that non-DRAP Class members with the highest Lifetime Spending Amounts are likely to recover 50%, or more depending on *pro rata* adjustment, and that no participating Class member is likely to recover under 10% of their Lifetime Spending Amount. *See* Ex. E to Settlement. And in the midst of financial uncertainty brought about by the COVID-19 pandemic, these recoveries are even more significant for Class members.

The prospective relief offered by the settlement bolsters the fairness of the settlement. *See Bennett v. SimplexGrinnell LP*, 2015 WL 1849543, at *7 (N.D. Cal. Apr. 22, 2015) (noting "the significant value of the prospective relief also obtained in the settlement agreement" warranted preliminary approval). The settlement requires Defendants to establish and make publicly available a voluntary self-exclusion policy that will allow players to exclude themselves from further gameplay, to link to that policy prominently within the games, and to have its customer service representatives provide that link to players who contact them and reference or exhibit video game behavior disorders. *See* Settlement § 2.2. These changes, intended to generally mirror the sorts of

voluntary self-exclusion programs that states often require casinos to implement, reflect a pioneering advancement in social casino self-regulation.  And as relevant here, these changes to Defendants' conduct—in conjunction with the $3.5 million cash fund—militate in favor of approval.  *See Officers for Justice*, 688 F.2d at 628 ("It is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.").  Further, Defendants have already implemented changes to in-game mechanics that prevent players from being forced to purchase additional virtual coins or wait before continuing to play at least one game within the Application they are playing.  As such, this factor is satisfied.

### 5. The extent of discovery completed and the stage of the proceedings.

Under this factor, courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  Plaintiff, through undersigned counsel, has conducted extensive research, discovery, and investigation during the prosecution of the action, including, without limitation: (i) the review of voluminous in-game purchase documents produced by Defendants; (ii) the review of publicly available reports, articles, and other publications concerning Defendants' Applications; (iii) the review of publicly available information regarding Defendants and their business practices, and (iv) hired and consulted extensively with a damages expert in order to assist with analyzing and synthesizing the data produced by Defendants.  These efforts led to the production of critical documents concerning the case, which Class Counsel reviewed and used to ascertain the strengths and weaknesses of the case.  Fraietta Decl. ¶ 3.  The parties also held numerous telephonic and written discussions regarding Plaintiff's allegations, discovery, and settlement, as well a full-day mediation with Hon. Layn R. Phillips (Ret.) of Phillips ADR.  *Id.* ¶ 4-6.  The Settlement is the result of fully-informed negotiations.  *Id.* ¶ 7.  *Vega v. Weatherford U.S., Limited Partnership*, 2016 WL 7116731, at *9 (E.D. Cal. Dec. 7, 2016) (factor weighed in favor of settlement where "[g]iven the discovery completed by the parties, it appears that the parties made informed decisions, which lead to resolution of the matter with a mediator").

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE, NEW YORK, NY 10019
TEL. 646.837.7150 · FAX. 212.989.9163

**6.      The extent of discovery completed and the stage of the proceedings.**

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).  Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Rodriguez*, 563 F.3d at 967.  Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation.  *See* Fraietta Decl., Ex. 2 (firm resume of Bursor & Fisher, P.A.).  Based on their experience, Class Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation.

**7.      The Reaction of Settlement Class Members**

Finally, the Class has responded favorably to the Settlement, warranting final approval.  As of November 7, 2022, there have been **zero** objections, and the Settlement Administrator only received two requests for exclusion.  Bahry Decl. ¶¶ 22, 24.  Such low opposition to the Settlement speaks volumes regarding the fairness and adequacy of the Settlement.  Indeed, "[w]hen few class members object, a court may appropriately infer that a class action settlement is fair, adequate, and reasonable."  *Schneider v. Wilcox Farms, Inc.*, 2009 WL 10726662, at *3 (W.D. Wash. Jan. 12, 2009).  Courts in this District have found that class reaction supported final approval even with significantly higher exclusion and objections rates.  *See Pelletz v. Weyerhouser Corp.*, 255 F.R.D. 537, 543-44 (W.D. Wash. 2009) (lauding "positive response" of Settlement Class of 110,000 to 140,000 members where 119 excluded themselves from the settlement, and 3 objected); *Clemans v. New Werner Co.*, 2013 WL 12108739, at *5 (W.D. Wash. Nov. 22, 2013) (in settlement involving class of 300, one objection and four exclusions were filed, court found that "the overwhelming non-opposition to and participation in the Settlement [are] strong indications of Class Members' support for the Settlement as fair, adequate, and reasonable."); *see also Rodriguez*, 563 F.3d at 967 (9th Cir. 2009) (concluding that the district court "had discretion to find a favorable reaction" when 54 of 376,301 class members objected to settlement); *Churchill Vill.*, 361 F.3d at 577 (affirming

approval of class-action settlement where 45 of 90,000 class members objected).  Given the near total absence of any opposition to the Settlement, the Court should find that the reaction of the Settlement Class also favors final approval.

**B.    The Settlement Meets All Of The Rule 23(e)(2) Factors**

As aforementioned, the Court must also examine the new Rule 23(e)(2) factors.  The Rule 23(e)(2) factors considerably overlap with the *Hanlon* factors, and are easily met here.

**1.    Class Counsel and the Class Representatives have adequately represented the Class and support the Settlement.**

"The Ninth Circuit has explained that 'adequacy of representation ... requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"  *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018) (quoting *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d at 462).  As to the first inquiry, Plaintiff and Class Counsel have no conflicts of interests with the Class.  *See* Fraietta Decl. ¶ 17.  Rather, the named Plaintiff, like each absent Class Member, has a strong interest in proving Defendants' common course of conduct, and obtaining redress.  *Id.* ¶ 18.

As to the second inquiry, Plaintiff and Class Counsel have vigorously and competently pursued the Class Members' claims.  Plaintiff, for his part, demonstrated his willingness to vigorously prosecute this case, including by providing his counsel with relevant documents, testimony, and consumer insight into the intricacies of Defendants' Applications.  Plaintiff remained in constant communication with his counsel, and he was heavily involved in nearly every aspect of this case, from its inception through settlement.  *See* Fraietta Decl. ¶ 17.  Since his unfortunate passing, his mother and successor, Alma Sue Croft, has admirably assumed his duties and has fairly and adequately protected the interests of the Settlement Class.  *Id.*

Likewise, the Court need only ask whether proposed Class Counsel are unencumbered by conflicts of interest and will vigorously prosecute the action.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).  The answer to both questions is clearly yes.

**BURSOR & FISHER, P.A.**
888 SEVENTH AVENUE, NEW YORK, NY 10019
TEL. 646.837.7150 · FAX. 212.989.9163

First, there is no indicia of conflicts of interest and counsel is aware of none. Fraietta Decl. ¶ 18. Class Counsel have no financial stake in the Defendants, nor do they have any connections to Class members that might cause them to privilege certain Class members over others. *Id.* Second, Class Counsel prosecuted this case and protected the interests of the proposed Class. Class Counsel are well-qualified and experienced members of the plaintiffs' bar, and have significant experience and success in prosecuting complex class actions such as this one. *See* Fraietta Decl., Ex. 2 (firm resume of Bursor & Fisher, P.A.). Notably, Class Counsel was recently appointed as Head of the Facebook Track in a high-profile MDL class action lawsuit involving similar "illegal gambling" allegations against Apple, Google, and Facebook. *See*, *e.g.*, *In Re: Apple Inc. App Store Simulated Casino-Style Games Litig.*, Case No. 5:21-md-03001-EJD, ECF No. 51 (N.D. Cal. Sept. 23, 2021) (Order Granting Appointment of Interim Lead Counsel). Accordingly, Rule 23(a)(4) is satisfied.

### 2.      The Settlement was negotiated at arm's length.

As the Court has already preliminarily found, this Settlement is the product of informed, arm's-length negotiations facilitated by Hon. Layn R. Phillips (Ret.), a well-renowned mediator who has intimate knowledge of the facts, legal issues, and value of these types of litigations.[3] *See* ECF No. 62; *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."); *Helde v. Knight Transportation, Inc.*, No. 2:12-cv-00904, Dkt. No. 191 at 2 (W.D. Wash. May 24, 2017) (granting preliminary approval where "Settlement Agreement resulted from extensive arm's-length negotiations, with participation of an experienced mediator"); *Gragg v. Orange CAB Co., Inc.*, 2017 WL 785170, at *1 (W.D. Wash. Mar. 1, 2017) (same).

Furthermore, this Settlement presents none of the red flags the Ninth Circuit has flagged as indicative of potential collusion—(1) "when counsel receive a disproportionate distribution of the

---

[3] In particular, Judge Phillips has successfully mediated other cases involving nearly identical claims. *See*, *e.g.*, *Wilson v. Huuuge, Inc.*, Case No. 18-cv-05276 (W.D. Wash.); *Wilson v. Playtika, Ltd.*, Case No. 18-cv-05393 (W.D. Wash.); *Kater v. Churchill Downs*, Case No. 15-cv-00612 (W.D. Wash.); *Reed v. Light & Wonder, Inc.*, No. 18-cv-000565-RSL, ECF No. 197 (W.D. Wash. Aug. 12, 2022).

BURSOR & FISHER, P.A.
888 SEVENTH AVENUE, NEW YORK, NY 10019
TEL. 646.837.7150 · FAX. 212.989.9163

settlement, or when the class receives no monetary distribution but class counsel are amply rewarded," (2) "when the parties negotiate a 'clear sailing' arrangement," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth*, 654 F.3d at 947 (quotations omitted).

As an initial matter, Class Counsel is not receiving a disproportionate distribution of the Settlement Fund or being amply rewarded while the class receives no monetary distribution.  To the contrary, Class Counsel have limited themselves to a fee petition within the "usual range" for fees in this Circuit—25% of the Settlement Fund.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  And far from receiving coupons or meaningless *cy pres*-only relief, class members will receive substantial individual cash recoveries.[4]  Second, there is no "clear sailing" provision in the settlement.  *See In re Bluetooth*, 654 F.3d at 947 (defining clear sailing provisions).  Defendants were free to object to Class Counsel's fee request should they determine the request is unreasonable.  Third, there is no possibility that any funds revert back to Defendant.  *See* Settlement § 1.36; *id.* § 2.1(k).

In sum, there is no indicia of collusion here because there was no collusion.  This Settlement is the product of serious, informed, non-collusive negotiations.  That fact militates in favor of granting preliminary approval.

   **3.**  **The amount offered in Settlement is adequate, taking into account the strength of Plaintiff's case, and the risks inherent in further litigation.**

Fed. R. Civ. P. 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  "The

---

[4] While Plaintiff petitions the Court for a reasonable service award, no class member will be given preferential treatment at the expense of another.  *See Scott v. United Servs. Auto. Ass'n*, 2013 WL 12251170, at *1 (W.D. Wash. Jan. 7, 2013) (noting preliminary approval generally granted absent "obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class") (citations omitted).

amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement." *Hilsley*, 2020 WL 520616, at *6. Each prong is met.

**"The Costs, Risks, And Delay Of Trial And Appeal":** Plaintiff established above that this factor is met. *See* Argument § III.A.2, *supra*.

**"The Effectiveness Of Any Proposed Method Of Distributing Relief To The Class":** "The goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Hilsley*, 2020 WL 520616, at *7. As described *infra*, the notice plan and claims procedure is straightforward and comports with due process. *See* Argument § II. The plan was proposed by experienced and competent counsel and ensures "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 695 (S.D.N.Y. 2019) (internal quotations omitted).

**"The Terms Of Any Proposed Award Of Attorney's Fees":** Class Counsel has petition this Court for an award of up to one quarter of the Settlement Fund (or $875,000.00) in attorneys' fees, plus reimbursement of Court-approved costs and expenses associated with the Action. Dkt. 71; *see also* Settlement § 9.1. Under Ninth Circuit standards, a District Court may award attorneys' fees under either the "percentage-of-the-benefit" method or the "lodestar" method. *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). "Courts in the Ninth Circuit prefer to use the percentage-of-recovery method, but to cross-check the final figure with a lodestar calculation." *In re Transpacific Passenger Air Transportation Antitrust Litig.*, 2019 WL 6327363, at *1 (N.D. Cal. Nov. 26, 2019).

Under the common fund doctrine, courts typically award attorneys' fees based on a percentage of the total settlement, and "25% of the common fund [is] benchmark award for attorney fees." *Hanlon*, 150 F.3d at 1029. Courts in this Circuit, however, routinely award higher percentages up to and including one third. *See State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming

attorney's fee award of 33% of the recovery); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorney's fee award of 33% of the recovery).  To calculate attorneys' fees based on the percentage of the benefit, Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available rather than the amount actually paid out.  *Young v. Polo Retail, LLC*, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007) ("The Ninth Circuit, however, bars consideration of the class's actual recovery in assessing the fee award"); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (ruling that a district court abused its discretion in basing attorney fee award on actual distribution to class instead of amount being made available).  The Court must also include the value of the benefits conferred to the Class, including any attorneys' fees, expenses, and notice and claims administration payments to be made.  *See*, *e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 972-74 (9th Cir. 2003); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011), *aff'd*, 473 F. App'x. 716 (9th Cir. 2012).  Further, the value of injunctive relief must be included in calculating the total benefit made available to the class.  *See*, *e.g.*, *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 631 (9th Cir. 2020) (upholding district court's approval of attorneys' fees where it was apparent that injunctive relief offered "generated benefits far beyond the cash settlement fund") (internal quotations omitted); *Kumar v. Salov N. Am. Corp.*, 2017 WL 2902898, at *7 (N.D. Cal. July 7, 2017), *aff'd*, 737 F. App'x 341 (9th Cir. 2018) ("The Court analyzes an attorneys' fee request based on either the 'lodestar' method or a percentage of the total benefit made available to the settlement class, *including costs, fees, and injunctive relief*.") (emphasis added).

Here, Class Counsel has made available a non-reversionary common fund of $3.5 million, which will compensate Settlement Class members for 10 to 50% of the monies spent on Defendants' Applications, subject to *pro rata* adjustment.  Class Counsel has also instituted significant and valuable injunctive relief, as discussed *supra* Terms of the Proposed Settlement § C; *see also* Settlement § 2.2.

**"Any Agreement Required To Be Identified By Rule 23(e)(3)":**  This prong asks whether there was "any agreement made in connection with the proposal."  *In re GSE Bonds*

*Antitrust Litig.*, 414 F. Supp. 3d at 696.  Here, other than the Settlement, no such agreement exists. *See* Fraietta Decl. ¶ 24.

In light of the foregoing, the Settlement provides adequate relief to the Settlement Class under Rule 23(e)(2)(C).

**4.      The Settlement Treats Settlement Class Members
         Equitably.**

Under this factor, courts consider whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class."  *Hefler*, 2018 WL 6619983, at *8.  Here, each Settlement Class member will be compensated based on their total Lifetime Spending Amount, and whether they are bound by Defendants' DRAP.  This does not constitute "preferential treatment" because Class members who spent more money on Defendants' applications stand to recover more money, as do Class members who are not subject to Defendants' DRAP.  Notably, however, the Settlement still provides excellent relief for Class members who are subject to Defendants' DRAP, even though Defendants have a colorable argument that those claims should not be worth anything.  Thus, this Rule 23(e)(2) factor is also met.

**5.      Class Counsel Had Sufficient Information To Reach An
         Informed Judgement About The Benefits of Settling, And
         The Quality Of The Settlement.**

Next, the Parties "had enough information to make an informed decision about the strength of their cases and the wisdom of settlement."  *Rinky Dink, Inc. v. World Bus. Lenders, LLC*, No. 14-cv-0268, 2016 WL 4052588, at *5 (W.D. Wash. Feb. 3, 2016).  Plaintiff established above that this factor is met.  *See* Argument § III.A.5, *supra*.

**6.      The Reaction Of The Settlement Class Has Been
         Favorable.**

Finally, as detailed above, the Class's reaction has been overwhelmingly favorable.  *See* Argument § III.A.7 (detailing that <u>zero</u> Settlement Class Members objected to the Settlement and only two requested to be excluded).  This factor is therefore met.

## CONCLUSION

The Court should finally certify the Settlement Class and grant final approval to the instant Settlement.

1

2
Dated: November 21, 2022             **BURSOR & FISHER, P.A.**

3
                                     By:_____/s/   *Philip L. Fraietta*_____
4
                                            Philip L. Fraietta

5
                                     Philip L. Fraietta (*pro hac vice*)
6                                    Alec M. Leslie (*pro hac vice*)
                                     888 Seventh Avenue
7                                    New York, NY 10019
                                     Telephone: (646) 837-7150
8                                    Facsimile: (212) 989-9163
                                     E-Mail:  pfraietta@bursor.com
9                                             aleslie@bursor.com

10                                   **CARSON NOEL PLLC**
                                     Wright A. Noel (State Bar No. 25264)
11                                   20 Sixth Avenue NE
                                     Issaquah, WA 98027
12                                   Telephone: (425) 837-4717
                                     Facsimile: (425) 837-5396
13                                   Email: wright@carsonnoel.com

14                                   *Attorneys for Plaintiff*

15

16

17

18

19

20

21

22

23

24

25

26

27

28